3032

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

|                           |   |                            |
|---------------------------|---|----------------------------|
| COURTNEY LINDE, et al.,   | : | 04 CV 02799 (BMC)          |
|                           |   | And all related cases      |
|         Plaintiffs,       | : | 04 CV 05449 (Litle)        |
|                           |   | 04 CV 05564 (Almog)        |
|                           | : | 04 CV 00365 (Coulter)      |
|                           |   | 05 CV 00388 (Afrial-Kurtzer) |
|      - against--          | : | 05 CV 03183 (Bennett)      |
|                           | : | 05 CV 03768 (Roth)         |
|                           |   | 06 CV 01623 (Weiss)        |
| ARAB BANK, PLC,           | : |                            |
|                           |   | United States Courthouse   |
|         Defendant.        | : | Brooklyn, New York         |
|                           |   |                            |
|                           | : | September 17, 2014         |
|                           |   | 9:25 o'clock p.m.          |

- - - - - - - - - - - - - - - - - X

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE, and a jury.

APPEARANCES:

| For the Linde and Coulter Plaintiffs: | OSEN, LLC<br>By:  GARY M. OSEN, ESQ. |
|---|---|
| | TURNER & ASSOCIATES, PLLC<br>By:  CLYDE T. TURNER, ESQ. |
| For the Litle, Bennett and Roth Plaintiffs: | SAYLES WERBNER<br>By:  MARK S. WERBNER, ESQ. |
| For the Almog Plaintiffs: | STONE, BONNER & ROCCO, LLP<br>By:  JAMES P. BONNER, ESQ. |
| | MOTLEY RICE, LLC<br>By: MICHAEL E. ELSNER, ESQ.<br>JODI FLOWERS, ESQ. |

GR      OCR      CM      CRR      CSR

3033

1   A P P E A R A N C E S (Continued)

2   For the Defendant:            DLA PIPER US, LLP
                                   By:  SHAND STEPHENS, ESQ.
3                                       ANTHONY COLES, ESQ.
                                        BRETT INGERMAN, ESQ.
4                                       MARGARET CIVETTA, ESQ.

5   Court Reporter:               Gene Rudolph
6                                 225 Cadman Plaza East
                                  Brooklyn, New York 11201
7                                 (718) 613-2538

8
    Proceedings recorded by mechanical stenography, transcript
9   produced by CAT.

10

11

12                          * * * * * * *

13

14

15          (The following occurred in the absence of the jury.)

16          THE COURT:  Good morning.

17          Be seated, please.

18          Okay.  I have one letter last night from defendant

19   about the anticipated rebuttal testimony of Doctor Levitt.

20   Let me ask a few questions about that and then I will give you

21   rulings so we can go forward.

22          First, with regard to the Watson memo that's

23   Plaintiff's Exhibit 1297, what's plaintiffs' position on the

24   handwriting on the memo?

25          MR. WERBNER:  It was admitted without objection on

1  August 19th.  We are almost a month later where we are hearing

2  about this.  It's too late to make that objection.

3          THE COURT:  Okay.  Stop.

4          I agree.  You can't go back through the record a

5  month later and say here is what I would have liked to object

6  to.  The document is in evidence.  No reservation was made

7  when it was admitted into evidence.  I am not going back on

8  that.

9          Next, on plaintiffs' 4340 and 4442, I didn't really

10  understand the defendant's argument because the defendant only

11  cited me to the conspiracy count in the indictment.  If you

12  look at the substantive violations in counts two through nine,

13  those are the same Zakats at issue in this case.  Other than

14  Count Nine but counts two through eight are the same ones.

15          So the indictment is therefore admissible under

16  Rule 803(22), to prove the facts essential to the conviction.

17          I don't see any way you could understand the

18  conviction without seeing those portions of the indictment,

19  and the substantive counts show that it's the same thing

20  that's at issue here.

21          What I am inclined to do, to reduce prejudice to the

22  defendant on this, is to require the plaintiffs to redact the

23  citations to the statute, the statutory language, and the

24  legal discussion as to the law under which the HLF defendants

25  were convicted.  I just think the plaintiffs don't need that

3035

1    and it has the potential to confuse the jury and also cause

2    undue prejudice to the defendant.  So take those out.

3              MR. STEPHENS:  Your Honor, may I address that for a

4    moment, please?

5              THE COURT:  Sure.

6              MR. STEPHENS:  The indictment and the conviction are

7    in 2008.  They are four years after the relevant period.  The

8    allegations in the indictment with respect to the overt acts,

9    there is no -- no indication in the conviction as to which, if

10   any, of those overt acts actually the conviction is based on.

11   It could have been one, it could have been two and some --

12             THE COURT:  No.  You are focused on the conspiracy.

13   If you look at the substantive counts, two through nine, those

14   are the counts.  Those are where these things come into play.

15   The defendants could not have been convicted on counts two

16   through nine without those overt acts.

17             MR. STEPHENS:  My point is that you don't know which

18   ones the jury decided had been committed and which ones they

19   did not.

20             THE COURT:  I think you do.

21             MR. STEPHENS:  Why would you assume that all of them

22   were found to have been committed?

23             THE COURT:  The ones in counts two through nine.

24             I'm sorry.  I have said it wrong.  It's counts two

25   through ten except for nine.  But those were all convicted on.

3036

1   MR. STEPHENS: Your Honor, I am not disputing that

2 there was a conviction. What I am trying to say is that if

3 you take a look at the indictment it says overt acts one

4 through eight. Then it cites one, the Qalquilia Zakat

5 Committee. That's not a Zakat Committee in this case. I

6 don't know whether the jury decided that that was the one that

7 constituted the overt act in the conviction or not.

8   THE COURT: Wait a minute.

9   MR. STEPHENS: Because there is nothing in the

10 document or the conviction that would indicate which of these

11 overt acts in fact the jury was finding had actually been

12 committed.

13   THE COURT: You are focusing on the overt acts. But

14 if you look at counts two through ten, okay, it breaks it down

15 into each one of those.

16   MR. STEPHENS: Your Honor, again, so I am now

17 looking at that page and, again, it says, there is this

18 passing around of money and then there is one, two, three,

19 four, five, six, seven, eight, nine Zakats, but it could have

20 been just one of them.

21   THE COURT: They convicted on all of them.

22   MR. STEPHENS: No. You can't tell that from the

23 conviction. It is just checked off.

24   MR. OSEN: Your Honor --

25   THE COURT: It is just not right.

GR  OCR  CM  CRR  CSR

3037

1          MR. OSEN:  Maybe I could move this along by pointing

2     out that the Fifth Circuit in US v. Mezain, 664 F.3d 467,

3     that's the Fifth Circuit, affirmance of the conviction, notes

4     in the first footnote, that the evidence showed that HLF

5     provided the following amounts to Zakat committees controlled

6     by Hamas.  Then it lists out the dollar amounts for Tulkarem

7     Zakat Committee, Islamic Charitable Society of Hebron, Nablus

8     Zakat Committee, Jenin Zakat Committee, Ramallah Zakat

9     Committee.  You get the gist of it, Your Honor.

10         THE COURT:  Right.  I don't need the Fifth Circuit

11    for that.

12         If you look at the jury verdict, you know, you are

13    looking at Count One, Mr. Stephens.  Look at Count Two, Count

14    Three, Count Four.  They convicted on all of those and those

15    correspond directly to each of the Zakats listed in counts two

16    through ten of the indictment.

17         MR. STEPHENS:  Your Honor, I believe that the jury

18    could have convicted on any one of those counts by finding

19    just one of those transfers had been made and not all nine or

20    ten of them.  That's my point.

21         THE COURT:  Okay.  I disagree with that point.  I

22    don't think they could have.

23         On Count Two, they could only convict if they found

24    that in fact there was a transfer of 11,962 to the Ramallah

25    Zakat Committee on 8/18/98.  That's Count Two.  They convicted

3038

1    on that.  That's all there is on Count Two.

2           This is the way a criminal indictment is often

3    postured.  You have the conspiracy count up front and then you

4    have the substantive counts for each one of the transactions

5    serially thereafter.  That's what the jury convicted on.

6           MR. STEPHENS:  Your Honor, without then going back

7    over that ground, I don't understand the relevance of a 2008

8    indictment and conviction, particularly since, A, it's that

9    far past the relevant period, and, B, it's a conviction of a

10   different organization.  None of these organizations were

11   convicted of doing anything.

12          THE COURT:  These people could not have been

13   convicted of this crime without these organizations being

14   found to give material support to Hamas.  It could not have

15   happened.

16          MR. STEPHENS:  What difference does it make?  It's

17   2008.

18          THE COURT:  Well, the conviction is in 2008 but if

19   you look at the dates of these transfers, they are much, much

20   earlier, years earlier, a decade earlier.

21          MR. STEPHENS:  I realize that, Your Honor.  But

22   what's that got to do with liability for a bank that's

23   processing transactions for organizations that are convicted

24   in 2008 of having done something in 1997 when the transaction

25   was done?

GR      OCR      CM      CRR      CSR

3039

1          THE COURT:  It is one piece of evidence, showing a
2   fact which you have disputed in this case, that these
3   organizations were Hamas fronts.  That's one fact that shows
4   that.  Is it conclusive?  No.  But it's certainly highly
5   probative.
6          You and I just aren't seeing this the same way,
7   Mr. Stephens.  I think it's clearly admissible but I will
8   direct it to be redacted as I have identified.
9          All right.  Next, we have the newspaper slides.  I
10  assume the only purpose for showing these slides is to impeach
11  the defendant's expert testimony that this information was not
12  publicly available.
13         MR. WERBNER:  That is correct.  We are not offering
14  either of the articles.  We are using the slides for
15  demonstrative purposes, to rebut Doctor Milton-Edward's
16  testimony.
17         THE COURT:  All right.  I think that's perfectly
18  permissible.
19         MR. COLES:  Your Honor, in those articles, there is
20  more than references to the Watson report.  Even in the clips,
21  the squibs that they put on the slides.  There is reference to
22  the Philadelphia eavesdropping, which is not part of this case
23  and other things.  So they have taken the slides for that
24  purpose and then put other things on them.
25         MR. WERBNER:  I am not going to call attention to

GR      OCR      CM      CRR      CSR

3040

1  those things.  I just wanted a facsimile of the article to

2  have the witness show these appeared on the coast to coast

3  leading newspapers and that it discusses the unclassified

4  Watson memo.  Not going to have them read anything about

5  Philadelphia.

6           THE COURT:  I am looking at the slides, Mr. Coles.

7  I am not seeing which portions you are objecting to.

8           MR. COLES:  Okay.  There is a reference I think in

9  the second slide, not the -- here it is.

10          THE COURT:  Which one, the LA Times or the New York

11  Times?

12          MR. COLES:  Okay.  I am looking at the New York

13  Times, the Firestone article from 2001.

14          THE COURT:  Right.

15          MR. COLES:  Look at the first paragraph.  That has

16  nothing to do -- that's not relevant to this case.

17          THE COURT:  It's also not being offered for the

18  truth.

19          MR. COLES:  But it's -- it seems to me it's hearsay.

20  It's prejudicial.  This was an exhibit that was proposed by

21  the plaintiffs, this transcript of the eavesdropping.  It

22  hasn't been introduced into the case.

23          MR. OSEN:  Actually, Your Honor, it's in evidence

24  because it's referenced in the Watson memorandum which is in

25  evidence.  So the prejudice of it is negligible and it's not

3041

1    being offered in this context for truth anyway.

2         THE COURT:  It's not hearsay because it doesn't

3    matter if in fact eight years ago the FBI tracked a group of

4    senior leaders to a hotel room in Philadelphia.  That is being

5    offered solely as background for discussion of the Watson

6    memo.  That's all it is.

7         MR. COLES:  But if their point is they just want to

8    give notice of the Watson memo, then that's just prejudicial.

9         THE COURT:  No.  They are not saying the bank had

10   notice -- they are not saying by these exhibits that the bank

11   had notice of the Watson memo.  What they are saying is,

12   Doctor Bentley -- what is the name?  Bentley Martin, the

13   expert for the defendant, was wrong when she said the Watson

14   memo was not publicly available.

15        MR. COLES:  For instance, in the Times article, all

16   they would need is the squib on the bottom to make that point.

17   In the Los Angeles Times article, they just need the second --

18   they just need the second paragraph.

19        THE COURT:  They need the headline.  Otherwise, it's

20   completely out of context.  They need the headlines in each.

21        MR. COLES:  They need the headline, FBI Links

22   Charity to Call to Kill Israelis?  You don't think that's a

23   prejudicial headline?

24        THE COURT:  Yes, I think it has prejudice.  I do.

25        MR. COLES:  If all they want to show is that

3042

1  Milton-Edwards didn't read these articles, they don't need to

2  gussy them up the way they gussied them up.

3          THE COURT:  I am not sure how you would ungussy

4  them.  They are entitled to impeach her testimony with the

5  articles.  What do you propose?

6          MR. COLES:  I would propose, on the LA Times

7  article, that they take out the headline, FBI Links Islamic

8  Charity to Call to Kill Israelis.  I would take out the first

9  sentence which is not in the -- finish off the Israelis, Kill

10 Them All.  The second sentence, which is also in the second

11 paragraph, I guess that's okay.  That will solve what they

12 need to solve.

13         THE COURT:  Isn't everything in this article in the

14 Watson memo?

15         MR. COLES:  I don't --

16         THE COURT:  Other than the headline?

17         MR. COLES:  No, I don't believe the first sentence

18 is in the Watson memo.  I don't know.

19         THE COURT:  All right.  Let's do this.  On the

20 LA Times article, let's take out that portion of the headline

21 that begins, to Calls to Kill Israelis.

22         Then, in the first paragraph after the words, Los

23 Angeles event, let's take out what follows after that.

24         The rest of it I think is fine.  The rest of it just

25 summarizes the Watson memo.

GR      OCR      CM      CRR      CSR

3043

1          On the New York Times article, headline is not

2    prejudicial.

3          MR. COLES:  All you need from the Times article is

4    the third paragraph.

5          THE COURT:  You can't start out with the

6    surveillance results without giving the jury any idea of what

7    that is.  There is no context to it.  I think what you can

8    do -- I don't see anything prejudicial about the earlier

9    parts.  It just summarizes the Watson memo.

10          All right.  I am going to allow that one in.

11          Okay.  Anything else before we bring in the jury?

12          MR. WERBNER:  No, Your Honor.

13          THE COURT:  Let's have them, please.

14          MR. TURNER:  We might need to advise you that we did

15    work out a stipulation with respect to Mr. Scholtz.

16          THE COURT:  Okay.  Good.

17          Is that going to be introduced in the plaintiffs'

18    case?

19          MR. TURNER:  Right after Mr. Levitt.

20          THE COURT:  Okay.

21          (Jury present.)

22          THE COURT:  All right be seated, please.

23          Good morning, ladies and gentlemen.

24          We will hear plaintiffs' rebuttal case.

25          Plaintiffs may call their first witness.

                          Levitt - direct - Werbner                    3044

1              MR. WERBNER:  Yes, Your Honor.

2              In rebuttal we will call Doctor Matt Levitt.

3              THE COURT:  Doctor Levitt, you are still under oath.

4              Have a seat.

5              THE WITNESS:  Yes, sir.

6              (Matthew Levitt, having been previously duly sworn,

7    testified further as follows:)

8              THE COURT:  You may proceed.

9    DIRECT EXAMINATION

10   BY MR. WERBNER:

11   Q    Doctor Levitt, since you were here I guess almost a month

12   ago the jury and the Court has heard from Doctor Beverly

13   Milton-Edwards.

14             Are you familiar with Doctor Edwards?

15   A    I am.

16   Q    She testified that the Zakats in question are not

17   controlled by Hamas and that one factor in her opinion was

18   that they were not designated.

19             Do you share that view?

20   A    No.

21   Q    Would you explain to the jury why you disagree with

22   Doctor Milton-Edwards?

23   A    I think we covered this in part when I was last here.

24   The US, for that matter, the European, all the designation

25   regimes that are out there, they are not definitive lists.

                    GR      OCR      CM      CRR      CSR

Levitt - direct - Werbner                      3045

1   There is no requirement, and it is not the case, that every

2   terrorist entity is listed.

3            Also, in the US and other countries, including the

4   United Kingdom, the position is that since Hamas, the

5   organization, is designated --

6            MR. STEPHENS:  Objection, Your Honor.

7            Could we have a side bar, please?

8            THE COURT:  Sure.

9            (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR

Levitt - direct - Werbner                                    3046

1          (Side bar.)

2          MR. STEPHENS:  Two or three things, please.

3          First of all, he did not offer any of this opinion

4   testimony in his report and in fact they objected to it when

5   we tried to ask him about this subject matter.

6          Number two, how could he say that the reason why the

7   United States of America does something and he also is -- he

8   has been trying to get this in about if Hamas is designated,

9   that means all of their unnamed agents, employees, associates

10  and affiliates are also included.

11         How can he, given who he is and what he does, and

12  that's not in his report, then sit there and testify that

13  every unnamed person that he says is an agent is actually

14  designated by the United States of America?  It's baloney,

15  Your Honor.  Not only that --

16         THE COURT:  Mr. Stephens, calm down, please.  You

17  don't have to tell me it's baloney.  You may tell me that you

18  think it's inadmissible.  That's sufficient.

19         MR. STEPHENS:  I think it's inadmissible.

20         THE COURT:  Okay.

21         MR. WERBNER:  Your Honor, first as regarding the

22  report, it's rebuttal.  He prepared a rebuttal report.  He is

23  rebutting specifically what the defendant put on through

24  Doctor Milton-Edwards and really has been their theme

25  throughout the entire case.

GR      OCR      CM      CRR      CSR

Levitt - direct - Werbner                    3047

1       Number two, as far as qualifications, he was the man

2   that made designations.  He worked at Treasury.  He was in

3   that department.  He's familiar with the designations.  He

4   worked with the FBI.  He has the competency and expertise to

5   rebut a key part of their defense.

6       MR. STEPHENS:  It's untrue, that he made

7   designations.

8       MR. WERBNER:   I can bring that out.  He told me

9   that this morning at breakfast.

10      MR. OSEN:  Let's be clear, he's part of the process

11  as head of the Intelligence Department of the Treasury that

12  makes recommendations and participates in the interagency

13  process on designations.

14      MR. COLES:  Also, at his deposition he was asked

15  about OFAC and plaintiff specifically objected, saying it was

16  beyond the scope of this report.  They have other expert

17  witnesses who will do it.  They never gave us a report.

18      MR. WERBNER:  This is rebuttal.

19      THE COURT:  I hate to tell you, Mr. Werbner is

20  raising a very good point.  It's rebuttal.

21      As far as I am concerned, they can come up with a

22  new expert who isn't even listed on any of their orders.  This

23  is rebuttal.  He is responding directly to something that

24  Doctor Milton-Edwards said.

25      Then the question becomes, is he qualified to give

1   that testimony?  Not that he didn't have it in his report.

2   It's rebuttal.

3           There is no requirement that the plaintiffs' expert

4   give a rebuttal to the defendant's rebuttal report.

5           MR. COLES:  Actually, since Mr. -- it's different

6   when we actually tried to inquire on this at his deposition.

7   They say no, you can't.  And then they spring him on us on

8   rebuttal.  That's not actually fair play.

9           THE COURT:  That's rebuttal.

10          MR. COLES:  No.  We should have been able to ask the

11  deposition questions.

12          MR. WERBNER:  I'll tell you why it wasn't springing.

13  I have a page on my desk.  We had a bench conference during

14  his direct.  Your Honor had asked him a question on these

15  lines and then struck it.  At the bench conference you said,

16  maybe he will be able to do this on rebuttal.  That's -- I am

17  taking the same questions that were addressed there.

18          THE COURT:  The question though -- I think it's a

19  good question -- is, since you have blocked him -- did you

20  block him from answering or did you just object at the

21  deposition?

22          MR. COLES:  A little bit of both.  They objected and

23  they said they have other witnesses.  We went to other topics.

24          MR. OSEN:  We had an expert witness, Mr. Gurule, who

25  was struck on this very issue.  To the extent that he offered

Levitt - direct - Werbner                    3049

1    a legal opinion, that's in the jury charge Your Honor will

2    give.

3              But to the question of the process, Milton-Edwards

4    testified she took quote-unquote comfort in the fact that

5    these Zakat committees were not designated.  I think we are

6    entitled to rebut that inference of comfort by explaining once

7    again that not every Hamas leader, not every Al Qaeda leader,

8    never every Hezbollah leader or operative is on the OFAC list.

9    That would be insane.  The process is one which is -- which he

10   testified to on direct in his first exam, blacklists doesn't

11   mean there is a white list.

12             THE COURT:  Hang on.

13             Let me look at the testimony again.  I want to see

14   the question and answer.

15             (Pause.)

16             THE COURT:  All right.  For now, I don't know where

17   this is going, but for now, I am not sustaining the objection

18   that it's outside the scope of his report because this is

19   rebuttal.

20             I am sustaining the objection to the way he just

21   started to testify, which is that it's the position of the US

22   and other countries.  For one thing, that strikes me as a

23   legal opinion or a potentially legal opinion.  Unless the

24   bases are brought out to be non-legal opinions, and we now

25   show because he's effectively a new witness, he's here on

GR       OCR       CM       CRR       CSR

Levitt - direct - Werbner                    3050

1    rebuttal, that he has a foundation to draw these conclusions,

2    I am not going to let him draw them.

3            So if you want to draw out more of a foundation you

4    can do that.  You ask him an open-ended question, why do you

5    disagree with Doctor Milton-Edwards and he starts saying well,

6    because effectively the law in UK is, I am not going to allow

7    that.

8            MR. WERBNER:  I understand.

9            THE COURT:  Okay.

10           MR. OSEN:  Thank you, Your Honor.

11           MR. STEPHENS:  Thank you Your Honor.

12           (Continued on next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

GR        OCR        CM        CRR        CSR

Levitt - direct - Werbner                    3051

1          (In open court.)

2          THE COURT:  All right.  Put another question.

3   EXAMINATION CONTINUES

4   BY  MR. WERBNER:

5   Q    Let's back up a little bit, Doctor Levitt.

6          Tell us what experience you have relative to the

7   designation process and as it appears on the OFAC list?

8          What's your experience in that regard?

9   A    Aside from my experience following this issue closely as

10  an academic, where I regularly interview people, both in US

11  government and elsewhere, in private industry, I meet with

12  senior bank officials, see how they see this, these issues,

13  the most important thing is that I used to be the Deputy

14  Assistant Secretary for Intelligence and Analysis at the US

15  Department of the Treasury.

16         During my time there, these designations, not any

17  particular one we are talking about, but designations that

18  happened in that period, went out under two signatures.  One

19  of them was mine.

20         I was one of the people running the designation

21  process.  I was a key senior executive service official

22  involved in these deliberations.  So it was my job and part of

23  my training and indeed I did know these in and out.

24  Q    All right.  That was when you were with the US Department

25  of Treasury?

GR        OCR        CM        CRR        CSR

Levitt - direct - Werbner                    3052

1   A    Correct.

2   Q    I remember you mentioned when you were here before you

3   were also with the FBI at some point.

4        What were you doing at the FBI, if anything, that

5   relates to your expertise relating to designations?

6   A    At the FBI, I was a counterterrorism intelligence

7   analyst.  Our job is to put together information, both to

8   support operations and to take information that was gathered

9   in operations and analyze it and make sense of it for a

10  variety of different purposes.  It could be another operation.

11  It could be a policy decision.

12       One of those policy decisions that would come up

13  from time to time, as you saw, for example, in the action

14  memorandum, the Watson memo, is the idea of designating

15  targets based on information that was collected, could be by a

16  whole host of entities, including FBI.

17  Q    Leaving out any kind of legal conclusion, I am not asking

18  you to interpret the law or anything of that kind, does your

19  experience include knowledge of industry standards or accepted

20  practices in this regard in terms of OFAC lists and

21  designations?

22  A    It does.

23       Both from the perspective of when government

24  officials, as I once was, are making the decisions, how do

25  they understand them, what is their goal.  And in terms of the

GR        OCR        CM        CRR        CSR

1   private sector, for example, I have been called in, asked to

2   meet with very senior officials from some of the largest banks

3   in the world, to discuss these issues with them, hear how they

4   look at these things.  Mostly they wanted to now how I as a

5   current or former senior Treasury official understood these

6   things so they could better understand how US Treasury

7   officials are thinking about these things.

8          So I have seen it and continue to see it because I

9   continue to speak to people in government and in the industry

10  from both perspectives.

11  Q   Based on that experience, Doctor Levitt, would you

12  address whether there are standards or any other public

13  information that says that there is a safe harbor and people

14  and entities can do business with non-OFAC people as kind of a

15  safe harbor?

16         MR. STEPHENS:  Objection, Your Honor.

17         THE COURT:  I will overrule that objection.

18  A   There is no such thing as a safe harbor or, as I put it

19  when I lecture and write on this, there is no such thing as a

20  blacklist, a designation list or specific names, persons,

21  entities are listed and blacklisted, and there is no de facto

22  white list.  It doesn't mean that if you are not on the

23  blacklist, if you are not on the designation list, you are by

24  definition on a white list.  It doesn't work like that at all.

25         The industry understands this well.  Think about it

Levitt - direct - Werbner                          3054

1    this way.

2              MR. STEPHENS:  Nonresponsive, Your Honor.

3    Q    Let me put another question to you, Doctor Levitt.

4              You are addressing, because I asked about industry

5    standards, would you explain further the industry, the real

6    world and what those standards are in terms of this issue?

7              MR. STEPHENS:  Objection, Your Honor.

8              He is not --

9              THE COURT:  Sustained.

10   Q    Let me ask you about this, Doctor Levitt.

11             Doctor Milton-Edwards said that one of the factors

12   that she considered in coming to her conclusion that these

13   Zakats in question were not controlled by Hamas, that it

14   wasn't US designated, UK designated, UN designated.

15             Do you agree that those are factors that would tell

16   a person that these Zakats are not controlled by Hamas?

17   A    No.

18   Q    Explain why.

19   A    First let's take the UN list.  I believe I testified to

20   this already.

21             The UN list is irrelevant here.

22   Q    Why is that?

23   A    Citing the UN list demonstrates ignorance about what the

24   UN list is.  At the UN, the United Nations, you can only

25   designate, you can only put forward to propose for designation

GR      OCR      CM      CRR      CSR

Levitt - direct - Werbner                3055

1    entities that are tied to Al Qaeda and the Taliban.

2              MR. STEPHENS:  Objection, Your Honor.

3              THE COURT:  When you say you can only, you can only

4    pursuant to what?

5              THE WITNESS:  The statute, 1267 Committee, Hamas is

6    not possible.

7              THE COURT:  Stop.

8              The objection is sustained.

9    Q    But you understand the United Nations, is there any --

10   anything on -- are there any Hamas entities on the UN list?

11   A    No.  Because it's not possible.

12   Q    Now, you -- she mentioned the UK, United Kingdom.  She

13   highlighted in support of her opinion that the Zakats aren't

14   on the United Kingdom list.

15             What experience do you have with respect to the

16   United Kingdom's process so that I can ask you as a follow-up

17   what factor you think that plays in the opinions you gave

18   here.

19             MR. STEPHENS:  Objection, Your Honor.

20             THE COURT:  Overruled.

21   A    First of all, when I was in government, I as a senior US

22   Treasury official had counterparts in Her Majesty's Treasury

23   and the financial services authority in the UK, where these

24   decisions are made at their end.  Separate as an academic,

25   since leaving US government service, I meet with British

GR      OCR      CM      CRR      CSR

Levitt - direct - Werbner                           3056

1    officials I'd say an average at least once a year and have had

2    specific conversations with them on this very question at

3    hand.

4    Q    All right.  Based on that, what is your opinion on the

5    significance of one of these Zakats in question should not be

6    on the UK list as Doctor Milton-Edwards said?

7                  MR. STEPHENS:  Objection, Your Honor.

8                  THE COURT:  Side bar.

9                  (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR       OCR       CM       CRR       CSR

- Sidebar -                                           3057

1          (Sidebar.)

2          THE COURT:  Mr. Stephens, the difficulty I am having

3    with your position is that Doctor Milton Edwards, placed heavy

4    reliance on the U.K. list.  And saying, these people are not

5    listed.  What is wrong with having an expert who appears to

6    have an adequate foundation, coming back and saying, Doctor

7    Milton Edwards is wrong, because the U.K. list has these

8    limitations.  What is wrong with that?

9          MR. STEPHENS:  It is the legal answer, he is talking

10   about the law.

11         THE COURT:  I don't think so.  I'm not hearing that.

12   He is talking about what the British do now, you know, as we

13   talked about in the banking industry standards issue,

14   ultimately people don't do things presumably that are

15   prohibited by law.

16         But, all I am getting out of him is what they do.  I

17   think the plaintiffs have to do that, because of the weight

18   that Doctor Milton Edwards put on the absence of any

19   designation from the U.K. list.  She may well, according to

20   this witness, be giving an inaccurate context to that list.

21         I think the plaintiffs are entitled to elicit an

22   opinion from someone with a foundation that restores the

23   context of what the plaintiff's think ought to be there.

24         MR. STEPHENS:  Her answers to all those questions

25   were not on the U.S. list, not on the UN list, not on the U.K.

- Sidebar -                                                    3058

1    lift or EU list, not that she placed any particular weight on

2    any one or more of them.

3          THE COURT:  Your whole argument at closing is going

4    to be, if it is not on the list, we can't be charged with it.

5    That will be your argument.  The plaintiffs' argument is

6    contrary.  They are saying, the lists are not the be all and

7    end all of the inquiry.

8          Your expert strongly implied, I think even stated,

9    that they are.  This witness is going to say, that they are

10   not.

11         I will not permit him to go into law, I will not

12   permit him to go into state of mind.  But I think he has a

13   factual basis to opine on what an actually happened out there.

14   That much I will let him do.

15         So, I am overruling the objection.

16         (Open court.)

17

18

19

20

21

22

23

24

25

Levitt - Direct - Werbner                    3059

BY MR. WERBNER:

Q    So, Doctor Levitt, based on what really happens and your experience specifically with the Treasury and the United Kingdom, what importance is there on whether the U.K., has designated or not designated when you are evaluating that one of these is or isn't controlled by Hamas?

A    Once the U.K. has designated Hamas, the fact of whether any particular constituent element is also designated becomes less relevant.

In other words, just because an entity by name, is not on the list, doesn't mean it is not Hamas.  It just means that for whatever policy reason, and there are many, as we discussed I think when I was last here, why they might not use this particular tool.

Q    Let me turn to the Watson Memo, which is in evidence as Plaintiff's Exhibit 1297.

While you were gone, Doctor Milton Edwards said this document wasn't out in the public until after the relevant period of time.

Before we address that, what is the importance of the Watson memorandum exhibit, Plaintiffs 1297?

MR. STEPHENS:  Objection, Your Honor.

THE COURT:  Overruled.

A    Watson memorandum is a finished piece of analysis that has gone through the entire F.B.I. vetting system, to the

Levitt - Direct - Werbner                    3060

1    point that the signatory on the memorandum is the assistant

2    director.

3              This is not a memorandum from an analyst to his or

4    her boss or from that boss to the section chief making its

5    way.  This is not a preliminary document.  This is the

6    findings of the Federal Bureau of Investigation.  The premier

7    federal law enforcement and domestic intelligence agency in

8    the world.

9              And suggesting to a partner agency of government, in

10   this case the Department of the Treasury, that this is the

11   evidence that we think is relevant and reliable for your

12   consideration into whether or not you want to use your

13   authority, Treasury, this particular tool, in this case.

14             In other words, the F.B.I. conclusion is, this--

15   these are the facts.  This memo lays out, these entities,

16   according to the F.B.I., are or are controlled by Hamas.

17   Q    And, that would be the Jenin Zakat, the Ramallah Zakat,

18   and the Hebron Islamic Clerical Society and the other ones

19   reflected in here?

20   A    Among others.

21   Q    Five of the eleven or twelve that are in question in this

22   case.

23   A    Correct.

24   Q    And I think you said that it was an important factor in

25   your opinion, that these Zakats were controlled by Hamas

Levitt - Direct - Werbner                    3061

1  because the head of the -- not the number one person, but an

2  assistant director of the F.B.I., wrote it to Treasury, correct?

3  A    It came out under his signatory, head of counter

4  terrorism to the Treasury Department and that is significant.

5  Q    It recommended the designation of what entity?

6  A    Of the Holy Land Foundation for Relief and Development.

7  The basis of which as laid out in the memorandum is the fact

8  that the Holy Land Foundation was partnering with and sending

9  funds to these Zakat committees which the F.B.I. concluded are

10 Hamas.  Hamas is designated, therefore this is a problem.

11 Q    This memo to Treasury from the Assistant Director of the

12 F.B.I., did Treasury accept this memorandum and act in

13 accordance with it?

14         MR. STEPHENS:  Objection, Your Honor.

15         THE COURT:  Sustained.

16 Q    So, after the Holy Land was designated, there were

17 further proceedings related to it, correct?

18 A    Correct, there was an appeal for example.

19 Q    We will come back to those in a minute.

20         But, Doctor Edwards testified that the F.B.I.'s

21 Watson Memo, was a classified document and it wasn't

22 declassified until 2004.  She said it didn't reach the light

23 of day in the U.S. public domain, until the Holy Land trial in

24 2007; is that right?

25 A    No.

Levitt - Direct - Werbner                    3062

1    Q    How wrong is it?

2    A    As wrong as you can get.

3    Q    Explain.

4    A    At a minimum, this document became public in court when

5    the Holy Land Foundation appealed its designation in Court, in

6    HLF versus Ashcroft, Ashcroft was the attorney general.

7            And as part of the Court documents there, and this I

8    believe is about mid 2002, this Watson memorandum was included.

9            So not only was it public, but anybody who is

10   interested or considers themselves a scholar on these issues,

11   would or should have been following this very closely, this

12   was a watershed event.

13   Q    Was the Watson Memo publicly available even back in

14   December of 2001?

15   A    It was.

16   Q    How big an event was it when this Watson Memo was made

17   public in December of 2001?

18           MR. STEPHENS:  Objection.

19           THE COURT:  Overruled.

20   A    It was big enough that it was covered in national

21   newspapers here in the United States, from coast to coast.

22   Q    The memo was dated in November of 2001 and it has a date

23   at the top that it is public 12/3/01.  Had you noticed that in

24   this document?

25   A    I have.

Levitt - Direct - Werbner                    3063

1   Q    How soon after the public disclosure of 12/3/01, did it

2   appear in newspapers?

3   A    Within days.

4   Q    Let's take a look at the L.A. Times article.

5        When we met had you directed my attention to the

6   places that this appeared after the memorandum was made public

7   in 12/3/2001?

8   A    Yes, I gave you some examples.

9   Q    All right.  What is this showing on the screen?

10  A    This is an Internet printout of a Los Angeles Times

11  article dated December 6th, 2001, that would be three days

12  after the markings on the version of the document you have.

13       Where Lisa Getter, L.A. Times staff writer, writes a

14  report based on this document.  If you look at the second

15  paragraph under the redaction, it says, the account is

16  contained in a 49 page F.B.I. document, that the Treasury

17  Department used to support this week's decision, to freeze the

18  assets of Holy Land Foundation for Relief and Development, et

19  cetera.

20       The press had this article and was writing prominent

21  articles in prominent U.S. papers, within days.  This article

22  about the Watson memorandum follows other articles about the

23  actual designation as she says here.  This week's decision to

24  freeze the assets.  Meaning to designate the Holy Land

25  Foundation and this is a big deal.  This is the first time a

Levitt - Direct - Werbner                          3064

1   government is publicly putting out evidence and information to

2   show, to make the charge, to underscore the charge, that these

3   entities are tied to Hamas and that the Holy Land by virtue of

4   funding them, is funding Hamas.

5   Q    Those Zakats?

6   A    Correct.

7   Q    Can you think of any explanation why the bank's expert

8   would not know about this watershed event or claim that it was

9   secret or quote, didn't reach the light of day, till 2007?

10        Can you think of any explanation why a bank expert

11   so called, would do that?

12        MR. STEPHENS:  Objection, Your Honor.

13        THE COURT:  Overruled.

14   A    There are two.

15        One is, as academics, we are following lots of

16   different things, at lots of different times.  It is possible

17   that maybe she wasn't following this issue as closely at the

18   time and this escaped her.

19        As someone who is an expert in Palestinian society

20   and here in this case in Hamas, one would expect at sometime,

21   if not December 6th, 7th, at sometime one would become

22   familiar with this, by virtue of just doing their job and

23   searching out whatever information becomes available on the

24   subject.

25        On a subject where I'm a-- want expertise, want to

Levitt - Direct - Werbner                              3065

1   be able to claim expertise, I'm proactively searching out

2   information not just Googling things and seeing if it pops up

3   or not.

4           The other answer, is that there is such a thing in

5   academia, as selective sourcing, where we are drawn towards

6   sources that seem to support the opinions we already have or

7   are sympathetic to.  We give them more weight.  That is

8   something every academic has to be careful about.

9   Q    The importance of this F.B.I. high level memo, if I'm

10  understanding you, as far as this case is concerned, is it

11  spot on with five of the Zakats that are in question here, right?

12  A    Exactly.

13  Q    So, if someone thought this was not in the light of day,

14  they could avoid some of that evidence?

15          MR. STEPHENS:  Objection, Your Honor.

16          THE COURT:  Sustained.

17  Q    Was the L.A. Times the only newspaper article that came

18  out within days of the release of the Watson Memo?

19  A    No.

20  Q    Let's look at the New York Times.

21          Is the New York Times widely read by the financial

22  industry?

23  A    It is.

24  Q    Show me where the date appears here.

25  A    If you look in the top left, kind of right by-- that's

RB          OCR

Levitt - Direct - Werbner                    3066

1  right.  Highlighted now, December 6th, 2001.  Same day as the

2  L.A. Times article.

3  Q    How significant is it, that the L.A. Times and the New

4  York Times are both reporting on the-- within days of the

5  release of-- how important is it that that is the Watson Memo?

6  A    There are two things that are worth pointing out here.

7  One is that this is getting coverage from coast to coast, in

8  two of the most prominent newspapers in the United States.

9  The kind of newspapers not only people read but other

10  reporters read and that leads to follow up reports, et cetera.

11          The second one, is that this is again, further

12  evidence that the report is out.  It wasn't like one

13  journalist somewhere, somehow, got, you know, the report and

14  it was buried.

15          The L.A. Times, the New York Times, both reporting

16  on the Watson Memo, very very quickly after it becomes public,

17  making it more accessible to the reading public.

18          If you look down in the second paragraph, it talks

19  about how this is recently declassified.  It is referring to

20  information that is in this report.  In other words, the

21  report was declassified apparently around December 2001,

22  December 6th or earlier.

23  Q    Let's talk about that Holy Land Foundation trial that

24  followed from the designation.

25          What was your familiarity briefly with the actual

RB        OCR

Levitt - Direct - Werbner                    3067

1  prosecution, via indictment of the Holy Land Foundation and

2  some of its leaders?

3           MR. STEPHENS:  Objection, Your Honor.

4           Do you need a sidebar for a second?

5           THE COURT:  Let me say, I'm inclined to overrule that

6  preliminary question, you maybe want to wait until he goes on.

7           MR. STEPHENS:  Okay.

8           THE COURT:  Go ahead, you can answer that question.

9  A    I'm very familiar with it, and testified as an expert in

10 that case twice.  As much as I am today, I have testified once

11 and then a few weeks later called back.

12 Q    Have you read the superseding indictment and have you

13 become familiar with the jury verdict in that case?

14 A    I am familiar with it.

15 Q    To what degree are those documents and those findings in

16 the prosecution something that you relied upon in the opinions

17 that you hold about some of the Zakats that are in question in

18 this case?

19 A    It is an important piece of the puzzle.

20          MR. WERBNER:  I have marked the indictment

21 Plaintiff's Exhibit 4442 and the jury verdict Plaintiff's

22 Exhibit 4340 and would offer those in evidence subject to the

23 redaction we discussed Your Honor.

24          THE COURT:  All right those are received over

25 objection.

Levitt - Direct - Werbner                                    3068

1              (So marked.)

2  Q    Doctor Levitt -- may I approach the witness, Your Honor?

3              THE COURT:  You may.

4  Q    I will hand you the Holy Land Foundation superseding

5  indictment, as well as the jury's verdict in that case.  Tell

6  the jury what the Jenin Zakat, the Ramallah Zakat, these other

7  of the Zakats in question, what role they played, what

8  specific statements are in the indictment and the convictions

9  that pertain to those Zakats?

10             MR. STEPHENS:  Objection, Your Honor.

11             THE COURT:  Sustained as to form.  Put a cleaner

12  question, please.

13  Q    All right.

14             What was the-- in summary fashion, those Zakats

15  accused of in the indictment?  What was stated about those

16  Zakats in the indictment you have before you?

17  A    If you like, I can open up and find the specific

18  language.  In a nutshell, they are accused of being Hamas.

19  Q    And, based on the verdict, did the jury make any specific

20  finding of guilt or not guilt as it pertained directly to

21  those five Zakats that the government said were Hamas or

22  controlled by Hamas?

23             MR. STEPHENS:  Objection, Your Honor.

24             THE COURT:  Let's have a sidebar.

25             (Sidebar.)

- Sidebar -                                                3069

1          THE COURT:  In case I was not clear, Count One, I'm

2    not letting in.

3          MR. WERBNER:  Right.

4          THE COURT:  Just Counts 2 through ten.

5          MR. WERBNER:  Right.

6          THE COURT:  What is the objection?

7          MR. STEPHENS:  He asked him what was in the jury's

8    mind.

9          THE COURT:  He is saying, what did the jury find.

10   If you want him to go through count by count, Counts 2 through

11   ten, skipping nine, he can do that.

12         This is a summary way to get at it to save time.  I

13   will give you your choice.

14         MR. STEPHENS:  Just rephrase the question.  What is

15   in the-- it is not in the jury's mind, what is the overall

16   finding.

17         MR. WERBNER:  I will take your choice, I will do it

18   quickly.

19         (Open Court.)

20

21

22

23

24

25

Levitt - Direct - Werbner                    3070

1          THE COURT:  Go ahead.

2     Q    Doctor Levitt, would you turn in the indictment to Count

3     Two, which I think, let's see, probably appears on page 20.

4          Do you see down at the bottom of page 20 of the

5     indictment, a little chart that has Count Two, and then a date

6     and an amount and an organization; and then, Count Three, a

7     date, an amount, an organization; Count Four, likewise; Count

8     Five through Ten, likewise.  Do you see that?

9     A    I do.

10    Q    On Count Two, what was the organization that was

11    designated in the indictment as being the Hamas organization?

12    A    The Ramallah Zakat Committee.

13    Q    What was the organization in the indictment on Count

14    Three, said to be Hamas?

15    A    Islamic Charity Society Hebron.

16    Q    What was the organization in the indictment said to be

17    Hamas in Count Four?

18    A    Jenin Zakat Committee.

19    Q    And in Count Five?

20    A    The Ramallah Zakat Committee.

21    Q    And Count Six?

22    A    The Islamic Charity Society of Hebron.

23    Q    Count Seven and Eight?

24    A    The Jenin Zakat Committee, Seven; and Eight, the Nablus

25    Zakat Committee.

Levitt - Direct - Werbner                    3071

1   Q     And Count Ten?

2   A     Count ten, the Nablus Zakat Committee.

3               MR. WERBNER:  Your Honor, may I put that chart

4   quickly on the screen?

5               THE COURT:  You may.

6               MR. WERBNER:  That will be page 20 and 21 of the

7   indictment which we have already up there.

8               So if you can blowup at the bottom, where the counts

9   on the chart are, is that what we were just going through

10  where this indictment had numerous counts or charges of

11  crimes, correct?

12  A     Correct.

13  Q     And, we can go to the next page and see the counts

14  through ten.  You have the jury verdict in front of you?

15  A     I do.

16  Q     Did the jury convict on Counts 2 through 8 and Count 10,

17  the very Zakats that we have involved in this case?

18              MR. STEPHENS:  Objection.

19  A     Yes.

20              THE COURT:  Overruled.

21  A     Yes.

22              THE COURT:  Do you need a sidebar?

23              MR. STEPHENS:  Yes.

24              THE COURT:  Okay.

25              (Sidebar.)

- Sidebar -                                               3072

1          MR. STEPHENS:  I don't believe the jury convicted

2    the Zakat of anything.  The Holy Land Foundation was

3    convicted.  That was the question.

4          THE COURT:  That's a good point.

5          MR. WERBNER:  I will clarify.

6          (Open Court.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Levitt - Direct - Werbner                    3073

1          THE COURT:  I will strike the last question and

2     answer, put another question.

3     Q    Were the Zakats in those counts parties to the case in

4     Dallas, Texas?

5     A    I don't know if that is a legal term, parties to the

6     case, I'm not a lawyer.

7               They were not-- they were not being charged.  They

8     were-- the basis for the case.  As the count-- as the

9     indictment makes explicit in the paragraph right above it.

10    There is no confusion there whatsoever, that the charge which

11    ultimately there was a conviction on the charge, on each of

12    those charges, is that these individuals and the

13    organizations, Holy Land Foundation, I'm on page 20 here, did

14    knowingly provide, attempt to provide material support and

15    resources, as those terms are defined in--

16         THE COURT:  Stop.  Don't read that.  Another

17    question, please.

18    Q    So, what is clear from here as you know it, is that the

19    conviction, not of those Zakats, but of the defendants in the

20    case, was by dealing with those Zakat Hamas controlled

21    entities?

22              MR. STEPHENS:  Objection, Your Honor.

23              THE COURT:  Overruled.

24    A    By definition, there is no confusion here, the charges

25    that they were funding Hamas.  The entities they were funding

Levitt - Direct - Werbner                    3074

1   is the list we just gave, and the indictment is clear, what

2   part of Hamas did they give it to, Ramallah Zakat, Islamic

3   Charity Hebron, Jenin Zakat, Ramallah Zakat, et cetera.

4   Q    So, what extent is the fact that this occurred in the

5   Holy Land trial, impact your decision, your opinion, that

6   these Zakats are controlled by Hamas?

7   A    So now you not only have the opinion and finding of the

8   F.B.I., you have not only the opinion and finding of the

9   Treasury Department, you have a conviction in Federal Court,

10  by a jury of peers, upheld at the appellate level, determining

11  that based on the totality of the evidence, these entities are

12  Hamas.

13         By giving money to these entities, that is Hamas,

14  the Holy Land Foundation was funding Hamas, providing material

15  support to a terrorist group.

16  Q    Were those five Zakats designated?

17  A    No, nor do they have to be.

18  Q    Doctor Levitt, Doctor Milton Edwards said that Hamas was

19  in the shadows until 2005.  Do you agree with that?

20  A    Not at all.

21  Q    Why?

22  A    Because I had no special insider knowledge myself, but I

23  was on the ground in the Gaza Strip and the West Bank doing

24  research on these groups in 1997, as were a ton of other

25  people.  Articles, journal articles, books, there is tons of

Levitt - Direct - Werbner                    3075

1   materials out there.  Hamas is making statements to the press,

2   unless you are an ostrich with your head in the sand, in what

3   way is that not in the public eye before 1995.

4           These activities are happening in 2001, HLF is

5   designated.  What part of this is not public?

6   Q    Could a real unbiased expert make a statement that Hamas

7   was in the shadows until 2005?

8           MR. STEPHENS:  Objection, Your Honor.

9           THE COURT:  Sustained.

10  Q    In your opinion, how significant is it for someone to say

11  that claims to be an expert, that the Watson Memo wasn't

12  public, until '05 or later, and Hamas was in the shadows?

13          MR. STEPHENS:  Objection, Your Honor.

14          THE COURT:  Sustained.

15  Q    Doctor Levitt, based on everything that you have seen in

16  the testimony and the other things since you were here, what

17  is your level of confidence in supporting what you said about

18  these entities being controlled by Hamas?

19  A    There is absolutely no question and there are multiple

20  and corroborating sources from the German intelligence service

21  to the F.B.I., to the Court convictions, to the Treasury

22  Department, to lots of academic research that has been done,

23  it is not just governments.  There is a tremendous amount of

24  information out there, and you just can't choose to ignore it.

25          A group that was carrying out suicide bombings which

1  got huge public coverage in the press, is not a group that is

2  acting in the shadows.

3          MR. WERBNER:  Thank you, Doctor Levitt.

4          THE COURT:  All right.  Cross.

5          MR. STEPHENS:  We need an attendant to do this.

6          THE COURT:  The government is short of money right

7  now.

8  CROSS EXAMINATION BY MR. STEPHENS:

9  Q    Good morning, Doctor Levitt, how are you?

10 A    Good.  Good morning, nice to see you.

11 Q    Can you tell the jury please, how much in total you have

12 been paid actually to give your testimony in this case?

13 A    You know, it is funny, I expected you to ask me that last

14 time.  I had that number prepared.  I don't know the total.

15 Four hundred an hour I charge.  I should charge more than that

16 now.  This case started so long ago, it has been

17 grandfathered.  My guess the total over the past few years it

18 is about $30,000 or so, total.  That all depends on how much

19 time it took.

20 Q    I want to talk to you for a minute about the Watson Memo.

21          The F.B.I. is the United States police, isn't it?

22 A    It is a federal law enforcement.  More than police, also

23 domestic intelligence.

24 Q    But like the police, right?

25 A    Sure.

Levitt - Cross - Stephens                    3077

1   Q    Right.

2        And the F.B.I. can't indict anybody, can it?

3   A    F.B.I. like any law enforcement works closely with

4   prosecutors and the prosecutors choose whether or not to

5   indict.

6   Q    That's right.

7        And the F.B.I. can't designate anybody on a

8   terrorists list, can it?

9   A    That's correct.

10  Q    Right.

11       That has to happen through the Treasury Department,

12  right?

13  A    Or the State Department.  They both have the authority.

14  Q    Right.

15       So, you don't think by the way that every accusation

16  made by a policeman is true, do you?

17  A    No, it gets a lot more credence when it is upheld in

18  court and at the appellate level as well.

19  Q    Okay.  And, you are aware, that when Mr. Dale Watson who

20  actually wrote the Watson Memo sent it off to Treasury, it

21  was -- if I can see slide 14 -- an action memo, right?

22  A    First, correction.

23       If it were only the case that the guy who signs the

24  memo wrote it, Dale Watson is the number two in the F.B.I.,

25  something of importance goes all the way up the chain up to

Levitt - Cross - Stephens                    3078

1    him.  It goes out under his initials.  But someone else wrote

2    the memo.

3    Q    Do you know who that was?

4    A    No.

5    Q    So, we have a memo signed by Mr. Watson, who didn't write

6    it, right?

7    A    Correct.

8    Q    We don't know who wrote it, but in any event, we do know

9    that it is an action memo, right?

10   A    Correct.

11   Q    And, Mr. Watson or whoever it was that wrote the memo,

12   sent it to the Treasury Department, namely Mr. Richard Newcomb

13   who was the director of OFAC, right?

14   A    Correct.

15   Q    What he was suggesting, from what the memo suggested,

16   whoever wrote it, was a number of things, 49 pages long, isn't

17   it?

18   A    It is 49 pages long.

19   Q    And, if I can see the memo itself, I can see slide 15.

20        The memo itself actually mentions the Islamic

21   Charity Association in Hebron, the Ramallah Zakat Committee,

22   the Jenin Zakat Committee, the Nablus Zakat and the Toklarem

23   Zakat Committee, doesn't it?

24   A    Among others, yes.

25   Q    Right.

Levitt - Cross - Stephens                    3079

1          And, OFAC, the United States Treasury through OFAC,

2     is the United States agency charged with deciding whether or

3     not to designate any one of those as a terrorist organization?

4     A    Not exactly, we covered this the last time.  This is an

5     interagency process, the authority resides with Treasury and

6     with the State Department.

7          And OFAC would be the agency to actually implement

8     the designation, if the interagency, the collection of

9     different agencies and departments, that would weigh into this

10    collectively, decide that this is the policy option they want

11    to pursue.

12    Q    And the plain fact of the matter is, that the United

13    States Treasury Department, in particular the director of

14    OFAC, decided that he wasn't going to designate those five

15    committees as terrorists, didn't it or he?

16    A    As you know from the memo, that is not what the memo was

17    suggesting.  The memo doesn't say, F.B.I. thinks you should

18    designate these entities, you have here in sub paragraph B.

19         As you saw from the heading, the memo is about the

20    Holy Land Foundation for Relief and Development.  What follows

21    including this page, deep in, is the evidence upon which the

22    conclusion that the HLF, the Holy Land Foundation was

23    financing Hamas is based upon.  That is based upon the

24    conclusion that these 49 pages go into in detail, that these

25    and the other Zakat committees and entities listed here, are

Hamas.

Q    We will go to that in a minute.  If we can get back to my question.

That is, that despite the fact that the F.B.I., someone at the F.B.I. wrote a memo to Treasury saying, look these are, these five Zakat committees are recipients of funds from the Holy Land Foundation, Treasury Department never ever designated them as terrorists, did it?

A    Nor was that what the memorandum was about.

There is probably lots of other entities in here, and they are not designated either.  Not only is there no requirement to do so, but that is not what the memo is about. Look at the first page of the memo again.

Re, regarding, Holy Land Foundation for Relief and Development. It was about whether or not that entity should be designated, not whether any of the constituent entities that the F.B.I. was saying are Hamas, should be designated.

And, no, they were not.

Q    Thank you, that was the question, no, they were not. They were not only not designated in 2001, they were never designated, were they?

A    Correct.

Q    You actually wrote your expert report, you didn't have a copy of the exhibits to the Watson Memo, did you?

A    I have some of them, I don't have all of them.

Levitt - Cross - Stephens                                3081

1  Q    And the Watson report itself actually relies on some

2  newspapers articles, doesn't it?

3  A    It sources to all kinds of different things.  When the

4  F.B.I. cites to a newspaper article, it is not just taking the

5  newspaper article at face value, we are talking about the

6  F.B.I. here, it means they have got information that

7  corroborates this, it is a lot easier to cite to a public

8  document then to have to declassify, a classified one.

9          This is not like some college kid citing, you know

10  an undergraduate paper.  If the F.B.I. is citing to an

11  article, it believes there is something to it.

12  Q    Right.

13          So, one of the articles that the Watson Memo cites

14  to is a USA Today article dated August 13, 2001, isn't it?

15  A    Yes.

16  Q    And, it turned out, that the reporter who wrote that

17  article was lying about it, wasn't he?

18  A    Turns out this reporter made up a whole bunch of stories.

19  Q    Right.

20          So the Watson Memo relies on a newspaper report,

21  cites it.  Actually take a look at page 27, there is a whole

22  paragraph here from that article, written by a reporter who

23  turns out was fabricating it all.

24  A    I'm sorry, do you want me to look at it or not?

25  Q    Only if you would like.

Levitt - Cross - Stephens                              3082

1    A    You said take a look at it.

2              So, yes, as I said, this means that the article in

3    question was talking about something, the type of behavior

4    that the F.B.I., has seen from other sources.  If I recall

5    correctly without you showing it to me, he is writing about

6    visiting a Zakat Committee where they were singing Hamas songs

7    or something like that, and he wasn't even in the country at

8    the time.

9              But clearly the F.B.I. had information of just this

10   type of thing, and therefore, cited to this as an example.

11   Unfortunately this turned out to be a fabricator.  Also, this

12   report is by no means just based on press reports.

13   Q    We know it is based on at least one false press report,

14   don't we.

15   A    I would not say it is based on the false press report.  I

16   would say the 49 page document with however many footnotes it

17   has, includes one press report, that is one small piece of

18   making an example that turned out to be false.

19              (Transcript continues on next page.)

20

21

22

23

24

25

RB        OCR

Levitt - cross - Stephens                          3083

1   (CONTINUING)

2   Q    Could we please see PX 1518, and I don't know whether

3   it's in evidence or not, so.  It is?

4         MR. STEPHENS:  These are all pre-admitted,

5   Your Honor.

6         THE COURT:  Okay.

7   Q    So could we see PX 1518.

8         You and I looked at some of these SWIFT messages

9   when were here earlier, did we not?

10  A    We did.

11  Q    All right.  And this one is dated July 22, 2003, you see

12  that?

13  A    I see it.  Top of the page.

14  Q    Right.  And it is going to -- from the International

15  Islamic Charitable Association, do you see that?

16  A    I see that.

17  Q    And it's going to the Tolkarem Zakat Committee; is it

18  not?

19  A    Yes.

20  Q    Right.  And it went through OFAC and it was not a match.

21        Do you see that?

22  A    Yes.

23  Q    Okay.  So we know from this document and also from the

24  earlier testimony that the Tolkarem Zakat Committee is one of

25  the ones that's mentioned in the Watson memo; isn't it?

Levitt - cross - Stephens                3084

1   A    Correct.

2   Q    All right.  If you take a look at this just a little bit

3   bigger, all right.  At the top here, you can see that there is

4   an ABA with Citibank National Association?

5   A    Yes.

6   Q    Do you see that?

7   A    It's hard to see here, but I see ABA, some number, there

8   we go -- yes.  Citibank NA.

9   Q    This transfer also went through Citibank; didn't it?

10  A    So it appears, yes.

11  Q    So it went through OFAC not once, but twice?

12  A    One would hope.  It doesn't go through OFAC.  These banks

13  would have checked the list.

14  Q    That's right and because the Tolkarem Zakat Committee

15  wasn't on the list, the transaction went through; right?

16  A    Well, the transaction went through and it wasn't on the

17  list.  I can't say that that's why it happened.  That would

18  imply that checking the OFAC list is enough and I don't think

19  that's the case.

20  Q    Well, we had a banking expert here just yesterday --

21           MR. WERBNER:  Your Honor, I'm going object.

22           THE COURT:  Let's wait for a question.

23           Go ahead.

24  Q    Named Ann Vitale, who doesn't quite agree with that, do

25  you know that?

Levitt - cross - Stephens                                3085

1    A    I do now.

2    Q    Because I said it?

3    A    Yes.

4    Q    Okay.

5    A    And I knew you had a banking witness.

6    Q    Do you know what the Wolfsberg Convention is?

7              MR. WERBNER:  Your Honor, this is beyond the scope.

8              THE COURT:  I'm going to allow this.

9    Q    Do you know that under the Wolfsberg Convention the

10   primary tool, according to that conference, for fighting

11   terror financing is the blacklists, like OFAC?

12   A    I haven't looked at this in a long time.  I am familiar

13   with it, but I'm equally familiar with the fact, for example,

14   that other organizations, more prominent ones indeed, like the

15   Financial Action Task Force, FATF, have come up with a list of

16   recommendations and special recommendations for combatting

17   illicit and, in particular, terror finance.

18              And so there are different organizations that lay

19   out thresholds differently.  And when you talk to private

20   sector institutions, as I do, they have on top of all of

21   those, on top of their strictly legal and whatever other

22   standards that international bodies lay out, their own

23   interest in protecting themselves from reputational risk,

24   their own due diligence obligations, fiduciary obligations to

25   their shareholders where they want to make sure they're doing

Levitt - cross - Stephens                          3086

1   the right thing, not just the bare minimum.

2   Q    Could we take a look please, at slide fifteen again, the

3   Watson memo.

4        Take a look at this page where the Zakats appear and

5   down here there is also the Dar El Salam Hospital.

6        Do you see that?

7   A    Yes.

8   Q    All right.  So, whoever wrote the Watson memo mentioned

9   that organization in the memo; right?

10  A    Correct.

11  Q    So, now, could we look please, at PX 2456.

12       PX 2456 is another SWIFT payment, do you see that?

13  Dated October 11th, 2002?

14  A    Yes.

15  Q    And it's coming from the Al-Aqsa foundation.

16       Do you see that?

17  A    I do.

18  Q    And it's going to beneficiary party Dar El Salam

19  Hospital?

20  A    WAFA Charitable Society Dar El Salam Hospital.

21  Q    All right.  And it went through OFAC did it not?

22  A    Again, no such thing as going through OFAC.  The way

23  you're stating it suggests OFAC is running a search.  What

24  this shows is that the bank ran a check against the OFAC list

25  and didn't get a hit.

VB        OCR        CRR

Levitt - cross - Stephens                    3087

1    Q    Okay.  We're saying the same thing, just different.

2              So, it got cleared through OFAC and if you look at

3    the top of it, fourth line down, you see the ABA JP Morgan

4    Chase Bank?

5    A    I do.

6    Q    So, that transfer also went through JP Morgan Chase; did

7    it not?

8    A    It did.

9    Q    I want to ask you one or two other things please, but now

10   about the Holy Land Foundation.

11             The Holy Land Foundation indictment and conviction

12   that you were discussing in your testimony a bit earlier

13   happened in 2008; did it not?

14   A    Correct.

15   Q    Four years after the end of the second intifada; right?

16   A    Approximately, yes.

17   Q    All right.  And the only defendant in the case was the

18   Holy Land Foundation; wasn't it?

19   A    And several of its officers.

20   Q    No one of these Zakats was a defendant in the case, was

21   it?

22   A    Correct.

23   Q    Then last of all, you're aware, are you not, that between

24   2000 and 2004 -- in fact, I'm going to back up something else

25   which is the USAID, which you and I discussed in your

VB        OCR        CRR

1    testimony previously.

2         Would you remind the jury once again what USAID is?

3    A    USAID is the U.S. agency for international development

4    and it is part of the -- well, sometimes, at certain points in

5    time it's actually been part of the State Department or a

6    sister agency of the State Department, a U.S. Government

7    agency, through which the U.S. Government provides

8    international aid and assistance abroad.

9    Q    All right.  And between 2000 and 2004, USAID was giving

10   grants and doing business with some of the Zakats that you say

11   were controlled by Hamas; was it not?

12   A    As we discussed, USAID, which is an aid organization

13   trying to get aid where it's needed as quickly as possible,

14   was doing business with some of these entities, which led --

15   as we discussed -- to a huge fight within the U.S. Government,

16   eventually, a very heated meeting and the cessation of USAID's

17   participation work partnering with and funding programs

18   through these organizations.

19        You had a very clear left-hand, right-hand issue and

20   a massive U.S. Government bureaucracy where part of the

21   U.S. Government had already concluded these agencies, these

22   entities, these Zakat committees were Hamas and another part

23   of the U.S. Government that was not part of the intelligence

24   community, that was not part of law enforcement was working

25   through them anyway.  And that was more than a little bit

1    embarrassing.

2    Q    But what we do know for sure is that the United States

3    Treasury Department, which is the agency that received the

4    Watson memo and the agency responsible for designating these

5    charitable societies as terrorists, or not, chose not to;

6    don't we?

7    A    What we know is that the U.S. Government has multiple

8    tools at its disposal and the U.S. Government, the inner

9    agency through Treasury and State which has these authorities,

10   elected not to use the designation tools in these cases.

11         It may be doing other things, but it is not the

12   case, not in terms of regulation or law, there is no

13   obligation on the Treasury or State Departments to designate

14   every entity that these know or believe is a terrorist entity.

15   That's only one of the tools they may use if they so choose

16   and they do not designate everyone they know of.

17   Q    One more subject, Dr. Levitt, and that is, you've

18   actually never visited any of the Zakat committees that you

19   talk about in your report, have you?

20   A    Not these, no.

21   Q    All right.  And you agree that the Zakat committees

22   engage in charity; do you not?

23   A    They do multiple things.  They do provide charity, they

24   tend to earmark that charity for Hamas benefit.  They serve

25   other services for Hamas, as we've discussed, but yes, they do

Levitt - cross - Stephens                    3090

1   provide charity, sometimes efficiently because they're there

2   on the ground, which is why a group like USAID might have

3   wanted to work with them and would have looked more closely at

4   whether or not they are doing social service activities on the

5   ground and less at what they're affiliated with and who

6   they're providing that aid to.

7   Q    Now, your view is that if you know that a charity is

8   providing actually humanitarian services, that doesn't do you

9   any good in knowing what the charity is doing, as you put it,

10  covertly; right?

11  A    Yes.

12  Q    And in order to figure out whether or not a charity is

13  really engaged in some illicit activity underneath of its

14  charitable activity, you have much greater success talking to

15  investigators, overseers, regulators and reading Government

16  reports than from actually going there and observing; isn't

17  that your testimony?

18  A    So, because these --

19  Q    I'm sorry, but is that your testimony or not?

20  A    Well, you're reading something I don't have in front of

21  me.  Maybe you'll ask the questions I'll answer them.

22  Q    Actually, I'd like to know; yes or no.

23         Do you recall -- in fact, let me do it for you

24  differently, which is, is it your position that to be

25  successful in identifying illicit conduct you really need law

Levitt - cross - Stephens                    3091

1    enforcement and intelligence support?

2    A    You need to speak to those types of entities and others.

3    As an academic I'm able to find out this information by

4    speaking to law enforcement, intelligence, other academics,

5    lots of different places.  But you can't simply kind of Google

6    these or go up to the front door, knock and say excuse me, are

7    you engaged in illicit activity and expect them to be honest

8    with you -- and tell you about the illicit activity that

9    they're engaged in.

10          When I was last here, we discussed the Al Capone

11   analogy where you can't expect to ask Al Capone are you a mob

12   boss and to have him say yes, actually, I am.

13   Q    We're coming full circle and I should sit down soon

14   because the last time you brought that up I was right at the

15   point in my outline where it says Al Capone and son of a gun,

16   I'm there again.

17   A    We're in sync, that's good.

18   Q    So, two or three more questions, or four or five.

19          You do agree that these covert activities, the

20   illicit activities that would be associated with Hamas, the

21   people involved in them go to great lengths to hide them from

22   the public eye?

23   A    So I think we discussed this before, too.  They go to

24   great lengths to hide certain types of their activities.  And

25   other types of activities they go to great lengths to make

VB        OCR        CRR

1  public.

2          Hamas wants to be able to get support for its

3  organization based on the support it's providing people.  So

4  you could see posters of martyrs and people who have carried

5  out attacks and that's not hiding a whole lot of anything.

6  But there are other things they would go to great lengths to

7  hide.

8  Q    In your report you write, do you not, that quote, after

9  the assassinations of Sheikh Yassin in 2003 and his successor

10  Al Rantisi in 2004, Ismail Haniya was reportedly named to

11  Hamas's collective leadership though the exact identities of

12  Hamas's leaders were kept secret.

13  A    I'm sorry, I'm just laughing because we had this exact

14  exchange about four weeks ago and the answer is that's one

15  example of the type of thing they would try to keep secret.

16          Israel had assassinated two Hamas leaders in the

17  row.  And Hamas kind of got the message maybe it wouldn't be

18  so smart to make public who the next leader was and put a

19  target on his back.  There are other things Hamas does where

20  they were very public about what they're doing.

21  Q    You also agree, do you not, that even after Israel ceded

22  control under the Oslo Accords to the Palestinian Authority in

23  1994 of certain areas in the West Bank and Gaza, the Israeli

24  Army could still go in and arrest people for security

25  concerns --

Proceedings                                      3093

1          MR. WERBNER:  Your Honor, I'm going to object.  This

2    is beyond the scope and out of the relevant time.

3          THE COURT:  And also, we did this before.

4          You can have this question.

5          MR. STEPHENS:  That's the last question.

6          THE COURT:  Okay, go ahead.

7          THE WITNESS:  I'm sorry, can you ask it again?

8    Q    Sure.

9          You agree, do you not, that even after Israel ceded

10   control under the Oslo Accords to the Palestinian Authority in

11   1994 of certain areas of the West Bank and Gaza, the Israeli

12   Army could still go into those areas and arrest people for

13   security concerns?

14   A    They could.  They didn't always.  The Palestinian

15   Authority could, too and times it was in tandem.  And more

16   than once the Israelis or the Palestinian Authority themselves

17   raided some of the very Zakat committees we're talking about.

18         MR. STEPHENS:  I have nothing further, Your Honor.

19         Move to strike that last answer.

20         THE COURT:  No, I am going to deny that.

21         MR. WERBNER:  We have nothing further.

22         THE COURT:  All right, you may step down, thank you

23   very much.

24         (Witness excused.)

25         THE COURT:  All right any further rebuttal from

Side-Bar                                                    3094

1   plaintiffs.

2         MR. WERBNER:  Your Honor, we have a brief

3   stipulation to read into the record and what we would like to

4   do is post Exhibit 2080, which is in evidence, so that the

5   document can put into context the portion of the SWIFT that is

6   stipulated to.

7         THE COURT:  Okay.  I am just trying to recall if I

8   have instructed the jury previously on what a stipulation is,

9   aside from mentioning it in the preliminary instructions.

10        I think this may be our first stipulation.

11        MR. WERBNER:  I think it is.

12        MR. COLES:  Also, we agreed to a stipulation, not

13  pairing it with anything.  That's for closing argument.

14        THE COURT:  That sounds right.  Let's have a

15  side-bar, please.

16        (Side-bar conference held on the record out of the

17  hearing of the jury.)

18

19        (Side-bar.)

20        THE COURT:  Can I see the stip first, please.

21        MR. TURNER:  Sure.

22        (Pause in the proceedings.)

23        THE COURT:  Yes?

24        MR. TURNER:  What we want to do is simply put a

25  SWIFT form up, highlight the line that is the fourth

Side-Bar                                          3095

1   stipulation and just show them what the stipulation relates

2   to.

3            THE COURT:  Are you going to say anything about it?

4            MR. TURNER:  No, sir.  Not at all.

5            MR. COLES:  Two objections.

6            One, I didn't agree to that and two, when we spoke,

7   when they proposed the lines that they wanted to do yesterday,

8   it was not the Yassin transfer, it was a transfer for Tarik

9   Marzook.

10           I don't think any of this is appropriate in the

11  context of a stipulation.

12           THE COURT:  Well, the stipulation is to avoid having

13  to call Mr. Schultz.  If they called Mr. Schultz, he would say

14  these things and they would show him this Exhibit and say this

15  is what you're talking about; right?

16           That's all they are doing.

17           MR. TURNER:  We're not even going to show Sheikh

18  Yassin's name.  We're just going to highlight in yellow that

19  one line that says BNF party.  That's all we're interested in

20  doing.

21           THE COURT:  Can we use a SWIFT other than the Yassin

22  SWIFT?

23           MR. OSEN:  Yes, we can use the Marzook one, too.

24           THE COURT:  Fine, let's do that.

25           (Side-bar end.)

1

2          (In open court.)

3          THE COURT:  Ladies and gentlemen, as I mentioned in

4   the preliminary instructions some time ago, it actually

5   happens that the attorneys from time to time will agree on

6   certain facts.  When they agree on those facts, you must

7   accept those facts as true.

8          Now, in this case, I understand there is a

9   stipulation as to what a particular witness would testify to

10  and that means you have to assume that if that witness were

11  called to the stand, he would say what is in the stipulation.

12         The whole purpose of this is to just save a little

13  time and not having to call the witness when the parties

14  recognize that this is was the witness would say.

15         All right, please proceed.

16         MR. OSEN:  Your Honor, we might need a five-second

17  side-bar, too, sorry.

18         THE COURT:  Okay.  We're almost there.

19         (Side-bar conference held on the record out of the

20  hearing of the jury.)

21

22         (Side-bar.)

23         THE COURT:  What is the problem now?

24         MR. OSEN:  He can't quickly locate another transfer,

25  the Marzook one.

Proceedings                                    3097

1          THE COURT:  Really?  He's so good.

2          MR. OSEN:  Can we take a five, ten-minute break?

3          MR. TURNER:  Can we just put another one up?  Does

4     it have to be the Marzook.

5          THE COURT:  I think we're going to stay.  I don't

6     want to take a ten-minute break, come in for 30 seconds and

7     then adjourn the trial.

8          MR. OSEN:  All we were going to show is that one

9     line of the other one.

10          THE COURT:  We will wait while you find it.  He will

11     be incentivised to find it faster.

12          (Side-bar end.)

13

14          (In open court.)

15          MR. INGERMAN:  1914.

16          THE COURT:  They are just looking up a document,

17     ladies and gentlemen.

18          (Pause in the proceedings.)

19          MR. OSEN:  I'm sorry, we're set, Your Honor.

20          THE COURT:  You are ready.

21          MR. TURNER:  Go ahead and put it up.

22          The parties stipulate and agree that if called to

23     testify Mr. Ted Schultz would testify as follows:

24          Ted Schultz was an employee of Arab Bank New York

25     branch for almost 20 years.

Proceedings                                          3098

1          He left the bank in 2005.

2          His last position at the bank was assistant vice

3    president of operations.

4          With regard to the wire transfer or SWIFT forms, the

5    line that says credit/BNF party followed by a string of

6    numbers refers to the ultimate beneficiary and his account

7    number.

8          The ABA followed by a string of numbers is a

9    nine-digit American banker's association routing number.

10         That is the stipulation, Your Honor.

11         THE COURT:  Is there anything further from

12   plaintiffs?

13         MR. TURNER:  No, sir.

14         THE COURT:  All right, ladies and gentlemen, both

15   sides have rested in the case.  The way the schedule is going

16   to proceed is this.  I am going to work with the attorneys

17   now, soon, to finalize the final instructions that I am going

18   to give you.

19         Then, tomorrow morning at 9:30, we will have closing

20   arguments from both sides; one at a time, obviously.

21         And then, either tomorrow or potentially Friday

22   morning -- if you're all available on Friday because I know I

23   didn't tell you Friday, but I am hoping you are -- you will

24   begin your deliberations.

25         It may be necessary, depending on the length of the

Proceedings                                              3099

1   closings for me to give you your final instructions Friday

2   morning.  It will take about half an hour, 45 minutes to do

3   that, so we'll see how it goes tomorrow, but you will get the

4   case Friday morning, assuming that you are all available.

5           So, at this point in the case, your oath becomes

6   particularly important.  It's really important that you stay

7   away from any press coverage of the case at all.  I know you

8   know how to do that.  Please, do not communicate with anyone

9   at all.  Remember, you can just tell them you are a juror in a

10  civil case in Federal Court and that's it.  That is all you

11  can say.  Please, do not communicate on any Internet resource

12  or do any communication on the Internet about the case at all.

13  We don't want to do anything to jeopardize the trial at this

14  late stage, so please be particularly rigorous about following

15  these instructions.

16          Keep an open mind.  Have a good night.  We'll see

17  you tomorrow morning for closing arguments at 9:30.

18          Thank you.

19          (Jury exits.)

20          (In open court; outside the presence of the jury.)

21          THE COURT:  Okay, let's take a 20-minute recess.  We

22  will reconvene at 11:20 and have the charging conference.

23          (Recess taken.)

24

25          (Continued on following page.)

VB        OCR        CRR

3100

1          (The following occurred in the absence of the jury.)

2          THE COURT:  Be seated, please.

3          Okay.  This is the charging conference in the case.

4    As I said yesterday, I have considered the parties' proposed

5    charges and I think their legal theories are very clear from

6    those proposals.  What I have distributed to the parties

7    reflects my view of how those should come out.  I want you to

8    be assured that the legal theories set forth in your proposed

9    charge have been considered.

10         That's not to say you can't raise it again today if

11   you want to.  I am happy to listen to it.  If I am persuaded,

12   I will redo that.  I don't want you to feel you have to

13   educate me on that unless you raise something and it is clear

14   that I missed the boat, which is always possible.

15         The way I want to proceed with this is to go page by

16   page through my proposed charge to you.  If you have either

17   language changes or an insertion of an additional charge that

18   you think belongs in a particular place, let me know as we get

19   to that page.  At the end, if there are other things that you

20   want to add, let me know that as well.

21         It is not like you are waiving anything if you don't

22   ask me to insert something at the right place.  But try to do

23   that if it makes sense to change something at a particular

24   place that we are coming to.

25         So starting on page three --

3101

1          MR. OSEN:  I'm sorry, Your Honor.  Would it be

2    helpful?  We have a markup, we have given to the defendant, so

3    that when we reach that point you see the language that we

4    have which obviously you can take or leave as you wish?

5          THE COURT:  I guess that would be helpful for me to

6    have, sure.  But I am still going to rely on you to tell me

7    when I need to look at your proposal.  I am not going to keep

8    checking to make sure I am not missing anything.

9          MR. OSEN:  Yes.

10          THE COURT:  Anything on page three?

11          Four?

12          I am going to go a little faster on the preliminary

13    part because it is mostly boiler plate.

14          Five?

15          Six?

16          Seven?

17          Eight?

18          Nine?

19          Ten?

20          Eleven?

21          MR. OSEN:  Yes, Your Honor.

22          As to page eleven.  I'm sorry.  My apologies, Your

23    Honor.

24          Your Honor, the reason you are confused is our

25    fault, because in redoing it in Word, to make the edits, it

GR        OCR        CM        CRR        CSR

3102

1  changed the pagination.  We will just draw your attention to

2  it when the time comes.

3         THE COURT:  Okay.  So on my eleven, you have

4  nothing, right?

5         MR. OSEN:  No.

6         THE COURT:  Okay.

7         Twelve?

8         Thirteen?

9         Fourteen?

10        MR. OSEN:  Yes, at page 14, Your Honor.

11        THE COURT:  Okay.  Let me look at your proposal.

12        MR. OSEN:  That's on page eleven of our version.

13        (Pause.)

14        THE COURT:  All right.  Any objection to those

15  proposed changes by defendant?

16        MR. COLES:  We prefer yours, which I think is fine.

17  This adds words without anything of substance.  I would like

18  to stick with the Court's Section H.

19        MR. OSEN:  Our point, Your Honor, is that the

20  adverse inference is evidence.  It's not the sole evidence

21  upon which the jury can rely upon.  But we don't want the

22  other impression, that it cannot be used as evidence.  That's

23  why the phrase by itself --

24        THE COURT:  I will give you by itself and I will

25  give you, find instead of believe, in the third line.

GR      OCR      CM      CRR      CSR

1          So in the first line, after the word not, I will

2     insert by itself.  In the third line, I will change the word

3     believe to find.

4          I am not going to highlight for the jury that they

5     can draw inferences.  I've already told them they can draw

6     inferences, so I am rejecting those changes.

7          Okay.  Anything else on 14?

8          MR. OSEN:  On 14, yes, Your Honor.

9          Acting knowingly and that corresponds to page 12 of

10    our version.

11         THE COURT:  Let me read it.

12         MR. OSEN:  Sure.

13         (Pause.)

14         THE COURT:  You are drawing a distinction between

15    knowingly and intentionally?

16         MR. OSEN:  Yes, Your Honor.

17         I think what the Court is trying to convey is that

18    the act is not accidental, that is, it is a voluntary and not

19    mistaken act.  We are concerned about jury confusion, that it

20    would suggest a requirement of specific intent and that goes

21    beyond what 2339B.

22         THE COURT:  What does the defendant think about

23    that?

24         MR. COLES:  The defendant disagrees and, in fact,

25    under 2333(a), which is the civil provision and the one that

3104

1    governs over here, an intent to harm is a necessary element of

2    the plaintiffs' case.  The Kaplan v.  Al Jazeera case that

3    Judge Kimber Woods decided in the Southern District recently

4    says that as clear as a bell.

5           So we actually think intentionally should be in

6    there but we actually think that this ought to be expanded,

7    either here or in the elements section, to say that defendants

8    have to prove that the bank acted with an intent to harm.

9           THE COURT:  Plaintiffs have to prove?

10          MR. COLES:  The plaintiffs have to prove that the

11   bank acted with an intent to harm.

12          THE COURT:  I am rejecting that the intent that's

13   being spoken of here is an intent to harm.  I am rejecting

14   that.  I don't think the statute requires that.

15          But I do think that the plaintiff has to -- the

16   plaintiff has to show that the defendant intended the natural

17   consequence of its action.  That is really all that is meant

18   by intent here.

19          MR. OSEN:  Your Honor, that's why when we suggested

20   deliberately, voluntarily and deliberately, I think that

21   conveys it without getting into what might otherwise be a term

22   of art of intent, which isn't in the statute.

23          THE COURT:  I don't think so.  It doesn't say what

24   specific intent to violate the statute, you have to know about

25   the statute and then undertake it's violation.  It doesn't say

GR        OCR        CM        CRR        CSR

3105

1    that.  It just says, you have to know what you are doing.  You

2    are giving assistance to this prohibited person.  You have to

3    know that.

4            I am going to leave it.  I will think about it more

5    overnight but right now I am going to overrule the plaintiffs'

6    objection on that.

7            Okay.  Any thing else on my 15?

8            MR. OSEN:  Yes, Your Honor.

9            The -- the willful -- I'm sorry, the willful

10   blindness --

11           THE COURT:  Where is that in your version?

12           MR. OSEN:  It's on page 12 of our version.

13           THE COURT:  Okay.

14           (Pause.)

15           Do you happen to have another copy of your markup?

16           MR. OSEN:  Yes.

17           THE COURT:  Would you give that to my law clerk, if

18   you could?

19           MR. OSEN:  Yes.

20           Willful blindness, Your Honor, is an alternative

21   version.

22           THE COURT:  I have it right above it, where you are

23   asking for it.

24           MR. OSEN:  Right.  But the -- the question is

25   whether the language as stated would give the impression,

GR        OCR        CM        CRR        CSR

3106

1   because it is stated in the negative, that if you don't find

2    -- you may infer the defendant knew in fact if you find --

3   and you may infer knowledge, if -- you must find that two

4   things have been established.

5          So we are just concerned that, again, the

6   formulation of the language doesn't make clear, sufficiently

7   clear, that willful blindness is an alternative version of

8   knowledge rather than a continuum of knowledge as an element

9   of knowledge, if that made any sense.

10          THE COURT:  No.  Sorry.

11          MR. OSEN:  Perhaps my colleague, Mr. Raven-Hansen

12   can --

13          THE COURT:  Let me read over your proposal first.

14   Maybe I will get it from there.

15          MR. COLES:  I'm sorry.  I am just confused jumping

16   between the two.  Mr. Osen, what page are your inserts on?

17          MR. OSEN:  Yes.  It is on page 12 of our document

18   and I believe it's on page --

19          MR. GLATTER:   It starts on page 14 and carries over

20   to 15 of Your Honor's --

21          MR. OSEN:  It is the last sentence on 14, in

22   deciding.

23          (Pause.)

24          THE COURT:  I am just not seeing the difference,

25   Mr. Osen.  I am trying to figure it out.  I think I was trying

3107

1   to convey what you have put here.  I thought I had.

2        MR. RAVEN-HANSEN:  Your Honor, my name is Peter

3   Raven-Hansen.  I am here on this.

4        Our concern was that the jury could find that the

5   bank actually knew or, in the alternative, it could find that

6   it willfully blinded itself.  We were concerned that the way

7   in which Your Honor's instruction read, that the jury might

8   conflate the two.  It might think that the way it had to find

9   knowledge was to find that the defendant deliberately closed

10  its eyes.

11       THE COURT:  I see your point.

12       MR. RAVEN-HANSEN:  We simply say one way you could

13  do this is, and we track your proposed instruction.

14       THE COURT:  I see.

15       All right.  What's the defendant's position on that?

16       MR. COLES:  Again, Your Honor, I actually don't

17  agree with what the professor just said.  I think your charge

18  is perfectly clear and we are happy to -- on that part of it

19  to stay with it.

20       THE COURT:  All right.  I am going to accept the

21  plaintiffs' change.  I think there is a risk here that my

22  proposal makes it seem as if the only way that knowledge can

23  be established is through willful blindness and that, of

24  course, is not the case.  I think the plaintiffs' proposal

25  clarifies that and so I will accept it.

3108

1          Okay.  Returning to my numbers again, anything else

2    on 15?

3          MR. COLES:  Your Honor, I know that you have

4    actually looked on our papers on this, but in 15, you say that

5    a finding of a violation of 2339B against the bank will

6    constitute an act of international terrorism.  I just make the

7    point, definition of international terrorism under 2331 has

8    four different elements to it.  One of the elements is a

9    violation of criminal statute.  By having 2339B be kind of a

10   per se basis for the jury to find that the bank committed an

11   act of international terrorism, I think the charge overrides

12   the other three elements.

13         THE COURT:  Hang on a second.

14         (Pause)

15         MR. COLES:  I am particularly focusing, as you might

16   expect, on the third, which is the bank's act had to have

17   appeared to have been intended to intimidate or coerce the

18   civilian population.  That actually is in addition to the

19   2339B formulation.  I don't believe it is subsumed there.

20         THE COURT:  All right.  What is the plaintiffs'

21   position on this?

22         MR. OSEN:  Your Honor, as a matter of law, 2339B is

23   an act of international terrorism as defined by 2331.  So

24   the -- the articulation here is exactly correct.  That is the

25   law.  2339B, by definition, and it's in all the case law, says

GR      OCR      CM      CRR      CSR

3109

1    the same thing as well.

2         THE COURT:  I think that's right.  I think 2339B is

3    itself an act of international terrorism.

4         I am relying for that on the following cases:

5    Goldberg against UBS, at 690 F. Supp 2d 92 pages 114 to 15.

6    That's this district, 2010;  Strauss against Credit Lyonnais,

7    that's 2006 Westlaw 2862704 at Star One, also from this

8    district, October 5, 2006; and Weiss against NatWest,

9    453 F. Supp 2d 609 at 613.  That's also this district, 2006.

10        MR. COLES:  Your Honor --

11        THE COURT:  I understand what the defendant is

12   saying but I think 2339B stands on its own as an act of

13   international terrorism.

14        MR. COLES:  Can I just give you, since we listed a

15   couple of cases, the cites?

16        THE COURT:  Sure.  I will look at them and see if

17   they change my mind.  I did look at your cites overall.  I can

18   tell you that.

19        MR. COLES:  I think I have explained the argument,

20   but the Licci case is 673 F.3d 50, and the relevant pin cite

21   would be 68.

22        THE COURT:  Okay.

23        MR. COLES:  And the Wultz, District of Columbia

24   case, 755 F. Supp 2d one, and the pin cite is 43.

25        I believe there are some others we have in our

3110

1    submission.  Those will address the issue.

2         The point being, that 2339B doesn't swallow the

3    other requirements of 2331.

4         THE COURT:  Yes.  I don't see it swallowing.  I see

5    it as adding to or giving another option.

6         MR. COLES:  In --

7         THE COURT:  Okay.  I will look at your cases again.

8         MR. COLES:  Fine.  I have actually -- I think page

9    15 would be the right place to put it.

10        In the Al-Rajhi case there is a statement by the

11   Second Circuit that routine banking services cannot be a basis

12   for liability.

13        THE COURT:  I understand that.  That is certainly

14   the law.  But it does not mean that it is part of a jury

15   instruction.

16        You are free to argue that these were routine

17   banking services but that's essentially what the case is

18   about.  I think the plaintiffs would tell you they don't think

19   there was anything routine about this at all.  So argue it,

20   but not the instructions.

21        MR. COLES:  The only reason I will say -- we will

22   argue that, I'm sure, on both sides -- but it may be helpful

23   to the jury to know that if they find actually the banking

24   service were routine, then they should not find liability.

25   That does seem to me to be an appropriate area for an

3111

1    instruction.

2          THE COURT:  No.  I disagree.  I think that's a

3    particular honing in on the facts of the defense that you

4    think is applicable here.  It is not something that belongs in

5    a jury instruction.

6          All right.  Anything else on 15?

7          Sixteen?

8          Seventeen?

9          MR. OSEN:  Yes, Your Honor.

10         The Court's page 17, corresponding to page 15 of

11   what we provided to Your Honor, it's an insertion --

12         THE COURT:  Hang on.  I see it.  Let me read it

13   first.

14         MR. OSEN:  Sure.

15         (Pause.)

16         THE COURT:  First of all, that first sentence that

17   you would add, it seems to me, should not start that

18   paragraph.  If I am going to add it, it would be added on to

19   the preceding paragraph.  Right?

20         MR. OSEN:  That's fine, Your Honor.  We just wanted

21   to track the bullet points, if you will, that preceded it,

22   one, two and three.

23         THE COURT:  Why don't I just add to the paragraph

24   preceding your proposed insertion, after foreign terrorist

25   organization the following:  Or knew that Hamas engaged in

GR        OCR        CM        CRR        CSR

3112

1    terrorist activity.

2            What's wrong with that?

3            MR. OSEN:  We have no objection to that, Your Honor.

4            MR. COLES:   The only clarification I would say to

5    that is the charge make clear that this incorporates your

6    definition of knowingly.

7            THE COURT:  I don't like to repeat things

8    unnecessarily.  I think it's very clear.

9            MR. COLES:  I don't know that's unnecessary.  That's

10   why I raised it.  Knowingly is a very significant aspect of

11   this case.

12           THE COURT:  It is.  That's why I instruct the jury

13   on it.  But I don't have to instruct them -- I don't have to

14   instruct them as to each element -- and this must be found

15   knowingly and this must be found knowingly.  I don't have to

16   do that.

17           It says, defendant knew.  Knew is knowing.  I think

18   that's enough.

19           Okay.  So I am just going to put that -- I am just

20   going to add that to the preceding paragraph.  Although now

21   that I am looking at it, I see a slight ambiguity.

22           I think if I do it the way I said, I will create a

23   disjunctive ambiguity.  I don't want to do that.  I am just

24   going to take plaintiffs' sentence, I am going to tack it on

25   at the end of that paragraph instead of the beginning of the

3113

1  next one.  That's the first change that plaintiffs are

2  proposing to that section.

3          As for the second one, how is that second sentence

4  proposed to be added by plaintiffs any different than the

5  first?

6          MR. OSEN:  Yes.  There are two different terms of

7  art in the statute, Your Honor.  While defendants witnesses

8  have all testified they knew it was Hamas, and so this might

9  be an academic exercise in large part, these are each terms of

10 art used in the statute cited above by Your Honor so we just

11 track the language above.

12         THE COURT:  I see.  That's fine.  I will accept

13 that.

14         MR. COLES:  The defendant's position on that, that

15 doesn't add anything but words and shouldn't be --

16         THE COURT:  I see what they are saying.  You've got

17 these three requirements up there and it's got to be clear

18 that this concept applies to both of them.  I think this does

19 slightly clarify it.

20         Okay.  Anything else on my 17 and now we are on to

21 18?  Anything before the proximate cause instruction that we

22 haven't covered?

23         MR. OSEN:  No, Your Honor.

24         (Continued on next page.)

25

GR      OCR      CM      CRR      CSR

- Proceedings -                    3114

1          THE COURT:  Now, proximate cause, I see plaintiff

2    has all kinds of markings.  I know of course that the

3    defendants want a "but for" instruction which I am rejecting

4    as Judge Gershon did previously.  So that is fine.

5          Tell me Mr. Osen, how your proposed language is

6    better than mine on the substantial factor test?

7          MR. OSEN:  It is better for us, Your Honor.

8          There are two-- issues.

9          THE COURT:  Let me rephrase that.  How is it a more

10   accurate statement of the law?

11         MR. OSEN:  Right, Your Honor, sorry.

12         There are two main issues from our standpoint.  One

13   is the language about directness, and the other which is in

14   the paragraph that begins, "however". And refers to the

15   plaintiffs' injuries were caused primarily by something other

16   than the defendants' acts.

17         So those are the two main issues that sort of drive

18   our edits here.  I can take them in turn.

19         THE COURT:  First of all, on the second part, I

20   agree with you.  I think a substantial factor can exist,

21   notwithstanding a larger factor, and therefore, to say that

22   the injuries were caused primarily for something other than

23   defendants' acts, would be misleading.  So I will take that out.

24         How is the first part different?

25         MR. OSEN:  The directness language which comes

- Proceedings -                                    3115

1  through Judge Gershon's summary judgment bench order, applying

2  the holding in Rothstein vs. UBS, was dealing with a very

3  specific issue in the UBS case.

4        Where the plaintiffs had alleged that UBS had

5  given-- had given U.S. dollar currency to Iran and they wanted

6  to be able to bring that under the ATA, on the theory that

7  Iran then gives money to Hezbollah and Hamas.

8        And the Second Circuit said, that is not

9  sufficiently direct, because there is no allegation here, a

10  plausible and concrete allegation, of these specific monies

11  going to Hezbollah or Hamas.  So that is where the directness

12  language came from.

13        The actual language from Rothstein was, the

14  Complaint does not allege that UBS was a participant in

15  terrorist attack, that it knew the plaintiffs, it does not

16  allege that UBS provided monies to Hezbollah or Hamas, does

17  not allege that U.S. currency, UBS transferred to Iran was

18  given to Hezbollah or Hamas.

19        So, we have no issue with the requirement that we

20  have to show direct payments to Hamas.  The question is,

21  whether those payments are ever the direct cause of injury in

22  the literal sense. Meaning, as far as I know, no one has ever

23  been injured directly by a wire transfer.

24        THE COURT:  But, it is not just direct.  I see.

25        It is either a direct and a proximate result, or a

RB        OCR

- Proceedings -                                    3116

1   reasonably probable consequence of it, which is standard tort

2   law, which is what I'm trying to stick to here because that is

3   what the statute is.

4           MR. OSEN:  Right.

5           But the next paragraph, Your Honor, says, that in

6   other words, the unlawful activity at issue, must be a direct,

7   substantial, and identifiable cause of injury that the

8   plaintiffs claim.

9           There is not in the alternative, but it list them

10  altogether, and that is why we have the concern.  Obviously a

11  direct cause would be a proximate cause.

12          But here, the language would suggest that we would

13  have to trace the monies at a minimum, the money, even any

14  conduct directly to the injury.  Judge Gershon, addressed that

15  head on, at summary judgment.

16          THE COURT:  Yes, I did not mean to suggest that, it

17  did not occur to me, and I'm still not sure that the language

18  I propose does suggest that.  I agree with you on the theory

19  and now it is just a question and I know the defendants

20  disagree on the theory.  Now, it is just a question of finding

21  the right language.

22          I will tell you, I'm not comfortable with this

23  notion of quote, "substantial factor in the sequence of

24  responsible causation".  Because no jury is going to

25  understand that.

- Proceedings -                    3117

1          MR. OSEN:  Understood.  Where we got that Your Honor

2    is actually from the Second Circuit in Rothstein, but you may

3    want to formulate it in a more comprehensible way to the jury.

4          But it is the exact language used by the Second

5    Circuit.

6          THE COURT:  I understand, that is why it is

7    dangerous to take appellate decisions and say, well, this

8    belongs in a jury instruction.  It may be a correct statement

9    of the law, but that doesn't mean it is needed or appropriate

10   for a jury instruction.

11         Well, you have identified the problem for me.  I

12   will look at my language again and see if I think the problem

13   is there.

14         Let me hear from the defendant on this.

15         MR. COLES:  I think the way you articulate that part

16   of the proximate cause is consistent with Rothstein and

17   consistent with the Second Circuit.

18         I wanted to make a point about "but for" and then

19   the paragraph that you deleted.

20         Is the "but for" case is from the Supreme Court

21   obviously came after Judge Gershon's decision.

22         THE COURT:  Yes.

23         MR. COLES:  Had Judge Gershon, if we were addressing

24   this to Judge Gershon now, she would look at those cases to

25   see whether or not they affected the ruling she had made

- Proceedings -                                    3118

1   earlier.  I think this Court should do the same.

2          THE COURT:  I have done the same and my view is on

3   this particular statute, to use a "but for" test, would

4   effectively eviscerate this statute, which is not one of the

5   ones the Supreme Court construed.

6          MR. COLES:  Well, I think you know this, to make the

7   point, Supreme Court did specifically construe the language in

8   the statute by reason of and said that that is a choice by

9   Congress, to create a "but for" relationship.

10          THE COURT:  Yes.

11          MR. COLES:  They did that not once but twice.

12          THE COURT:  I'm aware of what you are saying, I

13   still think in a case like this, it is not applicable because

14   it would deprive the statute of any force.

15          So, I am not accepting that.

16          MR. COLES:  I don't believe it would, and it would

17   just put them to another level of proof which maybe they would

18   meet or not.  They tried to meet it.

19          The second point, is the paragraph, however.

20          "However, if you find the plaintiffs' injuries were

21   caused primarily by something other than defendant's acts,

22   then you must find that plaintiffs have failed to prove the

23   element of their claim."

24          That is basic tort law.  That is Professor Keaton

25   Law School 101.

- Proceedings -                                    3119

1     I don't see any basis for removing that from the

2  charge over here.

3     THE COURT:  Well, you are right to the extent that

4  it is in the form generally.

5     MR. COLES:  It would be-- to me, it would be

6  inappropriate to remove this.  It would reverse, tort law--

7  500 years of tort law, that this is a basic element of this

8  charge.

9     THE COURT:  All right.  I will rethink that too.

10     I'm not surprised that we are having this discussion

11  about the proximate cause instruction.  Obviously that is a

12  difficult issue in a case like this.

13     But, I appreciate -- Is there something you want to

14  add to this?

15     MR. RAVEN-HANSEN:  I was just going to add, the

16  basic tort law, restatement of torts which the bank cited in

17  the report, states that, only when other factors are so

18  predominant as to make the effect of the actor's negligence

19  insignificant, would it not be proximate cause.

20     THE COURT:  Well, you can argue that here.

21     MR. RAVEN-HANSEN:  The primary is more than

22  fifty percent, is the very thing you noted earlier.

23     THE COURT:  You can argue that when you are dealing

24  with an intervening criminal act like this.  That is, such an

25  eclipsing factor, that it exonerates the person who

RB        OCR

- Proceedings -                                    3120

1    contributed to it in an attenuated way.

2              I know that is essentially the bank's argument.

3              MR. OSEN:  We don't dispute, Your Honor, that

4    Hamas -- in fact, we tried to prove, that Hamas was the agent

5    of the injuries to the plaintiff.  They are the primary tort

6    feasor here.

7              2339B, the material support statute, criminal

8    statute as well as 233A is directed as secondary actors.  By

9    definition, secondarily by -- cannot-- it is a form of

10   primarily liability as Judge Posner famously said, but it does

11   not incorporate the notion that the person who provides

12   material support is the primary actor in causing the injury.

13             THE COURT:  Right.

14             Material support statute is in and of itself, kind

15   of an aiding and abetting statute, which is not technically

16   correct, I understand that.  But it is a secondary actor, kind

17   of thing, and therefore, the common law formulation might be

18   misleading in this context.

19             MR. COLES:  I just note that there are a number of

20   cases, that reject what Mr. Osen just said.  Said the

21   violation-- that has to be proven against the bank is a

22   primary violation.

23             THE COURT:  It is.  A primary violation of this

24   statute.

25             But this is kind of a peculiar statute because it is

RB          OCR

- Proceedings -                                        3121

1    support of someone else who is doing something wrong.

2          MR. COLES:  As Judge Weinstein said, like the

3    Russian doll, you go to 2339B you unravel that, then you go to

4    2333A, which has a trouble damages provision, which I think

5    requires deliberate intent, malice of some sort.  Almost any

6    formulation of damages.

7          THE COURT:  I am rejecting that.

8          Obviously people have been sent to jail for life for

9    violating the statute, with no malicious intent.  Just the

10   intent to do the act that the statute prohibits.  So, I don't

11   think there is malice required for civil liability which we

12   are only talking about dollars, which of course is quite

13   important to the bank, but not as important to sending someone

14   away for decades.

15         MR. COLES:  My point is malice is under 2333A, civil

16   provision, not 2339B, the criminal provision.

17         THE COURT:  I understand.

18         All right.  I will think more about the proximate

19   cause instruction and I will send out to you, early this

20   evening, maybe late this afternoon, my decision on what the

21   final charge should be.  But, I appreciate the points that you

22   have raised.

23         All right.  Anything else as to my page 19?

24         20?

25         MR. OSEN:  One second, Your Honor, sorry.

- Proceedings -                    3122

1          (Pause.)

2          MR. WERBNER:  While everybody is flipping pages, can

3   I get a point of clarification, not in there.

4          For the argument tomorrow, it will be read

5   afterwards, but can we refer, once we have your final.

6          THE COURT:  You can.  That is why I want to get this

7   done before closing.

8          Anything else on 19?

9          MR. RAVEN-HANSEN:  Yes, Your Honor.

10          We were concerned with the reference to causation of

11   the particular attack.  This goes back to the bank's

12   persistent theory that we have to trace the money to a

13   particular terrorists who committed a particular attack.

14          And, as Your Honor noted that would gut the statute,

15   and we are afraid it rears its ugly head again to the

16   reference to particular attack here.

17          So, we took the Rothstein language again, which Your

18   Honor already said may not be clear enough for the jury.

19          Our concern, any reference here to particular

20   attack, in conjunction with causation, will lead the jury

21   again to think about was the money spent paying this terrorist

22   who committed this attack.  I don't think that is the intent

23   of this instruction.

24          THE COURT:  No.  I see your point.

25          MR. OSEN:  Just to direct you to page 16 of our

- Proceedings -                                          3123

1   markup.  We actually had inserted language, additional

2   sentence about activities that are too remote, too indirect,

3   to attenuated, to be sufficient.

4        Whether Your Honor uses that or some other

5   formulation, our point is, that we do believe that the

6   plaintiffs have to prove that the material support provided to

7   Hamas, was sufficient in scope and/or time, to have a-- to be

8   substantial and foreseeable.

9        But not as to a specific attack, like the Sbarro

10  Pizzeria, it has to be in the time frame, it has to be with

11  sufficient funds to be foreseeable.  Obviously we don't

12  contend that the bank knew beforehand about Hamas' attempt to

13  bomb a specific restaurant.

14       THE COURT:  I think you are right, this is a poorly

15  drafted instruction.  Essentially I conflated all of the--

16  each of the elements, and said they each have to be proved

17  separately and by doing that, I did kind of introduce a

18  tracing aspect to it, which is not what I wanted to do at all.

19       I will look at your change and either accept it or I

20  will come up with something else.  I understand the bank is

21  properly happy with this charge or happier.

22       MR. COLES:  It is-- we are fine with the charge, as

23  a result of the way this case has been organized these 24

24  trials in one.  I think this does give the jury particularly

25  with a verdict sheet that you have provided them, a fair

1   analysis of what they have to do.

2          THE COURT:  But the concern is, the plaintiffs

3   should not have to prove that the bank knew that money was

4   going for the Sbarro attack.  I'm afraid this instruction kind

5   of suggests that it does.  I know you think that it does.

6          But, or you may think that it does.  But --

7          MR. COLES:  I'm not taking a position on that

8   particular issue.  I do think this is a fair statement of the

9   causation standards, that should apply to the attacks.

10         THE COURT:  I will look at it.

11         Anything else on my 19?

12         Anything on 20?

13         MR. COLES:  I'm sorry, on 20, on 19 and 20, on the

14  corporation responsibility for its acts.

15         THE COURT:  Yes.

16         MR. COLES:  We would propose that-- an act by

17  someone, a recognized employee acting outside of his

18  employment is insufficient to create a basis for liability.

19         THE COURT:  Yes, I saw your proposal on that and I

20  rejected it for the following reasons.  First of all, it is

21  essentially the criminal culpability charge in a criminal case

22  which this is not.

23         And, second, because of the discovery issues we have

24  had, who is your rogue agent here?  Who is the one who saw,

25  Sheik Yassin's ID and opened-- cashed the check anyway and

- Proceedings -                                3125

1  didn't report it.

2        MR. COLES:  They are going to get an inference on

3  that.  The way this works is the purposes of the inference was

4  to actually balance the evidentiary back and forth.

5        THE COURT:  But the jury has no ability to discern

6  whether this was a rogue agent or not, because you have

7  blocked that discovery.  They can't tell what happened.

8        MR. COLES:  But instead they are going to get an

9  inference, they are saying they may infer various things for

10  the bank.  And the rogue agent charge is typically included

11  when you have this charge on corporations' responsibility.

12        THE COURT:  Only in criminal cases.  I don't think

13  in this kind of case.

14        MR. COLES:  I have seen it in civil cases, I think

15  it is common, obviously that is something to look at as well.

16        THE COURT:  I am overruling that request.

17        Anything else on 20?

18        Then I would like to treat 21 through 23

19  collectively, because they are again largely boiler plate.

20  Anything there?

21        MR. COLES:  We have-- we are fine with your 21 to

22  23, thank you.

23        THE COURT:  Anything else you need to tell me?

24        MR. COLES:  No, I think you have made clear your

25  views and thank you for taking the time to review all our

- Proceedings -                                3126

1    submissions, I know they were significant.

2              THE COURT:  They were.

3              They were helpful at the end of the day.  I will

4    tell you, I was a little shocked, there are parts of them that

5    are effectively a directed verdict, which is kind of your

6    position, but, I have considered them.

7              MR. COLES:  Speaking of directed verdict.

8              THE COURT:  We will get there.  Let's not do that yet.

9              Anything else on the verdict form?

10             MR. OSEN:  Not on the verdict form, Your Honor.

11             THE COURT:  What else?

12             MR. OSEN:  One other question, I assume you

13   considered it and rejected it, but I will take a pass at the

14   instruction we proposed on charity, because it has been a

15   focal point of the defense.  And in this particular case,

16   since U.S. law is explicit on that issue, and Supreme Court

17   has actually ruled on this issue, 2339B, we would ask you to

18   at least consider it.

19             THE COURT:  I am not going to.  That to me is a fine

20   argument for you to make.  The jury does not need to be

21   instructed on that.

22             MR. OSEN:  Thank you, Your Honor.

23             THE COURT:  So that is that.

24             I will do-- redo the points we have discussed,

25   principally the proximate cause point and the separate acts.

RB       OCR

- Proceedings -                                    3127

1   I will look at those and decide how I come out on them.

2            I really mean the three hours tomorrow, three hours

3   per side should be plenty.  If you can do it shorter, you should.

4            I want to caution the defendant and I don't mean

5   this as an admonition.  At the beginning of the case in the

6   opening, there were at least as I recall it, two

7   transgressions of the preclusion order in terms of what the

8   bank is permitted to argue.

9            I very mildly corrected Mr. Stephens when he did

10  that opening.  I understand that one of the many many

11  challenges in this case, has been applying in the actual

12  exigencies of trial, the preclusion and sanction order.  The

13  way they were intended in a way that is most fair.

14           But I think throughout the trial we have now defined

15  where there is a-- where those things are going.  I do expect

16  the defendant tomorrow to please not cross those lines.

17           If there is a crossing of the line, again, I will

18  have to be more explicit in telling the jury why that is

19  wrong.  I really don't want to go into that.  So I'm sure the

20  defendant will do everything possible to skew to the right

21  side of the line.

22           MR. COLES:  Yes, we will, thank you.

23           THE COURT:  You wanted to formally renew your --

24           MR. COLES:  You said you had it under submission.

25           THE COURT:  I do.

- Proceedings -                                3128

1          MR. COLES:  So that is fine.  I would like to

2     formally renew the motion.

3          THE COURT:  Okay.  It is still reserved.

4          Anything else we need to cover?

5          MR. WERBNER:  Just wondered if as the jury was

6     leaving, the Court got any information about their

7     availability Friday.

8          THE COURT:  I didn't hear anything to the contrary,

9     I presume I would have.  I think they will be deliberating

10    Friday.

11         MR. INGERMAN:  Is that all day Your Honor?

12         THE COURT:  Yes, generally my practice is, I let

13    jurors go until they cry uncle.  Then when they ask to go

14    home, I let them go home.  If they went until 9 o'clock, I

15    might tell them it is time to call it a day.

16         Let's take it one day at a time and see how they do.

17    I think we got a very attentive jury.

18         I will tell you, I have had many trials this long, I

19    never had one where I just didn't feel a need to wake up a

20    juror or direct their attention, that they really did seem to

21    be paying attention.  So, we either did a good job or got

22    lucky, it doesn't matter which.

23         Okay.  Thank you all very much, see you tomorrow

24    morning.

25         (Matter adjourned for the day.)

3129

1                            I N D E X

2

3    W I T N E S S :

4

5      Matthew Levitt                                  3044

6      DIRECT EXAMINATION                              3044

7      CROSS EXAMINATION BY MR. STEPHENS               3076

8

9

10   E X H I B I T S :

11

12     Plaintiff's Exhibit 4442                        3067

13     Plaintiff's Exhibit 4340                        3067

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$30,000** [1] - 3076:18

## '

**'05** [1] - 3075:12

## 0

**00365** [1] - 3032:6
**00388** [1] - 3032:7
**01623** [1] - 3032:8
**02799** [1] - 3032:4
**03183** [1] - 3032:7
**03768** [1] - 3032:8
**04** [4] - 3032:4, 3032:5, 3032:6, 3032:6
**05** [3] - 3032:7, 3032:7, 3032:8
**05449** [1] - 3032:6
**05564** [1] - 3032:6
**06** [1] - 3032:8

## 1

**10** [1] - 3071:16
**101** [1] - 3118:25
**11,962** [1] - 3037:24
**11201** [1] - 3033:6
**114** [1] - 3109:5
**11:20** [1] - 3099:22
**11th** [1] - 3086:13
**12** [3] - 3103:9, 3105:12, 3106:17
**12/3/01** [2] - 3062:23, 3063:1
**12/3/2001** [1] - 3063:7
**1267** [1] - 3055:5
**1297** [3] - 3033:23, 3059:16, 3059:21
**13** [1] - 3081:14
**14** [6] - 3077:21, 3102:10, 3103:7, 3103:8, 3106:19, 3106:21
**15** [9] - 3078:19, 3105:7, 3106:20, 3108:2, 3108:4, 3109:5, 3110:9, 3111:6, 3111:10
**1518** [2] - 3083:2, 3083:7
**16** [1] - 3122:25
**17** [3] - 3032:11, 3111:10, 3113:20
**18** [1] - 3113:21
**19** [4] - 3121:23, 3122:8, 3124:11, 3124:13
**1914** [1] - 3097:15
**1994** [2] - 3092:23, 3093:11
**1995** [1] - 3075:3
**1997** [2] - 3038:24, 3074:24
**19th** [1] - 3034:1

## 2

**2** [3] - 3069:4, 3069:10, 3071:16
**20** [10] - 3070:3, 3070:4, 3071:6, 3073:13, 3097:25, 3121:24, 3124:12, 3124:13, 3125:17
**20-minute** [1] - 3099:21
**2000** [2] - 3087:24, 3088:9
**2001** [10] - 3040:13, 3062:14, 3062:17, 3062:22, 3063:11, 3066:1, 3066:21, 3075:4, 3080:20, 3081:14
**2002** [2] - 3062:8, 3086:13
**2003** [2] - 3083:11, 3092:9
**2004** [4] - 3061:22, 3087:24, 3088:9, 3092:10
**2005** [2] - 3074:19, 3075:7, 3098:1
**2006** [3] - 3109:7, 3109:8, 3109:9
**2007** [2] - 3061:24, 3064:9
**2008** [6] - 3035:7, 3038:7, 3038:17, 3038:18, 3038:24, 3087:13
**2010** [1] - 3109:6
**2014** [1] - 3032:11
**2080** [1] - 3094:4
**21** [3] - 3071:6, 3125:18, 3125:21
**22** [1] - 3083:11
**225** [1] - 3033:6
**23** [2] - 3125:18, 3125:22
**2331** [3] - 3108:7, 3108:23, 3110:3
**2333(a** [1] - 3103:25
**2333A** [2] - 3121:4, 3121:15
**2339B** [13] - 3103:21, 3108:5, 3108:9, 3108:19, 3108:22, 3108:25, 3109:2, 3109:12, 3110:2, 3120:7, 3121:3, 3121:16, 3126:17
**233A** [1] - 3120:8
**24** [1] - 3123:23
**2456** [2] - 3086:11, 3086:12
**27** [1] - 3081:21
**2862704** [1] - 3109:7
**2d** [3] - 3109:5, 3109:9, 3109:24

## 3

**30** [1] - 3097:6
**3044** [2] - 3129:5, 3129:6
**3067** [2] - 3129:12, 3129:13
**3076** [1] - 3129:7

## 4

**43** [1] - 3109:24
**4340** [3] - 3034:9, 3067:22, 3129:13
**4442** [3] - 3034:9, 3067:21, 3129:12
**45** [1] - 3099:2
**453** [1] - 3109:9
**467** [1] - 3037:2
**49** [5] - 3063:16, 3078:16, 3078:18,

3079:24, 3082:16

## 5

**5** [1] - 3109:8
**50** [1] - 3109:20
**500** [1] - 3119:7

## 6

**609** [1] - 3109:9
**613** [1] - 3109:9
**613-2538** [1] - 3033:7
**664** [1] - 3037:2
**673** [1] - 3109:20
**68** [1] - 3109:21
**690** [1] - 3109:5
**6th** [4] - 3063:11, 3064:21, 3066:1, 3066:22

## 7

**718** [1] - 3033:7
**755** [1] - 3109:24
**7th** [1] - 3064:21

## 8

**8** [1] - 3071:16
**8/18/98** [1] - 3037:25
**803(22** [1] - 3034:16

## 9

**9** [1] - 3128:14
**92** [1] - 3109:5
**9:25** [1] - 3032:11
**9:30** [2] - 3098:19, 3099:17

## A

**ABA** [4] - 3084:4, 3084:7, 3087:3, 3098:8
**abetting** [1] - 3120:15
**ability** [1] - 3125:5
**able** [6] - 3048:10, 3048:16, 3065:1, 3091:3, 3092:2, 3115:6
**abroad** [1] - 3088:8
**absence** [2] - 3033:15, 3057:18, 3100:1
**absolutely** [1] - 3075:19
**academia** [1] - 3065:5
**academic** [6] - 3051:10, 3055:24, 3065:8, 3075:22, 3091:3, 3113:9
**academics** [2] - 3064:15, 3091:4
**accept** [6] - 3061:12, 3096:7, 3107:20,

3107:25, 3113:12, 3123:19

**accepted** [1] - 3052:19
**accepting** [1] - 3118:15
**accessible** [1] - 3066:17
**accidental** [1] - 3103:18
**accordance** [1] - 3061:13
**according** [3] - 3057:19, 3060:16, 3085:10
**Accords** [2] - 3092:22, 3093:10
**account** [2] - 3063:15, 3098:6
**accurate** [1] - 3114:10
**accusation** [1] - 3077:15
**accused** [2] - 3068:15, 3068:18
**act** [13] - 3036:7, 3061:12, 3103:18, 3103:19, 3108:6, 3108:11, 3108:16, 3108:23, 3109:3, 3109:12, 3119:24, 3121:10, 3124:16
**acted** [2] - 3104:8, 3104:11
**acting** [3] - 3076:2, 3103:9, 3124:17
**Action** [1] - 3085:15
**action** [4] - 3052:13, 3077:21, 3078:9, 3104:17
**activities** [7] - 3075:4, 3090:4, 3091:19, 3091:20, 3091:24, 3091:25, 3123:2
**activity** [6] - 3090:13, 3090:14, 3091:7, 3091:8, 3112:1, 3116:6
**actor** [2] - 3120:12, 3120:16
**actor's** [1] - 3119:18
**actors** [1] - 3120:8
**acts** [11] - 3035:8, 3035:10, 3035:16, 3036:3, 3036:11, 3036:13, 3114:16, 3114:23, 3118:21, 3124:14, 3126:25
**actual** [4] - 3063:23, 3066:25, 3115:13, 3127:11
**add** [8] - 3100:20, 3111:17, 3111:18, 3111:23, 3112:20, 3113:15, 3119:14, 3119:15
**added** [2] - 3111:18, 3113:4
**adding** [1] - 3110:5
**addition** [1] - 3108:18
**additional** [2] - 3100:17, 3123:1
**address** [4] - 3035:3, 3053:12, 3059:20, 3110:1
**addressed** [2] - 3048:17, 3116:14
**addressing** [2] - 3054:4, 3117:23
**adds** [1] - 3102:17
**adequate** [1] - 3057:6
**adjourn** [1] - 3097:7
**adjourned** [1] - 3128:25
**admissible** [2] - 3034:15, 3039:7
**admitted** [3] - 3033:25, 3034:7, 3083:4
**admonition** [1] - 3127:5
**adverse** [1] - 3102:20
**advise** [1] - 3043:14
**affected** [1] - 3117:25
**affiliated** [1] - 3090:5
**affiliates** [1] - 3046:10
**affirmance** [1] - 3037:3

**afraid** [2] - 3122:15, 3124:4
**Afrial** [1] - 3032:7
**Afrial-Kurtzer** [1] - 3032:7
**afternoon** [1] - 3121:20
**afterwards** [1] - 3122:5
**agencies** [2] - 3079:9, 3088:21
**agency** [10] - 3060:7, 3060:9, 3079:2, 3079:7, 3088:3, 3088:6, 3088:7, 3089:3, 3089:4, 3089:9
**agent** [5] - 3046:13, 3120:4, 3124:24, 3125:6, 3125:10
**agents** [1] - 3046:9
**ago** [5] - 3041:3, 3044:12, 3076:16, 3092:14, 3096:4
**agree** [15] - 3034:4, 3054:15, 3074:19, 3084:24, 3089:21, 3091:19, 3092:21, 3093:9, 3095:6, 3096:5, 3096:6, 3097:22, 3107:17, 3114:20, 3116:18
**agreed** [1] - 3094:12
**ahead** [5] - 3067:8, 3070:1, 3084:23, 3093:6, 3097:21
**aid** [4] - 3088:8, 3088:12, 3088:13, 3090:6
**aiding** [1] - 3120:15
**Al** [9] - 3049:7, 3055:1, 3086:15, 3091:10, 3091:11, 3091:15, 3092:10, 3104:2, 3110:10
**al** [1] - 3032:5
**Al-Aqsa** [1] - 3086:15
**Al-Rajhi** [1] - 3110:10
**allegation** [2] - 3115:9, 3115:10
**allegations** [1] - 3035:8
**allege** [3] - 3115:14, 3115:16, 3115:17
**alleged** [1] - 3115:4
**allow** [3] - 3043:10, 3050:6, 3085:8
**Almog** [2] - 3032:6, 3032:22
**almost** [5] - 3034:1, 3044:11, 3096:18, 3097:25, 3121:5
**alternative** [4] - 3105:20, 3106:7, 3107:5, 3116:9
**altogether** [1] - 3116:10
**ambiguity** [2] - 3112:21, 3112:23
**America** [2] - 3046:7, 3046:14
**American** [1] - 3098:9
**amount** [3] - 3070:6, 3070:7, 3075:23
**amounts** [2] - 3037:5, 3037:6
**analogy** [1] - 3091:11
**analysis** [2] - 3059:24, 3124:1
**Analysis** [1] - 3051:14
**analyst** [2] - 3052:7, 3060:3
**analyze** [1] - 3052:9
**Angeles** [3] - 3041:17, 3042:23, 3063:10
**Ann** [1] - 3084:24
**answer** [8] - 3049:14, 3057:9, 3065:4, 3067:8, 3073:2, 3090:21, 3092:14, 3093:19
**answering** [1] - 3048:20
**answers** [1] - 3057:24

**ANTHONY** [1] - 3033:3
**anticipated** [1] - 3033:19
**anyway** [3] - 3041:1, 3088:25, 3124:25
**apologies** [1] - 3101:22
**appeal** [1] - 3061:18
**appealed** [1] - 3062:5
**appear** [2] - 3063:2, 3086:4
**APPEARANCES** [1] - 3032:16
**appeared** [3] - 3040:2, 3063:6, 3088:17
**appellate** [3] - 3074:10, 3077:18, 3117:7
**applicable** [2] - 3111:4, 3118:13
**applies** [1] - 3113:18
**apply** [1] - 3124:9
**applying** [2] - 3115:1, 3127:11
**appreciate** [2] - 3119:13, 3121:21
**approach** [1] - 3068:2
**appropriate** [3] - 3095:10, 3110:25, 3117:9
**Aqsa** [1] - 3086:15
**Arab** [1] - 3097:24
**ARAB** [1] - 3032:9
**area** [3] - 3110:25
**areas** [3] - 3092:23, 3093:11, 3093:12
**argue** [6] - 3110:16, 3110:19, 3110:22, 3119:20, 3119:23, 3127:8
**argument** [9] - 3034:10, 3058:3, 3058:5, 3094:13, 3109:19, 3120:2, 3122:4, 3126:20
**arguments** [2] - 3098:20, 3099:17
**Army** [2] - 3092:24, 3093:12
**arrest** [2] - 3092:24, 3093:12
**art** [3] - 3104:22, 3113:7, 3113:10
**article** [22] - 3040:1, 3040:13, 3041:15, 3041:17, 3042:7, 3042:13, 3042:20, 3043:1, 3043:3, 3063:4, 3063:11, 3063:20, 3063:21, 3065:17, 3066:2, 3081:4, 3081:5, 3081:11, 3081:14, 3081:17, 3081:22, 3082:2
**articles** [9] - 3039:14, 3039:19, 3042:1, 3042:5, 3063:21, 3063:22, 3074:25, 3081:2, 3081:13
**articulate** [1] - 3117:15
**articulation** [1] - 3108:24
**Ashcroft** [2] - 3062:6
**aside** [3] - 3051:9, 3094:9
**aspect** [2] - 3112:10, 3123:18
**assassinated** [1] - 3092:16
**assassinations** [1] - 3092:9
**assets** [2] - 3063:18, 3063:24
**assistance** [2] - 3088:8, 3105:2
**assistant** [3] - 3060:1, 3061:2, 3098:2
**Assistant** [2] - 3051:14, 3061:11
**associated** [1] - 3091:20
**associates** [1] - 3046:9
**ASSOCIATES** [1] - 3032:19
**association** [1] - 3098:9
**Association** [3] - 3078:21, 3083:15,

3084:4
  **assume** [4] - 3035:21, 3039:10, 3096:10, 3126:12
  **assuming** [1] - 3099:4
  **assured** [1] - 3100:8
  **ATA** [1] - 3115:6
  **attack** [8] - 3115:15, 3122:11, 3122:13, 3122:16, 3122:20, 3122:22, 3123:9, 3124:4
  **attacks** [2] - 3092:5, 3124:9
  **attempt** [2] - 3073:14, 3123:12
  **attendant** [1] - 3076:5
  **attention** [5] - 3039:25, 3063:5, 3102:1, 3128:20, 3128:21
  **attentive** [1] - 3128:17
  **attenuated** [2] - 3120:1, 3123:3
  **attorney** [1] - 3062:6
  **attorneys** [2] - 3096:5, 3098:16
  **August** [2] - 3034:1, 3081:14
  **authorities** [1] - 3089:9
  **authority** [4] - 3055:23, 3060:13, 3077:13, 3079:5
  **Authority** [4] - 3092:22, 3093:10, 3093:15, 3093:16
  **availability** [1] - 3128:7
  **available** [6] - 3039:12, 3041:14, 3062:13, 3064:23, 3098:22, 3099:4
  **average** [1] - 3056:1
  **avoid** [2] - 3065:14, 3095:12
  **aware** [3] - 3077:19, 3087:23, 3118:12

**B**

  **background** [1] - 3041:5
  **balance** [1] - 3125:4
  **baloney** [2] - 3046:14, 3046:17
  **Bank** [5] - 3074:23, 3087:4, 3092:23, 3093:11, 3097:24
  **BANK** [1] - 3032:9
  **bank** [21] - 3038:22, 3041:9, 3041:10, 3051:12, 3064:10, 3086:24, 3098:1, 3098:2, 3104:8, 3104:14, 3107:5, 3108:5, 3108:10, 3119:16, 3120:21, 3121:13, 3123:12, 3123:20, 3124:3, 3125:10, 3127:8
  **bank's** [4] - 3064:7, 3108:16, 3120:2, 3122:11
  **banker's** [1] - 3098:9
  **banking** [6] - 3057:13, 3084:20, 3085:5, 3110:11, 3110:17, 3110:23
  **banks** [2] - 3053:2, 3084:12
  **bar** [11] - 3045:7, 3046:1, 3056:8, 3094:15, 3094:16, 3094:19, 3095:25, 3096:17, 3096:19, 3096:22, 3097:12
  **bare** [1] - 3086:1
  **based** [15] - 3035:10, 3052:15, 3053:11, 3056:4, 3059:2, 3063:14, 3068:19, 3074:11, 3075:15, 3079:23, 3082:12, 3082:13, 3082:15, 3092:3

  **bases** [1] - 3049:24
  **basic** [3] - 3118:24, 3119:7, 3119:16
  **basis** [7] - 3058:13, 3061:7, 3073:8, 3108:10, 3110:11, 3119:1, 3124:18
  **became** [1] - 3062:4
  **become** [2] - 3064:21, 3067:13
  **becomes** [5] - 3047:25, 3059:8, 3064:23, 3066:16, 3099:5
  **BEFORE** [1] - 3032:14
  **beforehand** [1] - 3123:12
  **begin** [1] - 3098:24
  **beginning** [2] - 3112:25, 3127:5
  **begins** [2] - 3042:21, 3114:14
  **behavior** [1] - 3082:3
  **believes** [1] - 3081:11
  **bell** [1] - 3104:4
  **belongs** [3] - 3100:18, 3111:4, 3117:8
  **bench** [3] - 3048:13, 3048:15, 3115:1
  **beneficiary** [2] - 3086:18, 3098:6
  **benefit** [1] - 3089:24
  **Bennett** [2] - 3032:7, 3032:21
  **Bentley** [2] - 3041:12
  **better** [3] - 3053:6, 3114:6, 3114:7
  **between** [4] - 3087:23, 3088:9, 3103:14, 3106:16
  **Beverly** [1] - 3044:12
  **beyond** [4] - 3047:16, 3085:7, 3093:2, 3103:21
  **big** [3] - 3062:16, 3062:20, 3063:25
  **bigger** [1] - 3084:3
  **bit** [5] - 3048:22, 3051:5, 3084:2, 3087:12, 3088:25
  **blacklist** [2] - 3053:20, 3053:23
  **blacklisted** [1] - 3053:21
  **blacklists** [2] - 3049:10, 3085:11
  **blinded** [1] - 3107:6
  **blindness** [4] - 3105:10, 3105:20, 3106:7, 3107:23
  **block** [1] - 3048:20
  **blocked** [2] - 3048:19, 3125:7
  **blowup** [1] - 3071:8
  **BMC** [1] - 3032:4
  **BNF** [1] - 3095:19
  **boat** [1] - 3100:14
  **bodies** [1] - 3085:22
  **boiler** [2] - 3101:13, 3125:19
  **bomb** [1] - 3123:13
  **bombings** [1] - 3075:25
  **BONNER** [2] - 3032:22, 3032:22
  **books** [1] - 3074:25
  **boss** [3] - 3060:4, 3091:12
  **bottom** [3] - 3041:16, 3070:4, 3071:8
  **branch** [1] - 3097:25
  **break** [2] - 3097:2, 3097:6
  **breakfast** [1] - 3047:9
  **breaks** [1] - 3036:14
  **BRETT** [1] - 3033:3
  **BRIAN** [1] - 3032:14
  **brief** [1] - 3094:2

  **briefly** [1] - 3066:25
  **bring** [3] - 3043:11, 3047:8, 3115:6
  **British** [2] - 3055:25, 3057:12
  **Brooklyn** [2] - 3032:10, 3033:6
  **brought** [2] - 3049:24, 3091:14
  **bullet** [1] - 3111:21
  **bunch** [1] - 3081:18
  **Bureau** [1] - 3060:6
  **bureaucracy** [1] - 3088:20
  **buried** [1] - 3066:14
  **business** [3] - 3053:14, 3088:10, 3088:14
  **BY** [5] - 3044:10, 3051:4, 3059:1, 3076:8, 3129:7

**C**

  **Cadman** [1] - 3033:6
  **calm** [1] - 3046:16
  **cannot** [3] - 3102:22, 3110:11, 3120:9
  **Capone** [3] - 3091:10, 3091:11, 3091:15
  **careful** [1] - 3065:8
  **carried** [1] - 3092:4
  **carries** [1] - 3106:19
  **carrying** [1] - 3075:25
  **case** [59] - 3034:13, 3036:5, 3039:2, 3039:22, 3040:16, 3040:22, 3043:18, 3043:24, 3045:1, 3046:25, 3060:10, 3060:13, 3060:22, 3064:20, 3065:10, 3067:10, 3067:13, 3067:18, 3068:5, 3069:1, 3071:17, 3073:3, 3073:6, 3073:8, 3073:20, 3076:12, 3076:16, 3077:23, 3084:19, 3087:17, 3087:20, 3089:12, 3096:8, 3098:15, 3099:4, 3099:5, 3099:7, 3099:10, 3099:12, 3100:3, 3104:2, 3107:24, 3108:25, 3109:20, 3109:24, 3110:10, 3110:17, 3112:11, 3115:3, 3117:20, 3118:13, 3119:12, 3123:23, 3124:21, 3125:13, 3126:15, 3127:5, 3127:11
  **cases** [9] - 3032:5, 3089:10, 3109:4, 3109:15, 3110:7, 3117:24, 3120:20, 3125:12, 3125:14
  **cashed** [1] - 3124:25
  **CAT** [1] - 3033:9
  **causation** [3] - 3122:10, 3122:20, 3124:9
  **causation"** [1] - 3116:24
  **caused** [3] - 3114:15, 3114:22, 3118:21
  **causing** [1] - 3120:12
  **caution** [1] - 3127:4
  **ceded** [2] - 3092:21, 3093:9
  **certain** [5] - 3088:4, 3091:24, 3092:23, 3093:11, 3096:6
  **certainly** [2] - 3039:4, 3110:13
  **cessation** [1] - 3088:16
  **cetera** [3] - 3063:19, 3066:10, 3074:3

chain [1] - 3077:25
challenges [1] - 3127:11
change [6] - 3100:23, 3103:2, 3107:21, 3109:17, 3113:1, 3123:19
changed [1] - 3102:1
changes [3] - 3100:17, 3102:15, 3103:6
charge [21] - 3049:1, 3064:2, 3073:10, 3073:11, 3076:15, 3100:9, 3100:16, 3100:17, 3107:17, 3108:11, 3112:5, 3119:2, 3119:8, 3121:21, 3123:21, 3123:22, 3124:21, 3125:10, 3125:11
charged [3] - 3058:4, 3073:7, 3079:2
charges [4] - 3071:10, 3073:12, 3073:24, 3100:5
charging [2] - 3099:22, 3100:3
Charitable [3] - 3037:7, 3083:15, 3086:20
charitable [3] - 3089:5, 3090:14
Charity [6] - 3041:22, 3042:8, 3070:15, 3070:22, 3074:3, 3078:21
charity [8] - 3089:22, 3089:23, 3089:24, 3090:1, 3090:7, 3090:9, 3090:12, 3126:14
chart [3] - 3070:5, 3071:3, 3071:9
Chase [2] - 3087:4, 3087:6
check [2] - 3086:24, 3124:25
checked [2] - 3036:23, 3084:13
checking [2] - 3084:18, 3101:8
chief [1] - 3060:4
choice [3] - 3069:13, 3069:17, 3118:8
choose [3] - 3075:24, 3077:4, 3089:15
chose [1] - 3089:5
circle [1] - 3091:13
Circuit [8] - 3037:2, 3037:3, 3037:10, 3110:11, 3115:8, 3117:2, 3117:5, 3117:17
citations [1] - 3034:23
cite [3] - 3081:7, 3109:20, 3109:24
cited [4] - 3034:11, 3082:10, 3113:10, 3119:16
cites [6] - 3036:4, 3081:4, 3081:13, 3081:21, 3109:15, 3109:17
Citibank [3] - 3084:4, 3084:8, 3084:9
citing [3] - 3054:23, 3081:9, 3081:10
CIVETTA [1] - 3033:4
civil [5] - 3099:10, 3103:25, 3121:11, 3121:15, 3125:14
civilian [1] - 3108:18
claim [4] - 3064:8, 3065:1, 3116:8, 3118:23
claims [1] - 3075:11
clarification [2] - 3112:4, 3122:3
clarifies [1] - 3107:25
clarify [2] - 3072:5, 3113:19
classified [2] - 3061:21, 3081:8
cleaner [1] - 3068:11
clear [16] - 3047:10, 3069:1, 3073:18, 3074:1, 3088:19, 3100:5, 3100:13,

3104:4, 3106:6, 3106:7, 3107:18, 3112:5, 3112:8, 3113:17, 3122:18, 3125:24
cleared [1] - 3087:2
clearly [2] - 3039:7, 3082:9
Clerical [1] - 3060:18
clerk [1] - 3105:17
clips [1] - 3039:20
closed [1] - 3107:9
closely [5] - 3051:9, 3062:11, 3064:17, 3077:3, 3090:3
closing [3] - 3058:3, 3094:13, 3098:19, 3099:17, 3122:7
closings [1] - 3099:1
CLYDE [1] - 3032:19
coast [6] - 3040:2, 3062:21, 3066:7
coerce [1] - 3108:17
COGAN [1] - 3032:14
COLES [59] - 3033:3, 3039:19, 3040:8, 3040:12, 3040:15, 3040:19, 3041:7, 3041:15, 3041:21, 3041:25, 3042:6, 3042:15, 3042:17, 3043:3, 3047:14, 3048:5, 3048:10, 3048:22, 3094:12, 3095:5, 3102:16, 3103:24, 3104:10, 3106:15, 3107:16, 3108:3, 3108:15, 3109:10, 3109:14, 3109:19, 3109:23, 3110:6, 3110:8, 3110:21, 3112:4, 3112:9, 3113:14, 3117:15, 3117:23, 3118:6, 3118:11, 3118:16, 3119:5, 3120:19, 3121:2, 3121:15, 3123:22, 3124:7, 3124:13, 3124:16, 3125:2, 3125:8, 3125:14, 3125:21, 3125:24, 3126:7, 3127:22, 3127:24, 3128:1
Coles [1] - 3040:6
colleague [1] - 3106:11
collected [1] - 3052:15
collection [1] - 3079:8
collective [1] - 3092:11
collectively [2] - 3079:10, 3125:19
college [1] - 3081:9
Columbia [1] - 3109:23
combatting [1] - 3085:16
comfort [2] - 3049:4, 3049:6
comfortable [1] - 3116:22
coming [3] - 3054:12, 3057:6, 3086:15, 3091:13, 3100:24
committed [6] - 3035:18, 3035:22, 3036:12, 3108:10, 3122:13, 3122:22
Committee [21] - 3036:5, 3037:7, 3037:8, 3037:9, 3037:25, 3055:5, 3070:12, 3070:18, 3070:20, 3070:24, 3070:25, 3071:2, 3078:21, 3078:22, 3078:23, 3082:6, 3083:17, 3083:24, 3084:14
committees [10] - 3037:5, 3049:5, 3061:9, 3070:15, 3079:25, 3080:6, 3088:22, 3089:18, 3089:21, 3093:17
common [2] - 3120:17, 3125:15
communicate [2] - 3099:8, 3099:11
communication [1] - 3099:12

community [1] - 3088:24
competency [1] - 3047:4
Complaint [1] - 3115:14
completely [1] - 3041:20
comprehensible [1] - 3117:3
concept [1] - 3113:18
concern [4] - 3107:4, 3116:10, 3122:19, 3124:2
concerned [6] - 3047:21, 3065:10, 3103:19, 3106:5, 3107:6, 3122:10
concerns [2] - 3092:25, 3093:13
concluded [2] - 3061:9, 3088:21
conclusion [5] - 3052:17, 3054:12, 3060:14, 3079:22, 3079:24
conclusions [1] - 3050:1
conclusive [1] - 3039:4
concrete [1] - 3115:10
conduct [2] - 3090:25, 3116:14
conference [7] - 3048:13, 3048:15, 3085:10, 3094:16, 3096:19, 3099:22, 3100:3
confidence [1] - 3075:17
conflate [1] - 3107:8
conflated [1] - 3123:15
confuse [1] - 3035:1
confused [2] - 3101:24, 3106:15
confusion [3] - 3073:10, 3073:24, 3103:19
Congress [1] - 3118:9
conjunction [1] - 3122:20
consequence [2] - 3104:17, 3116:1
consider [1] - 3126:18
consideration [1] - 3060:12
considered [5] - 3054:12, 3100:4, 3100:9, 3126:6, 3126:13
considers [1] - 3062:10
consistent [2] - 3117:16, 3117:17
conspiracy [3] - 3034:11, 3035:12, 3038:3
constituent [2] - 3059:8, 3080:16
constitute [1] - 3108:6
constituted [1] - 3036:7
construe [1] - 3118:7
construed [1] - 3118:5
contained [1] - 3063:16
contend [1] - 3123:12
context [8] - 3041:1, 3041:20, 3043:7, 3057:20, 3057:23, 3094:5, 3095:11, 3120:18
continue [2] - 3053:8, 3053:9
Continued [6] - 3033:1, 3045:9, 3050:12, 3056:9, 3099:25, 3113:24
continues [1] - 3082:19
CONTINUES [1] - 3051:3
CONTINUING [1] - 3083:1
continuum [1] - 3106:8
contrary [2] - 3058:6, 3128:8
contributed [1] - 3120:1
control [2] - 3092:22, 3093:10

**controlled** [12] - 3037:5, 3044:17, 3054:13, 3054:16, 3059:6, 3060:16, 3060:25, 3068:22, 3073:20, 3074:6, 3075:18, 3088:11
**Convention** [2] - 3085:6, 3085:9
**conversations** [1] - 3056:2
**convey** [2] - 3103:17, 3107:1
**conveys** [1] - 3104:21
**convict** [2] - 3037:23, 3071:16
**convicted** [13] - 3034:25, 3035:15, 3035:25, 3036:21, 3037:14, 3037:18, 3037:25, 3038:5, 3038:11, 3038:13, 3038:23, 3072:1, 3072:3
**conviction** [17] - 3034:16, 3034:18, 3035:6, 3035:9, 3035:10, 3036:2, 3036:7, 3036:10, 3036:23, 3037:3, 3038:8, 3038:9, 3038:18, 3073:11, 3073:19, 3074:9, 3087:11
**convictions** [2] - 3068:8, 3075:21
**copy** [2] - 3080:24, 3105:15
**corporation** [1] - 3124:14
**corporations'** [1] - 3125:11
**correct** [21] - 3039:13, 3052:1, 3060:23, 3061:2, 3061:17, 3061:18, 3064:6, 3071:11, 3071:12, 3077:9, 3078:7, 3078:10, 3078:14, 3080:22, 3084:1, 3086:10, 3087:14, 3087:22, 3108:24, 3117:8, 3120:16
**corrected** [1] - 3127:9
**correction** [1] - 3077:22
**correctly** [1] - 3082:5
**correspond** [1] - 3037:15
**corresponding** [1] - 3111:10
**corresponds** [1] - 3103:9
**corroborates** [1] - 3081:7
**corroborating** [1] - 3075:20
**Coulter** [2] - 3032:6, 3032:18
**count** [7] - 3034:11, 3038:3, 3069:10, 3070:23, 3071:2, 3073:8
**Count** [21] - 3034:14, 3037:13, 3037:14, 3037:23, 3037:25, 3038:1, 3069:1, 3070:2, 3070:5, 3070:6, 3070:7, 3070:10, 3070:13, 3070:17, 3070:19, 3070:21, 3071:1, 3071:16
**counter** [1] - 3061:3
**counterparts** [1] - 3055:22
**counterterrorism** [1] - 3052:6
**countries** [2] - 3045:3, 3049:22
**country** [1] - 3082:7
**counts** [16] - 3034:12, 3034:14, 3034:19, 3035:13, 3035:16, 3035:23, 3035:24, 3036:14, 3037:15, 3037:18, 3038:4, 3071:8, 3071:10, 3071:13, 3073:3
**Counts** [3] - 3069:4, 3069:10, 3071:16
**couple** [1] - 3109:15
**course** [3] - 3107:24, 3114:2, 3121:12
**Court** [16] - 3033:5, 3044:12, 3062:5, 3062:7, 3069:19, 3072:6, 3074:9, 3075:21, 3099:10, 3103:17, 3117:20,

3118:1, 3118:5, 3118:7, 3126:16, 3128:6
**court** [7] - 3051:1, 3058:16, 3062:4, 3077:18, 3096:2, 3097:14, 3099:20
**COURT** [190] - 3032:1, 3033:16, 3034:3, 3035:5, 3035:12, 3035:20, 3035:23, 3036:8, 3036:13, 3036:21, 3036:25, 3037:10, 3037:21, 3038:12, 3038:18, 3039:1, 3039:17, 3040:6, 3040:10, 3040:14, 3040:17, 3041:2, 3041:9, 3041:19, 3041:24, 3042:3, 3042:13, 3042:16, 3042:19, 3043:5, 3043:13, 3043:16, 3043:20, 3043:22, 3044:3, 3044:8, 3045:8, 3046:16, 3046:20, 3047:19, 3048:9, 3048:18, 3049:12, 3049:16, 3050:9, 3051:2, 3053:17, 3054:9, 3055:3, 3055:7, 3055:20, 3056:8, 3057:2, 3057:11, 3058:3, 3059:23, 3061:15, 3062:19, 3064:13, 3065:16, 3067:5, 3067:8, 3067:24, 3068:3, 3068:11, 3068:24, 3069:1, 3069:4, 3069:6, 3069:9, 3070:1, 3071:5, 3071:20, 3072:12, 3071:24, 3072:4, 3073:1, 3073:16, 3073:23, 3075:9, 3075:14, 3076:4, 3076:6, 3083:6, 3084:22, 3085:8, 3093:3, 3093:6, 3093:20, 3093:22, 3093:25, 3094:7, 3094:14, 3094:20, 3094:23, 3095:3, 3095:12, 3095:21, 3095:24, 3096:3, 3096:18, 3096:23, 3097:1, 3097:5, 3097:10, 3097:16, 3097:20, 3098:11, 3098:14, 3099:21, 3100:2, 3101:5, 3101:10, 3102:3, 3102:6, 3102:11, 3102:14, 3102:24, 3103:11, 3103:14, 3103:22, 3104:9, 3104:12, 3104:23, 3105:11, 3105:13, 3105:17, 3105:22, 3106:10, 3106:13, 3106:24, 3107:11, 3107:14, 3107:20, 3108:13, 3108:20, 3109:2, 3109:11, 3109:16, 3109:22, 3110:4, 3110:7, 3110:13, 3111:2, 3111:12, 3111:16, 3111:23, 3112:7, 3112:12, 3113:12, 3113:16, 3114:1, 3114:9, 3114:19, 3115:24, 3116:16, 3117:6, 3117:22, 3118:2, 3118:10, 3118:12, 3119:3, 3119:9, 3119:20, 3119:23, 3120:13, 3120:23, 3121:7, 3121:17, 3122:6, 3122:24, 3123:14, 3124:2, 3124:10, 3124:15, 3124:19, 3125:5, 3125:12, 3125:16, 3125:23, 3126:2, 3126:8, 3126:11, 3126:19, 3126:23, 3127:23, 3127:25, 3128:3, 3128:8, 3128:12
**Court's** [2] - 3102:18, 3111:10
**Courthouse** [1] - 3032:9
**COURTNEY** [1] - 3032:5
**cover** [1] - 3128:4
**coverage** [3] - 3066:7, 3076:1, 3099:7
**covered** [4] - 3044:23, 3062:20, 3079:4, 3113:22
**covert** [1] - 3091:19

**covertly** [1] - 3090:10
**create** [3] - 3112:22, 3118:9, 3124:18
**credence** [1] - 3077:17
**Credit** [1] - 3109:6
**credit/BNF** [1] - 3098:5
**crime** [1] - 3038:13
**crimes** [1] - 3071:11
**criminal** [8] - 3038:2, 3108:9, 3119:24, 3120:7, 3121:16, 3124:21, 3125:12
**cross** [2] - 3076:4, 3127:16
**CROSS** [2] - 3076:8, 3129:7
**crossing** [1] - 3127:17
**cry** [1] - 3128:13
**culpability** [1] - 3124:21
**currency** [2] - 3115:5, 3115:17
**current** [1] - 3053:5
**CV** [8] - 3032:4, 3032:5, 3032:6, 3032:6, 3032:7, 3032:7, 3032:8, 3032:8

**D**

**Dale** [2] - 3077:19, 3077:24
**Dallas** [1] - 3073:4
**damages** [2] - 3121:4, 3121:6
**dangerous** [1] - 3117:7
**Dar** [3] - 3086:5, 3086:18, 3086:20
**date** [4] - 3062:22, 3065:24, 3070:5, 3070:7
**dated** [5] - 3062:22, 3063:11, 3081:14, 3083:11, 3086:13
**dates** [1] - 3038:19
**days** [5] - 3063:3, 3063:11, 3063:21, 3065:18, 3066:4
**de** [1] - 3053:21
**deal** [2] - 3063:25
**dealing** [3] - 3073:20, 3115:2, 3119:23
**decade** [1] - 3038:20
**decades** [1] - 3121:14
**December** [7] - 3062:14, 3062:17, 3063:11, 3064:21, 3066:1, 3066:21, 3066:22
**decide** [2] - 3079:10, 3127:1
**decided** [4] - 3035:18, 3036:6, 3079:14, 3104:3
**deciding** [2] - 3079:2, 3106:22
**decision** [6] - 3052:11, 3063:17, 3063:23, 3074:5, 3117:21, 3121:20
**decisions** [4] - 3052:12, 3052:24, 3055:24, 3117:7
**declassified** [3] - 3061:22, 3066:19, 3066:21
**declassify** [1] - 3081:8
**deep** [1] - 3079:21
**Defendant** [2] - 3032:10, 3033:2
**defendant** [21] - 3033:18, 3034:10, 3034:22, 3035:2, 3041:13, 3046:23, 3087:17, 3087:20, 3101:2, 3102:15, 3103:22, 3103:24, 3104:16, 3106:2, 3107:9, 3109:11, 3112:17, 3117:14,

3127:4, 3127:16, 3127:20

**defendant's** [6] - 3034:10, 3039:11, 3048:4, 3107:15, 3113:14, 3118:21

**defendants** [7] - 3034:24, 3035:15, 3073:19, 3104:7, 3113:7, 3114:3, 3116:19

**defendants'** [2] - 3114:16, 3114:23

**defense** [3] - 3047:5, 3111:3, 3126:15

**defined** [3] - 3073:15, 3108:23, 3127:14

**definition** [6] - 3053:24, 3073:24, 3108:7, 3108:25, 3112:6, 3120:9

**definitive** [1] - 3044:25

**degree** [1] - 3067:15

**deleted** [1] - 3117:19

**deliberate** [1] - 3121:5

**deliberately** [3] - 3104:20, 3107:9

**deliberating** [1] - 3128:9

**deliberations** [2] - 3051:22, 3098:24

**demonstrates** [1] - 3054:23

**demonstrative** [1] - 3039:15

**deny** [1] - 3093:20

**department** [1] - 3047:3

**Department** [17] - 3047:11, 3051:15, 3051:24, 3060:10, 3061:4, 3063:17, 3074:9, 3075:22, 3077:11, 3077:13, 3078:12, 3079:6, 3079:13, 3080:7, 3088:5, 3088:6, 3089:3

**departments** [1] - 3079:9

**Departments** [1] - 3089:13

**deposition** [4] - 3047:14, 3048:6, 3048:11, 3048:21

**deprive** [1] - 3118:14

**Deputy** [1] - 3051:13

**designate** [8] - 3054:25, 3063:24, 3077:7, 3079:3, 3079:14, 3079:18, 3089:13, 3089:16

**designated** [23] - 3044:18, 3045:5, 3046:8, 3046:14, 3049:5, 3054:14, 3059:5, 3059:7, 3059:8, 3061:10, 3061:16, 3070:11, 3074:16, 3075:5, 3080:8, 3080:11, 3080:16, 3080:17, 3080:20, 3080:20

**designating** [2] - 3052:14, 3089:4

**designation** [13] - 3044:24, 3051:7, 3051:20, 3053:20, 3053:23, 3054:25, 3057:19, 3061:5, 3062:5, 3063:23, 3066:24, 3079:8, 3089:10

**designations** [8] - 3047:2, 3047:3, 3047:7, 3047:13, 3051:16, 3051:17, 3052:5, 3052:21

**desk** [1] - 3048:13

**despite** [1] - 3080:4

**detail** [1] - 3079:24

**determining** [1] - 3074:10

**development** [1] - 3088:3

**Development** [4] - 3061:6, 3063:18, 3079:20, 3080:15

**difference** [2] - 3038:16, 3106:24

**different** [14] - 3038:10, 3048:5,

3052:10, 3064:16, 3079:9, 3081:3, 3085:18, 3087:1, 3091:5, 3108:8, 3113:4, 3113:6, 3114:24

**differently** [2] - 3085:19, 3090:24

**difficult** [1] - 3119:12

**difficulty** [1] - 3057:2

**digit** [1] - 3098:9

**diligence** [1] - 3085:24

**direct** [12] - 3039:8, 3048:14, 3049:10, 3115:9, 3115:20, 3115:21, 3115:24, 3115:25, 3116:6, 3116:11, 3122:25, 3128:20

**DIRECT** [2] - 3044:9, 3129:6

**directed** [4] - 3063:5, 3120:8, 3126:5, 3126:7

**directly** [5] - 3037:15, 3047:23, 3068:20, 3115:23, 3116:14

**directness** [3] - 3114:13, 3114:25, 3115:11

**director** [4] - 3060:2, 3061:2, 3078:13, 3079:13

**Director** [1] - 3061:11

**disagree** [5] - 3037:21, 3044:21, 3050:5, 3111:2, 3116:20

**disagrees** [1] - 3103:24

**discern** [1] - 3125:5

**disclosure** [1] - 3063:1

**discovery** [2] - 3124:23, 3125:7

**discuss** [1] - 3053:3

**discussed** [9] - 3059:13, 3067:23, 3087:25, 3088:12, 3088:15, 3089:25, 3091:10, 3091:23, 3126:24

**discusses** [1] - 3040:3

**discussing** [1] - 3087:12

**discussion** [3] - 3034:24, 3041:5, 3119:10

**disjunctive** [1] - 3112:23

**disposal** [1] - 3089:8

**dispute** [1] - 3120:3

**disputed** [1] - 3039:2

**disputing** [1] - 3036:1

**distinction** [1] - 3103:14

**distributed** [1] - 3100:6

**district** [3] - 3109:6, 3109:8, 3109:9

**DISTRICT** [3] - 3032:1, 3032:1, 3032:15

**District** [2] - 3104:3, 3109:23

**DLA** [1] - 3033:2

**Doctor** [30] - 3033:19, 3039:15, 3041:12, 3044:2, 3044:3, 3044:11, 3044:12, 3044:14, 3044:22, 3046:24, 3047:24, 3050:5, 3051:5, 3053:11, 3054:3, 3054:10, 3056:6, 3057:3, 3057:6, 3057:18, 3059:2, 3059:17, 3061:20, 3068:2, 3070:2, 3074:18, 3075:15, 3076:3, 3076:9

**doctor** [1] - 3054:11

**document** [7] - 3034:6, 3036:10, 3059:18, 3060:5, 3061:21, 3062:4, 3062:24, 3063:12, 3063:14, 3063:16,

3081:8, 3082:16, 3083:23, 3094:5, 3097:16, 3106:17

**documents** [2] - 3062:7, 3067:15

**doll** [1] - 3121:3

**dollar** [2] - 3037:6, 3115:5

**dollars** [1] - 3121:12

**domain** [1] - 3061:23

**domestic** [2] - 3060:7, 3076:23

**done** [5] - 3038:24, 3038:25, 3075:22, 3118:2, 3122:7

**door** [1] - 3091:6

**down** [7] - 3036:14, 3046:16, 3066:18, 3070:4, 3086:5, 3087:3, 3091:13, 3093:22

**Dr** [1] - 3089:17

**drafted** [1] - 3123:15

**draw** [6] - 3050:1, 3050:2, 3050:3, 3102:1, 3103:5

**drawing** [1] - 3103:14

**drawn** [1] - 3065:5

**drive** [1] - 3114:17

**due** [1] - 3085:24

**duly** [1] - 3044:6

**during** [2] - 3048:13, 3051:16

## E

**early** [1] - 3121:19

**earmark** [1] - 3089:24

**easier** [1] - 3081:7

**East** [1] - 3033:6

**EASTERN** [1] - 3032:1

**eavesdropping** [2] - 3039:22, 3040:21

**eclipsing** [1] - 3119:25

**edits** [2] - 3101:25, 3114:18

**educate** [1] - 3100:13

**Edward's** [1] - 3039:15

**Edwards** [16] - 3042:1, 3044:13, 3044:14, 3044:22, 3046:24, 3047:24, 3049:3, 3050:5, 3054:11, 3056:6, 3057:3, 3057:7, 3057:18, 3059:17, 3061:20, 3074:18

**effect** [1] - 3119:18

**effectively** [4] - 3049:25, 3050:6, 3118:4, 3126:5

**efficiently** [1] - 3090:1

**Eight** [2] - 3070:23, 3070:24

**eight** [5] - 3034:14, 3036:4, 3036:19, 3041:3, 3101:17

**either** [5] - 3039:14, 3080:11, 3098:21, 3100:16, 3104:7, 3115:25, 3123:19, 3128:21

**El** [3] - 3086:5, 3086:18, 3086:20

**elected** [1] - 3089:10

**element** [6] - 3059:8, 3104:1, 3106:8, 3112:14, 3118:23, 3119:7

**elements** [5] - 3104:7, 3108:8, 3108:12, 3123:16

**eleven** [5] - 3060:21, 3101:20,

3101:22, 3102:3, 3102:12
**elicit** [1] - 3057:21
**elsewhere** [1] - 3051:11
**ELSNER** [1] - 3032:24
**embarrassing** [1] - 3089:1
**employee** [2] - 3097:24, 3124:17
**employees** [1] - 3046:9
**employment** [1] - 3124:18
**end** [8] - 3055:24, 3058:7, 3087:15, 3095:25, 3097:12, 3100:19, 3112:25, 3126:3
**ended** [1] - 3050:4
**enforcement** [6] - 3060:7, 3076:22, 3077:3, 3088:24, 3091:1, 3091:4
**engage** [1] - 3089:22
**engaged** [4] - 3090:13, 3091:7, 3091:9, 3111:25
**entire** [2] - 3046:25, 3059:25
**entities** [19] - 3052:16, 3053:14, 3053:21, 3055:1, 3055:10, 3060:15, 3064:3, 3073:21, 3073:25, 3074:11, 3074:13, 3075:18, 3079:18, 3079:25, 3080:10, 3080:16, 3088:14, 3088:22, 3091:2
**entitled** [3] - 3042:4, 3049:6, 3057:21
**entity** [6] - 3042:3, 3059:10, 3061:5, 3080:15, 3089:14
**equally** [1] - 3085:13
**escaped** [1] - 3064:18
**ESQ** [10] - 3032:18, 3032:19, 3032:21, 3032:22, 3032:24, 3032:24, 3033:2, 3033:3, 3033:3, 3033:4
**essential** [1] - 3034:16
**essentially** [4] - 3110:17, 3120:2, 3123:15, 3124:21
**established** [2] - 3106:4, 3107:23
**et** [4] - 3032:5, 3063:18, 3066:10, 3074:3
**EU** [1] - 3058:1
**European** [1] - 3044:24
**evaluating** [1] - 3059:5
**evening** [1] - 3121:20
**event** [5] - 3042:24, 3062:12, 3062:16, 3064:8, 3078:8
**eventually** [1] - 3088:16
**evidence** [19] - 3034:6, 3034:7, 3037:4, 3039:1, 3040:23, 3040:25, 3059:15, 3060:11, 3064:1, 3065:14, 3066:12, 3067:22, 3074:11, 3079:21, 3083:3, 3094:4, 3102:20, 3102:22
**evidentiary** [1] - 3125:4
**eviscerate** [1] - 3118:4
**exact** [3] - 3092:11, 3092:13, 3117:4
**exactly** [3] - 3065:12, 3079:4, 3108:24
**exam** [1] - 3049:10
**EXAMINATION** [5] - 3044:9, 3051:3, 3076:8, 3129:6, 3129:7
**example** [7] - 3052:13, 3053:1, 3061:18, 3082:10, 3082:18, 3085:13, 3092:15

**examples** [1] - 3063:8
**except** [1] - 3035:25
**exchange** [1] - 3092:14
**excuse** [1] - 3091:6
**excused** [1] - 3093:24
**executive** [1] - 3051:21
**exercise** [1] - 3113:9
**Exhibit** [8] - 3033:23, 3059:16, 3067:21, 3067:22, 3094:4, 3095:14, 3129:12, 3129:13
**exhibit** [2] - 3040:20, 3059:21
**exhibits** [2] - 3041:10, 3080:24
**exigencies** [1] - 3127:12
**exist** [1] - 3114:20
**exits** [1] - 3099:19
**exonerates** [1] - 3119:25
**expanded** [1] - 3104:6
**expect** [5] - 3064:20, 3091:7, 3091:11, 3108:16, 3127:15
**expected** [1] - 3076:13
**experience** [7] - 3051:6, 3051:8, 3051:9, 3052:19, 3053:11, 3055:15, 3059:3
**expert** [16] - 3039:11, 3041:13, 3047:16, 3047:22, 3048:3, 3048:24, 3057:5, 3058:8, 3064:7, 3064:10, 3064:19, 3067:9, 3075:6, 3075:11, 3080:23, 3084:20
**expertise** [4] - 3047:4, 3052:5, 3064:25, 3065:1
**explain** [4] - 3044:21, 3054:5, 3054:18, 3062:3
**explained** [1] - 3109:19
**explaining** [1] - 3049:6
**explanation** [2] - 3064:7, 3064:10
**explicit** [3] - 3073:9, 3126:16, 3127:18
**extent** [3] - 3048:25, 3074:4, 3119:3
**eye** [2] - 3075:3, 3091:22
**eyes** [1] - 3107:10

**F**

**F.3d** [2] - 3037:2, 3109:20
**F.B.I** [24] - 3059:25, 3060:14, 3060:16, 3061:2, 3061:9, 3061:12, 3063:16, 3065:9, 3074:8, 3075:21, 3076:21, 3077:2, 3077:3, 3077:7, 3077:24, 3079:17, 3080:4, 3080:5, 3080:17, 3081:4, 3081:6, 3081:10, 3082:4, 3082:9
**F.B.I.'s** [1] - 3061:20
**fabricating** [1] - 3081:23
**fabricator** [1] - 3082:11
**face** [1] - 3081:5
**facsimile** [1] - 3040:1
**fact** [18] - 3036:11, 3037:24, 3039:2, 3039:3, 3041:3, 3046:4, 3049:4, 3059:7, 3061:7, 3074:4, 3079:12, 3080:4, 3085:13, 3087:24, 3090:23,

3103:24, 3106:2, 3120:4
**facto** [1] - 3053:21
**factor** [8] - 3044:17, 3055:17, 3060:24, 3114:6, 3114:20, 3114:21, 3116:23, 3119:25
**factors** [3] - 3054:11, 3054:15, 3119:17
**facts** [6] - 3034:16, 3060:15, 3096:6, 3096:7, 3111:3
**factual** [1] - 3058:13
**failed** [1] - 3118:22
**fair** [4] - 3048:8, 3123:25, 3124:8, 3127:13
**false** [3] - 3082:13, 3082:15, 3082:18
**familiar** [8] - 3044:14, 3047:3, 3064:22, 3067:3, 3067:13, 3067:14, 3085:12, 3085:13
**familiarity** [1] - 3066:25
**famously** [1] - 3120:10
**far** [5] - 3038:9, 3047:1, 3047:21, 3065:10, 3115:22
**fashion** [1] - 3068:14
**faster** [2] - 3097:11, 3101:12
**FATF** [1] - 3085:15
**fault** [1] - 3101:25
**FBI** [8] - 3041:3, 3041:21, 3042:7, 3047:4, 3052:3, 3052:4, 3052:6, 3052:16
**feasor** [1] - 3120:6
**Federal** [3] - 3060:6, 3074:9, 3099:10
**federal** [2] - 3060:7, 3076:22
**few** [3] - 3033:20, 3067:11, 3076:17
**fiduciary** [1] - 3085:24
**fifteen** [1] - 3086:2
**Fifth** [3] - 3037:2, 3037:3, 3037:10
**fifty** [1] - 3119:22
**fight** [1] - 3088:15
**fighting** [1] - 3085:10
**figure** [2] - 3090:12, 3106:25
**final** [4] - 3098:17, 3099:1, 3121:21, 3122:5
**finalize** [1] - 3098:17
**finance** [1] - 3085:17
**financial** [2] - 3055:23, 3065:21
**Financial** [1] - 3085:15
**financing** [2] - 3079:23, 3085:11
**findings** [2] - 3060:6, 3067:15
**fine** [11] - 3042:24, 3095:24, 3102:16, 3110:8, 3111:20, 3113:12, 3114:4, 3123:22, 3125:21, 3126:19, 3128:1
**finish** [1] - 3042:9
**finished** [1] - 3059:24
**Firestone** [1] - 3040:13
**first** [27] - 3033:22, 3037:4, 3040:15, 3042:8, 3042:17, 3042:22, 3043:25, 3046:3, 3046:21, 3049:10, 3054:19, 3055:21, 3063:25, 3077:22, 3080:13, 3094:10, 3094:20, 3103:1, 3106:13, 3111:13, 3111:16, 3113:1, 3113:5, 3114:19, 3114:24, 3124:20

**five** [11] - 3036:19, 3060:21, 3065:11, 3068:21, 3074:16, 3079:14, 3080:6, 3091:18, 3096:16, 3097:2, 3101:14
**Five** [1] - 3070:8, 3070:19
**five-second** [1] - 3096:16
**flipping** [1] - 3122:2
**FLOWERS** [1] - 3032:24
**focal** [1] - 3126:15
**focused** [1] - 3035:12
**focusing** [2] - 3036:13, 3108:15
**follow** [2] - 3055:16, 3066:10
**follow-up** [1] - 3055:16
**followed** [3] - 3066:24, 3098:5, 3098:8
**following** [12] - 3033:15, 3037:5, 3051:9, 3062:11, 3064:15, 3064:17, 3099:14, 3099:25, 3100:1, 3109:4, 3111:25, 3124:20
**follows** [5] - 3042:23, 3044:7, 3063:22, 3079:20, 3097:23
**footnote** [1] - 3037:4
**footnotes** [1] - 3082:16
**force** [1] - 3118:14
**Force** [1] - 3085:15
**foreign** [1] - 3111:24
**foreseeable** [2] - 3123:8, 3123:11
**form** [6] - 3068:11, 3094:25, 3119:4, 3120:9, 3126:9, 3126:10
**formally** [2] - 3127:23, 3128:2
**former** [1] - 3053:5
**forms** [1] - 3098:4
**formulate** [1] - 3117:3
**formulation** [5] - 3106:6, 3108:19, 3120:17, 3121:6, 3123:5
**forth** [2] - 3100:8, 3125:4
**forward** [2] - 3033:21, 3054:25
**foundation** [5] - 3050:1, 3050:3, 3057:6, 3057:22, 3086:15
**Foundation** [18] - 3061:6, 3061:8, 3062:5, 3063:18, 3063:25, 3066:23, 3067:1, 3068:4, 3072:2, 3073:13, 3074:14, 3079:20, 3079:22, 3080:7, 3080:14, 3087:10, 3087:11, 3087:18
**Four** [3] - 3037:14, 3070:7, 3070:17
**four** [8] - 3035:7, 3036:19, 3076:15, 3087:15, 3091:18, 3092:14, 3101:11, 3108:8
**fourteen** [1] - 3102:9
**fourth** [2] - 3087:3, 3094:25
**frame** [1] - 3123:10
**free** [1] - 3110:16
**freeze** [2] - 3063:17, 3063:24
**Friday** [7] - 3098:21, 3098:22, 3098:23, 3099:1, 3099:4, 3128:7, 3128:10
**front** [4] - 3038:3, 3071:14, 3090:20, 3091:6
**fronts** [1] - 3039:3
**full** [1] - 3091:13
**funding** [6] - 3064:4, 3073:25,

3074:14, 3088:17
**funds** [3] - 3061:9, 3080:6, 3123:11
**funny** [1] - 3076:13

## G

**GARY** [1] - 3032:18
**gathered** [1] - 3052:8
**Gaza** [3] - 3074:23, 3092:23, 3093:11
**Gene** [1] - 3033:5
**general** [1] - 3062:6
**generally** [2] - 3119:4, 3128:12
**gentlemen** [4] - 3043:23, 3096:3, 3097:17, 3098:14
**German** [1] - 3075:20
**Gershon** [4] - 3114:4, 3116:14, 3117:23, 3117:24
**Gershon's** [2] - 3115:1, 3117:21
**Getter** [1] - 3063:13
**gist** [1] - 3037:9
**given** [5] - 3046:11, 3101:2, 3115:5, 3115:18
**GLATTER** [1] - 3106:19
**goal** [1] - 3052:25
**Goldberg** [1] - 3109:5
**Google** [1] - 3091:5
**Googling** [1] - 3065:2
**Government** [9] - 3088:6, 3088:7, 3088:15, 3088:20, 3088:21, 3088:23, 3089:7, 3089:8, 3090:15
**government** [9] - 3051:11, 3052:23, 3053:9, 3055:21, 3055:25, 3060:9, 3064:1, 3068:21, 3076:6
**governments** [1] - 3075:23
**governs** [1] - 3104:1
**grandfathered** [1] - 3076:17
**grants** [1] - 3088:10
**great** [4] - 3091:21, 3091:24, 3091:25, 3092:6
**greater** [1] - 3090:14
**ground** [3] - 3038:7, 3074:23, 3090:2, 3090:5
**group** [5] - 3041:3, 3074:15, 3075:25, 3076:1, 3090:2
**groups** [1] - 3074:24
**guess** [4] - 3042:11, 3044:11, 3076:17, 3101:5
**guilt** [2] - 3068:20
**gun** [1] - 3091:15
**Gurule** [1] - 3048:24
**gussied** [1] - 3042:2
**gussy** [1] - 3042:2
**gut** [1] - 3122:14
**guy** [1] - 3077:23

## H

**half** [1] - 3099:2

**Hamas** [62] - 3037:6, 3038:14, 3039:3, 3044:17, 3045:4, 3046:8, 3049:7, 3054:13, 3054:16, 3055:5, 3055:10, 3059:6, 3059:7, 3059:11, 3060:16, 3060:25, 3061:10, 3064:3, 3064:4, 3064:20, 3068:18, 3068:21, 3068:22, 3070:11, 3070:14, 3070:17, 3073:20, 3073:25, 3074:2, 3074:6, 3074:12, 3074:13, 3074:14, 3074:18, 3075:1, 3075:6, 3075:12, 3075:18, 3079:23, 3080:1, 3080:17, 3082:6, 3088:11, 3088:22, 3089:24, 3089:25, 3091:20, 3092:2, 3092:16, 3092:17, 3092:19, 3111:25, 3113:8, 3115:7, 3115:11, 3115:16, 3115:18, 3115:20, 3120:4, 3123:7
**Hamas'** [1] - 3123:12
**Hamas's** [2] - 3092:11, 3092:12
**hand** [4] - 3056:3, 3068:4, 3088:19
**handwriting** [1] - 3033:24
**hang** [3] - 3049:12, 3108:13, 3111:12
**Haniya** [1] - 3092:10
**Hansen** [2] - 3106:11, 3107:3
**HANSEN** [5] - 3107:2, 3107:12, 3119:15, 3119:21, 3122:9
**happier** [1] - 3123:21
**happy** [3] - 3100:11, 3107:18, 3123:21
**harbor** [3] - 3053:3, 3053:15, 3053:18
**hard** [1] - 3084:7
**harm** [4] - 3104:1, 3104:8, 3104:11, 3104:13
**hate** [1] - 3047:19
**head** [6] - 3047:11, 3061:1, 3061:3, 3075:2, 3116:15, 3122:15
**heading** [1] - 3079:19
**headline** [7] - 3041:19, 3041:21, 3041:23, 3042:7, 3042:16, 3042:20, 3043:1
**headlines** [1] - 3041:20
**hear** [4] - 3043:24, 3053:3, 3117:14, 3128:8
**heard** [1] - 3044:12
**hearing** [4] - 3034:1, 3057:11, 3094:17, 3096:20
**hearsay** [2] - 3040:19, 3041:2
**heated** [1] - 3088:16
**heavy** [1] - 3057:3
**Hebron** [6] - 3037:7, 3060:18, 3070:15, 3070:22, 3074:3, 3078:21
**held** [2] - 3094:16, 3096:19
**helpful** [4] - 3101:2, 3101:5, 3110:22, 3126:3
**Hezbollah** [5] - 3049:8, 3115:7, 3115:11, 3115:16, 3115:18
**hide** [3] - 3091:21, 3091:24, 3092:7
**hiding** [1] - 3092:5
**high** [1] - 3065:9
**highlight** [3] - 3094:25, 3095:18, 3103:4
**highlighted** [2] - 3055:13, 3066:1

**highly** [1] - 3039:4
**hit** [1] - 3086:25
**HLF** [5] - 3034:24, 3037:4, 3062:6, 3075:4, 3079:22
**hold** [1] - 3067:17
**holding** [1] - 3115:2
**Holy** [22] - 3061:9, 3061:8, 3061:16, 3061:23, 3062:5, 3063:18, 3063:24, 3064:3, 3066:23, 3067:1, 3068:4, 3072:2, 3073:13, 3074:5, 3074:14, 3079:20, 3079:22, 3080:7, 3080:14, 3087:10, 3087:11, 3087:18
**home** [2] - 3128:14
**honest** [1] - 3091:7
**honing** [1] - 3111:3
**Honor** [83] - 3035:3, 3036:1, 3036:16, 3036:24, 3037:9, 3037:17, 3038:6, 3038:21, 3039:19, 3040:23, 3043:12, 3044:1, 3045:6, 3046:15, 3046:21, 3048:14, 3049:1, 3050:10, 3050:11, 3053:16, 3054:2, 3054:7, 3055:2, 3055:19, 3056:7, 3059:22, 3061:14, 3064:12, 3065:15, 3067:3, 3067:23, 3068:2, 3068:10, 3068:23, 3071:3, 3073:22, 3075:8, 3075:13, 3083:5, 3084:21, 3085:7, 3093:1, 3093:18, 3094:2, 3096:16, 3097:19, 3098:10, 3101:1, 3101:21, 3101:23, 3101:24, 3102:10, 3102:19, 3103:8, 3103:16, 3104:19, 3105:8, 3105:20, 3107:2, 3107:16, 3108:3, 3108:22, 3109:10, 3111:9, 3111:11, 3111:20, 3112:3, 3113:7, 3113:10, 3113:23, 3114:7, 3114:11, 3116:5, 3117:1, 3120:3, 3121:25, 3122:9, 3122:14, 3122:18, 3123:4, 3126:10, 3126:22, 3128:11
**Honor's** [2] - 3106:20, 3107:7
**HONORABLE** [1] - 3032:14
**hope** [1] - 3084:12
**hoping** [1] - 3098:23
**Hospital** [3] - 3086:5, 3086:19, 3086:20
**host** [1] - 3052:16
**hotel** [1] - 3041:4
**hour** [2] - 3076:15, 3099:2
**hours** [2] - 3127:2
**however"** [1] - 3114:14
**huge** [2] - 3076:1, 3088:15
**humanitarian** [1] - 3090:8
**hundred** [1] - 3076:15

---

**I**

---

**ID** [1] - 3124:25
**idea** [2] - 3043:6, 3052:14
**identifiable** [1] - 3116:7
**identified** [2] - 3039:8, 3117:11
**identifying** [1] - 3090:25
**identities** [1] - 3092:11

**ignorance** [1] - 3054:23
**ignore** [1] - 3075:24
**illicit** [6] - 3085:17, 3090:13, 3090:25, 3091:7, 3091:8, 3091:22
**impact** [1] - 3074:5
**impeach** [2] - 3039:10, 3042:4
**implement** [1] - 3079:7
**implied** [1] - 3058:8
**imply** [1] - 3084:18
**importance** [4] - 3059:4, 3059:20, 3065:9, 3077:25
**important** [8] - 3051:13, 3060:24, 3066:5, 3067:19, 3099:6, 3121:13
**impression** [2] - 3102:22, 3105:25
**inaccurate** [1] - 3057:20
**inadmissible** [2] - 3046:18, 3046:19
**inappropriate** [1] - 3119:6
**incentivised** [1] - 3097:11
**inclined** [2] - 3034:21, 3067:5
**include** [1] - 3052:19
**included** [3] - 3046:10, 3062:8, 3125:10
**includes** [1] - 3082:17
**including** [3] - 3045:3, 3052:16, 3079:21
**incorporate** [1] - 3120:11
**incorporates** [1] - 3112:5
**indeed** [2] - 3051:23, 3085:14
**indicate** [1] - 3036:10
**indication** [1] - 3035:9
**indict** [2] - 3077:2, 3077:5
**indictment** [26] - 3034:11, 3034:15, 3034:18, 3035:6, 3035:8, 3036:3, 3037:16, 3038:2, 3038:8, 3067:1, 3067:12, 3067:20, 3068:5, 3068:8, 3068:15, 3068:16, 3070:2, 3070:5, 3070:11, 3070:13, 3070:16, 3071:7, 3071:10, 3073:9, 3074:1, 3087:11
**indirect** [1] - 3123:2
**individuals** [1] - 3073:12
**industry** [8] - 3051:11, 3052:19, 3053:9, 3053:25, 3054:4, 3054:5, 3057:13, 3065:22
**infer** [3] - 3106:2, 3106:3, 3125:9
**inference** [5] - 3049:6, 3102:20, 3125:2, 3125:3, 3125:9
**inferences** [2] - 3103:5, 3103:6
**information** [14] - 3039:11, 3052:7, 3052:8, 3052:15, 3053:13, 3064:1, 3064:23, 3065:2, 3066:20, 3075:24, 3081:6, 3082:9, 3091:3, 3128:6
**INGERMAN** [3] - 3033:3, 3097:15, 3128:11
**initials** [1] - 3078:1
**injured** [1] - 3115:23
**injuries** [4] - 3114:15, 3114:22, 3118:20, 3120:5
**injury** [4] - 3115:21, 3116:7, 3116:14, 3120:12
**inner** [1] - 3089:8

**inquire** [1] - 3048:6
**inquiry** [1] - 3058:7
**insane** [1] - 3049:9
**insert** [2] - 3100:22, 3103:2
**inserted** [1] - 3123:1
**insertion** [3] - 3100:17, 3111:11, 3111:24
**inserts** [1] - 3106:16
**insider** [1] - 3074:22
**insignificant** [1] - 3119:19
**instance** [1] - 3041:15
**instead** [3] - 3102:25, 3112:25, 3125:8
**institutions** [1] - 3085:20
**instruct** [3] - 3112:12, 3112:13, 3112:14
**instructed** [2] - 3094:8, 3126:21
**instruction** [15] - 3107:7, 3107:13, 3110:15, 3111:1, 3111:5, 3113:21, 3114:3, 3117:8, 3117:10, 3119:11, 3121:19, 3122:23, 3123:15, 3124:4, 3126:14
**instructions** [6] - 3094:9, 3096:4, 3098:17, 3099:1, 3099:15, 3110:20
**insufficient** [1] - 3124:18
**Intelligence** [2] - 3047:11, 3051:14
**intelligence** [7] - 3052:6, 3060:7, 3075:20, 3076:23, 3088:23, 3091:1, 3091:4
**intended** [3] - 3104:16, 3108:17, 3127:13
**intent** [13] - 3103:20, 3104:1, 3104:8, 3104:11, 3104:12, 3104:13, 3104:18, 3104:22, 3104:24, 3121:5, 3121:9, 3121:10, 3122:22
**intentionally** [2] - 3103:15, 3104:5
**interagency** [3] - 3047:12, 3079:5, 3079:8
**interest** [1] - 3085:23
**interested** [2] - 3062:10, 3095:19
**International** [1] - 3083:14
**international** [9] - 3085:22, 3088:3, 3088:8, 3108:6, 3108:7, 3108:11, 3108:23, 3109:3, 3109:13
**Internet** [3] - 3063:10, 3099:11, 3099:12
**interpret** [1] - 3052:18
**intervening** [1] - 3119:24
**interview** [1] - 3051:10
**intifada** [1] - 3087:15
**intimidate** [1] - 3108:17
**introduce** [1] - 3123:17
**introduced** [2] - 3040:22, 3043:17
**Investigation** [1] - 3060:6
**investigators** [1] - 3090:15
**involved** [3] - 3051:22, 3071:17, 3091:21
**Iran** [3] - 3115:5, 3115:7, 3115:17
**irrelevant** [1] - 3054:21
**Islamic** [8] - 3037:7, 3042:7, 3060:18,

3070:15, 3070:22, 3074:2, 3078:20, 3083:15

**Ismail** [1] - 3092:10
**Israel** [3] - 3092:16, 3092:21, 3093:9
**Israeli** [2] - 3092:23, 3093:11
**Israelis** [5] - 3041:22, 3042:8, 3042:9, 3042:21, 3093:16
**issue** [16] - 3034:13, 3034:20, 3048:25, 3051:9, 3054:6, 3057:13, 3064:17, 3088:19, 3110:1, 3115:3, 3115:19, 3116:6, 3119:12, 3124:8, 3126:16, 3126:17
**issues** [7] - 3051:12, 3053:3, 3062:10, 3114:8, 3114:12, 3114:17, 3124:23
**itself** [9] - 3078:19, 3078:20, 3081:1, 3102:23, 3102:24, 3103:2, 3107:6, 3109:3, 3120:14

# J

**jail** [1] - 3121:8
**JAMES** [1] - 3032:22
**Jazeera** [1] - 3104:2
**Jenin** [7] - 3037:8, 3060:17, 3068:6, 3070:18, 3070:24, 3074:3, 3078:22
**jeopardize** [1] - 3099:13
**job** [4] - 3051:22, 3052:7, 3064:22, 3128:21
**JODI** [1] - 3032:24
**journal** [1] - 3074:25
**journalist** [1] - 3066:13
**JP** [2] - 3087:3, 3087:6
**JUDGE** [1] - 3032:15
**Judge** [8] - 3104:3, 3114:4, 3115:1, 3117:21, 3117:23, 3117:24, 3120:10, 3121:2
**judge** [1] - 3116:14
**judgment** [2] - 3115:1, 3116:15
**July** [1] - 3083:11
**jumping** [1] - 3106:15
**juror** [2] - 3099:9, 3128:20
**jurors** [1] - 3128:13
**JURY** [1] - 3032:14
**Jury** [1] - 3099:19
**jury** [53] - 3032:15, 3033:15, 3035:1, 3035:18, 3036:6, 3036:11, 3037:12, 3037:17, 3038:5, 3043:6, 3043:11, 3043:21, 3044:12, 3044:21, 3049:1, 3067:13, 3067:21, 3068:6, 3068:19, 3069:9, 3071:14, 3071:16, 3072:1, 3074:10, 3076:11, 3088:2, 3094:8, 3094:17, 3096:20, 3099:20, 3100:1, 3102:21, 3103:4, 3103:19, 3107:4, 3107:7, 3108:10, 3110:14, 3110:23, 3111:5, 3112:12, 3116:24, 3117:3, 3117:8, 3117:10, 3122:18, 3122:20, 3123:24, 3125:5, 3126:20, 3127:18, 3128:5, 3128:17
**jury's** [3] - 3068:5, 3069:7, 3069:15

# K

**Kaplan** [1] - 3104:2
**Keaton** [1] - 3118:24
**keep** [3] - 3092:15, 3099:16, 3101:7
**kept** [1] - 3092:12
**key** [2] - 3047:5, 3051:21
**kid** [1] - 3081:9
**Kill** [4] - 3041:22, 3042:8, 3042:9, 3042:21
**Kimber** [1] - 3104:3
**kind** [15] - 3052:17, 3052:18, 3053:14, 3065:25, 3066:9, 3091:5, 3092:17, 3108:9, 3120:14, 3120:16, 3120:25, 3123:17, 3124:4, 3125:13, 3126:5
**kinds** [2] - 3081:3, 3114:2
**Kingdom** [4] - 3045:4, 3055:12, 3055:14, 3059:4
**Kingdom's** [1] - 3055:16
**knock** [1] - 3091:6
**knowing** [2] - 3090:9, 3112:17
**knowingly** [7] - 3073:14, 3103:9, 3103:15, 3112:6, 3112:10, 3112:15
**knowledge** [8] - 3052:19, 3074:22, 3106:3, 3106:8, 3106:9, 3107:9, 3107:22
**Kurtzer** [1] - 3032:7

# L

**L.A** [6] - 3063:4, 3063:13, 3065:17, 3066:2, 3066:3, 3066:15
**LA** [3] - 3040:10, 3042:6, 3042:20
**ladies** [4] - 3043:23, 3096:3, 3097:17, 3098:14
**laid** [1] - 3061:7
**Land** [22] - 3061:6, 3061:8, 3061:16, 3061:23, 3062:5, 3063:18, 3063:24, 3064:3, 3066:23, 3067:1, 3068:4, 3072:2, 3073:13, 3074:5, 3074:14, 3079:20, 3079:22, 3080:7, 3080:14, 3087:10, 3087:11, 3087:18
**language** [20] - 3034:23, 3068:18, 3100:17, 3101:3, 3105:25, 3106:6, 3113:11, 3114:5, 3114:13, 3114:25, 3115:12, 3115:13, 3116:12, 3116:17, 3116:21, 3117:4, 3117:12, 3118:7, 3122:17, 3123:1
**large** [1] - 3113:9
**largely** [1] - 3125:19
**larger** [1] - 3114:21
**largest** [1] - 3053:2
**last** [13] - 3033:18, 3044:23, 3059:13, 3073:1, 3076:13, 3079:4, 3087:23, 3091:10, 3091:14, 3093:5, 3093:19, 3098:2, 3106:21
**late** [3] - 3034:2, 3099:14, 3121:20
**laughing** [1] - 3092:13

**law** [27] - 3034:24, 3050:6, 3052:18, 3057:10, 3057:15, 3058:11, 3060:7, 3076:22, 3077:3, 3088:24, 3089:12, 3090:25, 3091:4, 3105:17, 3108:22, 3108:25, 3110:14, 3114:10, 3116:2, 3117:9, 3118:24, 3119:6, 3119:7, 3119:16, 3120:17, 3126:16
**Law** [1] - 3118:25
**lawyer** [1] - 3073:6
**lay** [2] - 3085:18, 3085:22
**lays** [1] - 3060:15
**lead** [1] - 3122:20
**leader** [4] - 3049:7, 3049:8, 3092:18
**leaders** [4] - 3041:4, 3067:2, 3092:12, 3092:16
**leadership** [1] - 3092:11
**leading** [1] - 3040:3
**leads** [1] - 3066:10
**least** [4] - 3056:1, 3082:13, 3126:18, 3127:6
**leave** [2] - 3101:4, 3105:4
**leaving** [3] - 3052:17, 3055:25, 3128:6
**lecture** [1] - 3053:19
**led** [1] - 3088:14
**left** [3] - 3065:25, 3088:19, 3098:1
**left-hand** [1] - 3088:19
**legal** [11] - 3034:24, 3049:1, 3049:23, 3049:24, 3052:17, 3057:9, 3073:5, 3085:21, 3100:5, 3100:8
**length** [1] - 3098:25
**lengths** [4] - 3091:21, 3091:24, 3091:25, 3092:6
**less** [2] - 3059:9, 3090:5
**letter** [1] - 3033:18
**letting** [1] - 3069:2
**level** [5] - 3065:9, 3074:10, 3075:17, 3077:18, 3118:17
**Levitt** [19] - 3033:19, 3043:19, 3044:2, 3044:3, 3044:6, 3044:11, 3051:5, 3053:11, 3054:3, 3054:10, 3059:2, 3068:2, 3070:2, 3074:18, 3075:15, 3076:3, 3076:9, 3089:17, 3129:5
**liability** [6] - 3038:22, 3110:12, 3110:24, 3120:10, 3121:11, 3124:18
**Licci** [1] - 3109:20
**life** [1] - 3121:8
**lift** [1] - 3058:1
**light** [3] - 3061:22, 3064:9, 3065:13
**likewise** [2] - 3070:7, 3070:8
**limitations** [1] - 3057:8
**Linde** [1] - 3032:17
**LINDE** [1] - 3032:5
**line** [10] - 3087:3, 3094:25, 3095:19, 3097:9, 3098:5, 3102:25, 3103:1, 3103:2, 3127:17, 3127:21
**lines** [3] - 3048:15, 3095:7, 3127:16
**Links** [2] - 3041:21, 3042:7
**Lisa** [1] - 3063:13
**list** [32] - 3049:8, 3049:11, 3051:7, 3053:20, 3053:22, 3053:23, 3053:24,

3054:19, 3054:21, 3054:23, 3054:24, 3055:10, 3055:14, 3056:6, 3057:4, 3057:7, 3057:19, 3057:20, 3057:25, 3058:1, 3058:4, 3059:11, 3074:1, 3077:8, 3084:13, 3084:15, 3084:17, 3084:18, 3085:15, 3086:24, 3116:9
**listed** [7] - 3037:15, 3045:2, 3047:22, 3053:21, 3057:5, 3079:25, 3109:14
**listen** [1] - 3100:11
**lists** [4] - 3037:6, 3044:25, 3052:20, 3058:6
**literal** [1] - 3115:22
**Litle** [2] - 3032:5, 3032:20
**LLC** [2] - 3032:17, 3032:23
**LLP** [2] - 3032:22, 3033:2
**locate** [1] - 3096:24
**look** [36] - 3034:12, 3035:13, 3036:3, 3036:14, 3037:12, 3037:13, 3038:19, 3040:15, 3049:13, 3053:4, 3063:4, 3063:14, 3065:20, 3065:25, 3066:18, 3080:5, 3080:13, 3081:21, 3081:24, 3082:1, 3084:2, 3086:2, 3086:4, 3086:11, 3087:2, 3101:7, 3102:11, 3109:16, 3109:17, 3110:7, 3117:12, 3117:24, 3123:19, 3124:10, 3125:15, 3127:1
**looked** [4] - 3083:8, 3085:12, 3090:3, 3108:4
**looking** [6] - 3036:17, 3037:13, 3040:6, 3040:12, 3097:16, 3112:21
**Los** [3] - 3041:17, 3042:22, 3063:10
**lucky** [1] - 3128:22
**lying** [1] - 3081:17
**Lyonnais** [1] - 3109:6

# M

**main** [2] - 3114:12, 3114:17
**Majesty's** [1] - 3055:22
**malice** [3] - 3121:5, 3121:11, 3121:15
**malicious** [1] - 3121:9
**man** [1] - 3047:1
**MARGARET** [1] - 3033:4
**MARK** [1] - 3032:21
**marked** [2] - 3067:20, 3068:1
**markings** [2] - 3063:12, 3114:2
**markup** [3] - 3101:2, 3105:15, 3123:1
**Martin** [1] - 3041:12
**martyrs** [1] - 3092:4
**Marzook** [4] - 3095:9, 3095:23, 3096:25, 3097:4
**massive** [1] - 3088:20
**match** [1] - 3083:20
**material** [7] - 3034:18, 3073:14, 3074:14, 3120:7, 3120:12, 3120:14, 3123:6
**materials** [1] - 3075:1
**Matt** [1] - 3044:2
**matter** [7] - 3041:3, 3044:24, 3046:5,

3079:12, 3108:22, 3128:22, 3128:25
**Matthew** [2] - 3044:6, 3129:5
**mean** [8] - 3049:11, 3053:22, 3059:11, 3110:14, 3116:16, 3117:9, 3127:2, 3127:4
**meaning** [2] - 3063:24, 3115:22
**means** [6] - 3046:9, 3059:11, 3081:6, 3082:2, 3082:12, 3096:10
**meant** [1] - 3104:17
**mechanical** [1] - 3033:8
**meet** [5] - 3051:11, 3053:2, 3055:5, 3118:18
**meeting** [1] - 3088:16
**memo** [37] - 3033:22, 3033:24, 3040:4, 3041:6, 3041:8, 3041:11, 3041:14, 3042:14, 3042:18, 3042:25, 3043:9, 3052:14, 3060:15, 3061:11, 3062:22, 3065:9, 3077:21, 3077:24, 3078:2, 3078:5, 3078:9, 3078:11, 3078:15, 3078:19, 3078:20, 3079:16, 3079:17, 3079:19, 3080:5, 3080:12, 3080:13, 3083:25, 3086:3, 3086:8, 3086:9, 3089:4
**Memo** [13] - 3059:15, 3061:21, 3062:13, 3062:16, 3065:18, 3066:5, 3066:16, 3075:11, 3076:20, 3077:20, 3080:24, 3081:13, 3081:20
**memorandum** [12] - 3040:24, 3052:14, 3059:21, 3059:24, 3060:1, 3060:3, 3061:7, 3061:12, 3062:8, 3063:6, 3063:22, 3080:9
**mentioned** [5] - 3052:2, 3055:12, 3083:25, 3086:8, 3096:3
**mentioning** [1] - 3094:9
**mentions** [1] - 3078:20
**message** [1] - 3092:17
**messages** [1] - 3083:8
**met** [1] - 3063:5
**Mezain** [1] - 3037:2
**MICHAEL** [1] - 3032:24
**mid** [1] - 3062:8
**might** [11] - 3043:14, 3059:13, 3090:2, 3096:16, 3104:21, 3107:7, 3107:8, 3108:15, 3113:8, 3120:17, 3128:15
**mildly** [1] - 3127:9
**Milton** [15] - 3039:15, 3042:1, 3044:13, 3044:22, 3046:24, 3047:24, 3049:3, 3050:5, 3054:11, 3056:6, 3057:3, 3057:7, 3057:18, 3059:17, 3074:18
**Milton-Edward's** [1] - 3039:15
**Milton-Edwards** [9] - 3042:1, 3044:13, 3044:22, 3046:24, 3047:24, 3049:3, 3050:5, 3054:11, 3056:6
**mind** [5] - 3058:12, 3069:8, 3069:15, 3099:16, 3109:17
**mine** [2] - 3051:19, 3114:6
**minimum** [3] - 3062:4, 3086:1, 3116:13
**minute** [6] - 3036:8, 3061:19, 3076:20, 3080:2, 3097:2, 3097:6

**minutes** [1] - 3099:2
**misleading** [2] - 3114:23, 3120:18
**missed** [1] - 3100:14
**missing** [1] - 3101:8
**mistaken** [1] - 3103:19
**mob** [1] - 3091:11
**moment** [1] - 3035:4
**money** [8] - 3036:18, 3074:13, 3076:6, 3115:7, 3116:13, 3122:12, 3122:21, 3124:3
**monies** [2] - 3115:10, 3115:16, 3116:13
**month** [3] - 3034:1, 3034:5, 3044:11
**Morgan** [2] - 3087:3, 3087:6
**morning** [11] - 3033:16, 3043:23, 3047:9, 3076:9, 3076:10, 3098:19, 3098:22, 3099:2, 3099:4, 3099:17, 3128:24
**most** [3] - 3051:13, 3066:8, 3127:13
**mostly** [2] - 3053:4, 3101:13
**motion** [1] - 3128:2
**MOTLEY** [1] - 3032:23
**move** [2] - 3037:1, 3093:19
**MR** [201] - 3033:25, 3035:3, 3035:6, 3035:17, 3035:21, 3036:1, 3036:9, 3036:16, 3036:22, 3036:24, 3037:1, 3037:17, 3038:6, 3038:16, 3038:21, 3039:13, 3039:19, 3039:25, 3040:8, 3040:12, 3040:15, 3040:19, 3040:23, 3041:7, 3041:15, 3041:21, 3041:25, 3042:6, 3042:15, 3042:17, 3043:3, 3043:12, 3043:14, 3043:19, 3044:1, 3044:10, 3045:6, 3046:19, 3046:21, 3047:6, 3047:8, 3047:10, 3047:14, 3047:18, 3048:5, 3048:10, 3048:12, 3048:22, 3048:24, 3050:8, 3050:10, 3050:11, 3051:4, 3053:16, 3054:2, 3054:7, 3055:2, 3055:19, 3056:7, 3057:9, 3057:24, 3059:1, 3059:22, 3061:14, 3062:18, 3064:12, 3065:15, 3067:3, 3067:7, 3067:20, 3068:10, 3068:23, 3069:3, 3069:5, 3069:7, 3069:14, 3069:17, 3071:3, 3071:6, 3071:18, 3071:23, 3072:1, 3072:5, 3073:22, 3075:8, 3075:13, 3076:3, 3076:5, 3076:8, 3083:4, 3084:21, 3085:7, 3093:1, 3093:5, 3093:18, 3093:21, 3094:2, 3094:11, 3094:12, 3094:21, 3094:24, 3095:4, 3095:5, 3095:17, 3095:23, 3096:16, 3096:24, 3097:2, 3097:3, 3097:8, 3097:15, 3097:19, 3097:21, 3098:13, 3101:1, 3101:9, 3101:21, 3102:5, 3102:10, 3102:12, 3102:16, 3102:19, 3103:8, 3103:12, 3103:16, 3103:24, 3104:10, 3104:19, 3105:8, 3105:12, 3105:16, 3105:19, 3105:24, 3106:11, 3106:15, 3106:17, 3106:19, 3106:21, 3107:2, 3107:12, 3107:16, 3108:3, 3108:15, 3108:22, 3109:10, 3109:14,

3109:19, 3109:23, 3110:6, 3110:8, 3110:21, 3111:9, 3111:14, 3111:20, 3112:3, 3112:4, 3112:9, 3113:6, 3113:14, 3113:23, 3114:7, 3114:11, 3114:25, 3116:4, 3117:1, 3117:15, 3117:23, 3118:6, 3118:11, 3118:16, 3119:5, 3119:15, 3119:21, 3120:3, 3120:19, 3121:2, 3121:15, 3121:25, 3122:2, 3122:9, 3122:25, 3123:22, 3124:7, 3124:13, 3124:16, 3125:2, 3125:8, 3125:14, 3125:21, 3125:24, 3126:7, 3126:10, 3126:12, 3126:22, 3127:22, 3127:24, 3128:1, 3128:5, 3128:11, 3129:7
**multiple** [3] - 3075:19, 3089:7, 3089:23
**must** [6] - 3096:6, 3106:3, 3112:14, 3112:15, 3116:6, 3118:22

## N

**NA** [1] - 3084:8
**Nablus** [4] - 3037:7, 3070:24, 3071:2, 3078:22
**name** [4] - 3041:12, 3059:10, 3095:18, 3107:2
**named** [2] - 3084:24, 3092:10
**namely** [1] - 3078:12
**names** [1] - 3053:20
**National** [1] - 3084:4
**national** [1] - 3062:20
**Nations** [2] - 3054:24, 3055:9
**natural** [1] - 3104:16
**NatWest** [1] - 3109:8
**necessary** [2] - 3098:25, 3104:1
**need** [23] - 3034:25, 3037:10, 3041:16, 3041:17, 3041:18, 3041:19, 3041:20, 3041:21, 3042:1, 3042:12, 3043:3, 3043:14, 3067:4, 3071:22, 3076:5, 3090:25, 3091:2, 3096:16, 3101:7, 3125:23, 3126:20, 3128:4, 3128:19
**needed** [2] - 3088:13, 3117:9
**negative** [1] - 3106:1
**negligence** [1] - 3119:18
**negligible** [1] - 3040:25
**never** [6] - 3047:17, 3049:8, 3080:7, 3080:20, 3089:18, 3128:19
**NEW** [1] - 3032:1
**new** [2] - 3047:22, 3049:25
**New** [10] - 3032:10, 3033:6, 3040:10, 3040:12, 3043:1, 3065:20, 3065:21, 3066:3, 3066:15, 3097:24
**Newcomb** [1] - 3078:12
**newspaper** [5] - 3039:9, 3065:17, 3081:4, 3081:5, 3081:20
**newspapers** [6] - 3040:3, 3062:21, 3063:2, 3066:8, 3066:9, 3081:2
**next** [11] - 3034:9, 3039:9, 3045:9, 3050:12, 3056:9, 3071:13, 3082:19,

3092:18, 3113:1, 3113:24, 3116:5
**nice** [1] - 3076:10
**night** [2] - 3033:18, 3099:16
**nine** [10] - 3034:12, 3035:13, 3035:16, 3035:23, 3035:25, 3036:19, 3037:19, 3069:11, 3098:9, 3101:18
**Nine** [1] - 3034:14
**nine-digit** [1] - 3098:9
**non** [2] - 3049:24, 3053:14
**non-legal** [1] - 3049:24
**non-OFAC** [1] - 3053:14
**none** [1] - 3038:10
**nonresponsive** [1] - 3054:2
**note** [1] - 3120:19
**noted** [2] - 3119:22, 3122:14
**notes** [1] - 3037:3
**nothing** [5] - 3036:9, 3040:16, 3093:18, 3093:21, 3102:4
**notice** [3] - 3041:8, 3041:10, 3041:11
**noticed** [1] - 3062:23
**notion** [2] - 3116:23, 3120:11
**notwithstanding** [1] - 3114:21
**November** [1] - 3062:22
**number** [10] - 3046:6, 3047:1, 3061:1, 3076:14, 3077:24, 3078:16, 3084:7, 3098:7, 3098:9, 3120:19
**numbers** [3] - 3098:6, 3098:8, 3108:1
**numerous** [1] - 3071:10
**nutshell** [1] - 3068:18

## O

**o'clock** [2] - 3032:11, 3128:14
**oath** [2] - 3044:3, 3099:5
**object** [4] - 3034:5, 3048:20, 3084:21, 3093:1
**objected** [3] - 3046:4, 3047:15, 3048:22
**objecting** [1] - 3040:7
**objection** [30] - 3033:25, 3034:2, 3045:6, 3049:17, 3049:20, 3053:16, 3053:17, 3054:7, 3055:2, 3055:8, 3055:19, 3056:7, 3058:15, 3059:22, 3061:14, 3062:18, 3064:12, 3065:15, 3067:3, 3067:25, 3068:10, 3068:23, 3069:6, 3071:18, 3073:22, 3075:8, 3075:13, 3102:14, 3105:6, 3112:3
**objections** [1] - 3095:5
**obligation** [1] - 3089:13
**obligations** [1] - 3085:24
**observing** [1] - 3090:16
**obviously** [8] - 3098:20, 3101:4, 3116:10, 3117:21, 3119:11, 3121:8, 3123:11, 3125:15
**occur** [1] - 3116:17
**occurred** [3] - 3033:15, 3074:4, 3100:1
**October** [2] - 3086:13, 3109:8
**OF** [2] - 3032:1, 3032:14
**OFAC** [20] - 3047:15, 3049:8, 3051:7,

3052:20, 3053:14, 3078:13, 3079:1, 3079:7, 3079:14, 3083:20, 3084:11, 3084:12, 3084:18, 3085:11, 3086:21, 3086:22, 3086:23, 3086:24, 3087:2
**offer** [2] - 3046:3, 3067:22
**offered** [4] - 3040:17, 3041:1, 3041:5, 3048:25
**offering** [1] - 3039:13
**officers** [1] - 3087:19
**official** [3] - 3051:21, 3053:5, 3055:22
**officials** [5] - 3051:12, 3052:24, 3053:2, 3053:7, 3056:1
**often** [1] - 3088:2
**once** [10] - 3049:6, 3052:24, 3056:1, 3059:7, 3067:10, 3084:11, 3088:2, 3093:16, 3118:11, 3122:5
**one** [72] - 3033:18, 3035:11, 3036:3, 3036:4, 3036:6, 3036:15, 3036:18, 3036:20, 3037:18, 3037:19, 3038:4, 3039:1, 3039:3, 3040:10, 3043:10, 3044:17, 3049:9, 3049:22, 3051:17, 3051:18, 3051:20, 3052:12, 3054:11, 3056:5, 3058:2, 3059:5, 3061:1, 3064:15, 3064:20, 3064:21, 3066:7, 3066:11, 3066:12, 3079:3, 3081:8, 3081:13, 3082:13, 3082:17, 3083:11, 3083:24, 3084:12, 3087:9, 3087:20, 3089:15, 3089:17, 3092:14, 3095:6, 3095:19, 3095:23, 3096:25, 3097:3, 3097:8, 3097:9, 3098:20, 3103:25, 3107:12, 3108:8, 3109:24, 3111:22, 3113:1, 3113:3, 3114:12, 3115:22, 3118:4, 3121:25, 3123:24, 3124:24, 3126:12, 3127:10, 3128:16, 3128:19
**One** [3] - 3037:13, 3069:1, 3109:7
**ones** [8] - 3034:14, 3035:18, 3035:23, 3060:18, 3083:25, 3085:14, 3118:5
**Open** [2] - 3069:19, 3072:6
**open** [8] - 3050:4, 3051:1, 3058:16, 3068:17, 3096:2, 3097:14, 3099:16, 3099:20
**open-ended** [1] - 3050:4
**opened** [1] - 3124:25
**opening** [2] - 3127:6, 3127:10
**operation** [1] - 3052:10
**operations** [3] - 3052:8, 3052:9, 3098:3
**operative** [1] - 3049:8
**opine** [1] - 3058:13
**opinion** [13] - 3044:17, 3046:3, 3049:1, 3049:23, 3055:13, 3056:4, 3057:22, 3060:25, 3074:5, 3074:7, 3074:8, 3075:10
**opinions** [4] - 3049:24, 3055:17, 3065:6, 3067:16
**option** [2] - 3079:10, 3110:5
**order** [4] - 3090:12, 3115:1, 3127:7, 3127:12
**orders** [1] - 3047:22
**organization** [13] - 3038:10, 3045:5,

3070:6, 3070:7, 3070:10, 3070:11, 3070:13, 3070:16, 3079:3, 3086:9, 3088:12, 3092:3, 3111:25

**organizations** [8] - 3038:10, 3038:13, 3038:23, 3039:3, 3073:13, 3085:14, 3085:18, 3088:18

**organized** [1] - 3123:23

**Osen** [4] - 3106:16, 3106:25, 3114:5, 3120:20

**OSEN** [51] - 3032:17, 3032:18, 3036:24, 3037:1, 3040:23, 3047:10, 3048:24, 3050:10, 3095:23, 3096:16, 3096:24, 3097:2, 3097:8, 3097:19, 3101:1, 3101:9, 3101:21, 3102:5, 3102:10, 3102:12, 3102:19, 3103:8, 3103:12, 3103:16, 3104:19, 3105:8, 3105:12, 3105:16, 3105:19, 3105:24, 3106:11, 3106:17, 3106:21, 3108:22, 3111:9, 3111:14, 3111:20, 3112:3, 3113:6, 3113:23, 3114:7, 3114:11, 3114:25, 3116:4, 3117:1, 3120:3, 3121:25, 3122:25, 3126:10, 3126:12, 3126:22

**Oslo** [2] - 3092:22, 3093:10

**ostrich** [1] - 3075:2

**otherwise** [2] - 3041:19, 3104:21

**ought** [2] - 3057:23, 3104:6

**outline** [1] - 3091:15

**outside** [3] - 3049:18, 3099:20, 3124:17

**overall** [2] - 3069:15, 3109:17

**overnight** [1] - 3105:5

**overrides** [1] - 3108:11

**overrule** [3] - 3053:17, 3067:5, 3105:5

**overruled** [6] - 3055:20, 3059:23, 3062:19, 3064:13, 3071:20, 3073:23

**overruling** [1] - 3058:15, 3125:16

**overseers** [1] - 3090:15

**overt** [7] - 3035:8, 3035:10, 3035:16, 3036:3, 3036:7, 3036:11, 3036:13

**own** [3] - 3085:22, 3085:24, 3109:12

---

**P**

**p.m** [1] - 3032:11

**page** [39] - 3036:17, 3045:9, 3048:13, 3050:12, 3056:9, 3063:16, 3070:3, 3070:4, 3071:6, 3071:13, 3073:13, 3079:21, 3080:13, 3081:21, 3082:16, 3082:19, 3083:13, 3086:4, 3099:25, 3100:15, 3100:16, 3100:19, 3100:25, 3101:10, 3101:22, 3102:10, 3102:12, 3103:9, 3105:12, 3106:16, 3106:17, 3106:18, 3106:19, 3110:8, 3111:10, 3113:24, 3121:23, 3122:25

**pages** [5] - 3078:16, 3078:18, 3079:24, 3109:5, 3122:2

**pagination** [1] - 3102:1

**paid** [1] - 3076:12

**pairing** [1] - 3094:13

**Palestinian** [5] - 3064:19, 3092:22, 3093:10, 3093:14, 3093:16

**paper** [1] - 3081:10

**papers** [2] - 3063:21, 3108:4

**paragraph** [9] - 3040:15, 3041:18, 3042:11, 3042:22, 3043:4, 3063:15, 3066:18, 3073:9, 3079:18, 3081:22, 3111:18, 3111:19, 3111:23, 3112:20, 3112:25, 3114:14, 3116:5, 3117:19, 3118:19

**part** [21] - 3039:22, 3044:23, 3047:5, 3047:10, 3051:22, 3062:7, 3074:2, 3075:5, 3088:4, 3088:5, 3088:20, 3088:22, 3088:23, 3088:24, 3101:13, 3107:18, 3110:14, 3113:9, 3114:19, 3114:24, 3117:15

**participant** [1] - 3115:14

**participates** [1] - 3047:12

**participation** [1] - 3088:17

**particular** [12] - 3051:17, 3058:1, 3059:8, 3059:14, 3060:13, 3079:13, 3085:17, 3096:9, 3100:18, 3100:23, 3111:3, 3118:3, 3122:11, 3122:13, 3122:16, 3122:19, 3124:8, 3126:15

**particularly** [5] - 3038:8, 3099:6, 3099:14, 3108:15, 3123:24

**parties** [5] - 3073:3, 3073:5, 3096:13, 3097:22, 3100:6

**parties'** [1] - 3100:4

**partner** [1] - 3060:9

**partnering** [2] - 3061:8, 3088:17

**parts** [2] - 3043:9, 3126:4

**party** [3] - 3086:18, 3095:19, 3098:5

**pass** [1] - 3126:13

**passing** [1] - 3036:18

**past** [2] - 3038:9, 3076:17

**Pause** [3] - 3094:22, 3097:18, 3122:1

**pause** [7] - 3049:15, 3102:13, 3103:13, 3105:14, 3106:23, 3108:14, 3111:15

**paying** [2] - 3122:21, 3128:21

**payment** [1] - 3086:12

**payments** [2] - 3115:20, 3115:21

**peculiar** [1] - 3120:25

**peers** [1] - 3074:10

**people** [16] - 3038:12, 3051:10, 3051:20, 3053:9, 3053:13, 3053:14, 3057:4, 3057:14, 3066:9, 3074:25, 3091:21, 3092:3, 3092:4, 3092:24, 3093:12, 3121:8

**per** [2] - 3108:10, 3127:3

**percent** [1] - 3119:22

**perfectly** [2] - 3039:17, 3107:18

**perhaps** [1] - 3106:11

**period** [4] - 3035:7, 3038:9, 3051:18, 3059:19

**permissible** [1] - 3039:18

**permit** [2] - 3058:11, 3058:12

**permitted** [1] - 3127:8

**persistent** [1] - 3122:12

**person** [6] - 3046:13, 3054:16, 3061:1, 3105:2, 3119:25, 3120:11

**persons** [1] - 3053:20

**perspective** [1] - 3052:23

**perspectives** [1] - 3053:10

**persuaded** [1] - 3100:11

**pertain** [1] - 3068:9

**pertained** [1] - 3068:20

**Peter** [1] - 3107:2

**Philadelphia** [3] - 3039:22, 3040:5, 3041:4

**phrase** [1] - 3102:23

**piece** [4] - 3039:1, 3059:24, 3067:19, 3082:17

**pin** [2] - 3109:20, 3109:24

**PIPER** [1] - 3033:2

**Pizzeria** [1] - 3123:10

**place** [4] - 3100:18, 3100:22, 3100:24, 3110:9

**placed** [2] - 3057:3, 3058:1

**places** [2] - 3063:6, 3091:5

**plain** [1] - 3079:12

**plaintiff** [5] - 3047:15, 3104:15, 3104:16, 3114:4, 3114:1, 3120:5

**plaintiff's** [1] - 3057:23

**Plaintiff's** [5] - 3033:23, 3059:16, 3067:21, 3129:12, 3129:13

**Plaintiffs** [5] - 3032:5, 3032:18, 3032:21, 3032:22, 3059:21

**plaintiffs** [19] - 3034:22, 3034:25, 3040:21, 3043:25, 3057:17, 3057:21, 3094:1, 3098:12, 3104:9, 3104:10, 3110:18, 3113:1, 3113:4, 3115:4, 3115:15, 3116:8, 3118:22, 3123:6, 3124:2

**plaintiffs'** [14] - 3033:23, 3034:9, 3043:7, 3043:24, 3048:3, 3058:5, 3104:2, 3105:5, 3107:21, 3107:24, 3108:20, 3112:24, 3114:15, 3118:20

**plate** [2] - 3101:13, 3125:19

**plausible** [1] - 3115:10

**play** [2] - 3035:14, 3048:8

**played** [1] - 3068:7

**plays** [1] - 3055:17

**Plaza** [1] - 3033:6

**PLC** [1] - 3032:9

**plenty** [1] - 3127:3

**PLLC** [1] - 3032:19

**point** [25] - 3035:17, 3037:20, 3037:21, 3041:7, 3041:16, 3047:20, 3052:3, 3060:1, 3072:4, 3091:15, 3099:5, 3101:3, 3102:19, 3107:11, 3108:7, 3110:2, 3117:18, 3118:7, 3118:19, 3121:15, 3122:3, 3122:24, 3123:5, 3126:15, 3126:25

**pointing** [2] - 3037:1, 3066:6

**points** [4] - 3088:4, 3111:21, 3121:21, 3126:24

**police** [3] - 3076:21, 3076:22, 3076:24

**policeman** [1] - 3077:16

**policy** [4] - 3052:11, 3052:12, 3059:12, 3079:10
**poorly** [1] - 3123:14
**pops** [1] - 3065:2
**population** [1] - 3108:18
**portion** [2] - 3042:20, 3094:5
**portions** [2] - 3034:18, 3040:7
**position** [11] - 3033:23, 3045:4, 3049:21, 3057:3, 3090:24, 3098:2, 3107:15, 3108:21, 3113:14, 3124:7, 3126:6
**Posner** [1] - 3120:10
**possible** [6] - 3055:6, 3055:11, 3064:16, 3088:13, 3100:14, 3127:20
**post** [1] - 3094:4
**posters** [1] - 3092:4
**postured** [1] - 3038:3
**potential** [1] - 3035:1
**potentially** [2] - 3049:23, 3098:21
**practice** [1] - 3128:12
**practices** [1] - 3052:20
**pre** [1] - 3083:4
**pre-admitted** [1] - 3083:4
**preceded** [1] - 3111:21
**preceding** [3] - 3111:19, 3111:24, 3112:20
**preclusion** [2] - 3127:7, 3127:12
**predominant** [1] - 3119:18
**prefer** [1] - 3102:16
**prejudice** [4] - 3034:21, 3035:2, 3040:25, 3041:24
**prejudicial** [5] - 3040:20, 3041:8, 3041:23, 3043:2, 3043:8
**preliminary** [5] - 3060:5, 3067:6, 3094:9, 3096:4, 3101:12
**premier** [1] - 3060:6
**prepared** [2] - 3046:22, 3076:14
**presence** [1] - 3099:20
**present** [1] - 3043:21
**president** [1] - 3098:3
**press** [8] - 3063:20, 3075:11, 3076:1, 3082:12, 3082:13, 3082:15, 3082:17, 3099:7
**presumably** [1] - 3057:14
**presume** [1] - 3128:9
**previously** [4] - 3044:6, 3088:1, 3094:8, 3114:4
**primarily** [4] - 3114:15, 3114:22, 3118:21, 3120:10
**primary** [6] - 3085:10, 3119:21, 3120:5, 3120:12, 3120:22, 3120:23
**principally** [1] - 3126:25
**printout** [1] - 3063:10
**private** [3] - 3051:11, 3053:1, 3085:19
**proactively** [1] - 3065:1
**probable** [1] - 3116:1
**probative** [1] - 3039:5
**problem** [4] - 3061:10, 3096:23, 3117:11, 3117:12

**proceed** [4] - 3044:8, 3096:15, 3098:16, 3100:15
**proceedings** [3] - 3061:17, 3094:22, 3097:18
**Proceedings** - 3033:8
**process** [8] - 3047:10, 3047:13, 3049:3, 3049:9, 3051:7, 3051:21, 3055:16, 3079:5
**processing** [1] - 3038:23
**produced** [1] - 3033:9
**Professor** [1] - 3118:24
**professor** [1] - 3107:17
**programs** [1] - 3088:17
**prohibited** [2] - 3057:15, 3105:2
**prohibits** [1] - 3121:10
**prominent** [4] - 3063:20, 3063:21, 3066:8, 3085:14
**proof** [1] - 3118:17
**properly** [1] - 3123:21
**proposal** [6] - 3101:7, 3102:11, 3106:13, 3107:22, 3107:24, 3124:19
**proposals** [1] - 3100:6
**propose** [5] - 3042:5, 3042:6, 3054:25, 3116:18, 3124:16
**proposed** [11] - 3040:20, 3095:7, 3100:4, 3100:8, 3100:16, 3102:15, 3107:13, 3111:24, 3113:4, 3114:5, 3126:14
**proposing** [1] - 3113:2
**prosecution** [2] - 3067:1, 3067:16
**prosecutors** [2] - 3077:4
**protecting** [1] - 3085:23
**prove** [8] - 3034:16, 3104:8, 3104:9, 3104:10, 3118:22, 3120:4, 3123:6, 3124:3
**proved** [1] - 3123:16
**proven** [1] - 3120:21
**provide** [4] - 3073:14, 3089:23, 3090:1
**provided** [5] - 3037:5, 3111:11, 3115:16, 3123:6, 3123:25
**provides** [2] - 3088:7, 3120:11
**providing** [4] - 3074:14, 3090:6, 3090:8, 3092:3
**provision** [4] - 3103:25, 3121:4, 3121:16
**proximate** [9] - 3113:21, 3114:1, 3115:25, 3116:11, 3117:16, 3119:11, 3119:19, 3121:18, 3126:25
**public** [20] - 3053:12, 3059:18, 3061:23, 3062:4, 3062:9, 3062:17, 3062:23, 3063:1, 3063:6, 3066:16, 3066:17, 3075:3, 3075:5, 3075:12, 3076:1, 3081:7, 3091:22, 3092:1, 3092:18, 3092:20
**publicly** [4] - 3039:12, 3041:14, 3062:13, 3064:1
**purpose** [3] - 3039:10, 3039:24, 3096:12
**purposes** [3] - 3039:15, 3052:10, 3125:3

**pursuant** [1] - 3055:4
**pursue** [1] - 3079:11
**put** [22] - 3039:21, 3039:24, 3046:23, 3051:2, 3052:7, 3053:18, 3054:3, 3054:25, 3057:18, 3068:11, 3071:3, 3073:2, 3090:9, 3092:18, 3094:5, 3094:24, 3097:3, 3097:21, 3107:1, 3110:9, 3112:19, 3118:17
**putting** [1] - 3064:1
**puzzle** [1] - 3067:19
**PX** [4] - 3083:2, 3083:7, 3086:11, 3086:12

**Q**

**Qaeda** [2] - 3049:7, 3055:1
**Qalquilia** [1] - 3036:4
**qualifications** [1] - 3047:1
**qualified** [1] - 3047:25
**questions** [6] - 3033:20, 3048:11, 3048:17, 3057:24, 3090:21, 3091:18
**quickly** [5] - 3066:16, 3069:18, 3071:4, 3088:13, 3096:24
**quite** [2] - 3084:24, 3121:12
**quote** [4] - 3049:4, 3064:9, 3092:8, 3116:23
**quote-unquote** [1] - 3049:4

**R**

**raided** [1] - 3093:17
**raise** [2] - 3100:10, 3100:13
**raised** [2] - 3112:10, 3121:22
**raising** [1] - 3047:20
**Rajhi** [1] - 3110:10
**Ramallah** [9] - 3037:8, 3037:24, 3060:17, 3068:6, 3070:12, 3070:20, 3074:2, 3074:3, 3078:21
**ran** [1] - 3086:24
**Rantisi** [2] - 3092:10
**rather** [1] - 3106:8
**Raven** [2] - 3106:11, 3107:3
**RAVEN** [5] - 3107:2, 3107:12, 3119:15, 3119:21, 3122:9
**Raven-Hansen** [2] - 3106:11, 3107:3
**RAVEN-HANSEN** [5] - 3107:2, 3107:12, 3119:15, 3119:21, 3122:9
**re** [1] - 3080:14
**reach** [3] - 3061:22, 3064:9, 3101:3
**read** [13] - 3040:4, 3042:1, 3065:21, 3066:9, 3066:10, 3067:12, 3073:16, 3094:3, 3103:11, 3106:13, 3107:7, 3111:12, 3122:4
**reading** [3] - 3066:17, 3090:15, 3090:20
**ready** [1] - 3097:20
**real** [2] - 3054:5, 3075:6
**realize** [1] - 3038:21

**really** [1] - 3034:9, 3046:24, 3059:2, 3090:13, 3090:25, 3097:1, 3099:6, 3104:17, 3127:2, 3127:19, 3128:20
**rears** [1] - 3122:15
**reason** [5] - 3046:6, 3059:12, 3101:24, 3110:21, 3118:8
**reasonably** [1] - 3116:1
**reasons** [1] - 3124:20
**rebut** [3] - 3039:15, 3047:5, 3049:6
**rebuttal** [17] - 3033:19, 3043:24, 3044:2, 3046:22, 3047:18, 3047:20, 3047:23, 3048:2, 3048:4, 3048:8, 3048:9, 3048:16, 3049:19, 3050:1, 3093:25
**rebutting** [1] - 3046:23
**received** [2] - 3067:24, 3089:3
**recently** [2] - 3066:19, 3104:3
**recess** [1] - 3099:21
**Recess** [1] - 3099:23
**recipients** [1] - 3080:6
**recognize** [1] - 3096:14
**recognized** [1] - 3124:17
**recommendations** [3] - 3047:12, 3085:16
**recommended** [1] - 3061:5
**reconvene** [1] - 3099:22
**record** [4] - 3034:4, 3094:3, 3094:16, 3096:19
**recorded** [1] - 3033:8
**redact** [1] - 3034:22
**redacted** [1] - 3039:8
**redaction** [2] - 3063:15, 3067:23
**redo** [2] - 3100:12, 3126:24
**redoing** [1] - 3101:25
**reduce** [1] - 3034:21
**refer** [1] - 3122:5
**reference** [5] - 3039:21, 3040:8, 3122:10, 3122:16, 3122:19
**referenced** [1] - 3040:24
**references** [1] - 3039:20
**referring** [1] - 3066:19
**refers** [2] - 3098:6, 3114:14
**reflected** [1] - 3060:19
**reflects** [1] - 3100:7
**regard** [4] - 3033:22, 3051:8, 3052:20, 3098:4
**regarding** [2] - 3046:21, 3080:14
**regimes** [1] - 3044:25
**regularly** [1] - 3051:10
**regulation** [1] - 3089:12
**regulators** [1] - 3090:15
**reject** [1] - 3120:20
**rejected** [2] - 3124:20, 3126:13
**rejecting** [5] - 3103:6, 3104:12, 3104:13, 3114:3, 3121:7
**related** [2] - 3032:5, 3061:17
**relates** [2] - 3052:5, 3095:1
**relating** [1] - 3052:5
**relationship** [1] - 3118:9

**relative** [1] - 3051:6
**release** [2] - 3065:18, 3066:5
**relevance** [1] - 3038:7
**relevant** [8] - 3035:7, 3038:9, 3040:16, 3059:9, 3059:18, 3060:11, 3093:2, 3109:20
**reliable** [1] - 3060:11
**reliance** [1] - 3057:4
**relied** [1] - 3067:16
**Relief** [4] - 3061:6, 3063:18, 3079:20, 3080:14
**relies** [2] - 3081:1, 3081:20
**rely** [2] - 3101:6, 3102:21
**relying** [1] - 3109:4
**remember** [2] - 3052:2, 3099:9
**remind** [1] - 3088:2
**remote** [1] - 3123:2
**remove** [1] - 3119:6
**removing** [1] - 3119:1
**renew** [2] - 3127:23, 3128:2
**repeat** [1] - 3112:7
**rephrase** [2] - 3069:14, 3114:9
**report** [26] - 3039:20, 3046:4, 3046:12, 3046:22, 3047:16, 3047:17, 3048:1, 3048:4, 3049:18, 3063:14, 3066:12, 3066:13, 3066:20, 3066:21, 3080:23, 3081:1, 3081:20, 3082:12, 3082:13, 3082:15, 3082:17, 3089:19, 3092:8, 3119:17, 3125:1
**reportedly** [1] - 3092:10
**reporter** [3] - 3081:16, 3081:18, 3081:22
**Reporter** [1] - 3033:5
**reporters** [1] - 3066:10
**reporting** [2] - 3066:4, 3066:15
**reports** [3] - 3066:10, 3082:12, 3090:16
**reputational** [1] - 3085:23
**request** [1] - 3125:16
**require** [1] - 3034:22
**required** [1] - 3121:11
**requirement** [5] - 3045:1, 3048:3, 3080:12, 3103:20, 3115:19
**requirements** [2] - 3110:3, 3113:17
**requires** [2] - 3104:14, 3121:5
**research** [2] - 3074:24, 3075:22
**reservation** [1] - 3034:6
**reserved** [1] - 3128:3
**resides** [1] - 3079:5
**resource** [1] - 3099:11
**resources** [1] - 3073:15
**respect** [3] - 3035:8, 3043:15, 3055:15
**responding** [1] - 3047:23
**responsibility** [2] - 3124:14, 3125:11
**responsible** [2] - 3089:4, 3116:24
**rest** [1] - 3042:24
**restatement** [1] - 3119:16
**restaurant** [1] - 3123:13
**rested** [1] - 3098:15

**restores** [1] - 3057:22
**result** [2] - 3115:25, 3123:23
**results** [1] - 3043:6
**rethink** [1] - 3119:9
**returning** [1] - 3108:1
**reverse** [1] - 3119:6
**review** [1] - 3125:25
**RICE** [1] - 3032:23
**Richard** [1] - 3078:12
**right-hand** [1] - 3088:19
**rigorous** [1] - 3099:14
**risk** [2] - 3085:23, 3107:21
**ROCCO** [1] - 3032:22
**rogue** [3] - 3124:24, 3125:6, 3125:10
**role** [1] - 3068:7
**room** [1] - 3041:4
**Roth** [2] - 3032:8, 3032:21
**Rothstein** [5] - 3115:2, 3115:13, 3117:2, 3117:16, 3122:17
**routine** [4] - 3110:11, 3110:16, 3110:19, 3110:24
**routing** [1] - 3098:9
**row** [1] - 3092:17
**Rudolph** [1] - 3033:5
**Rule** [1] - 3034:16
**ruled** [1] - 3126:17
**ruling** [1] - 3117:25
**rulings** [1] - 3033:21
**running** [2] - 3051:20, 3086:23
**Russian** [1] - 3121:3

**S**

**safe** [3] - 3053:13, 3053:15, 3053:18
**Salam** [3] - 3086:5, 3086:18, 3086:20
**sanction** [1] - 3127:12
**sand** [1] - 3075:2
**save** [2] - 3069:12, 3096:12
**saw** [4] - 3052:13, 3079:19, 3124:19, 3124:24
**SAYLES** [1] - 3032:20
**Sbarro** [2] - 3123:9, 3124:4
**schedule** [1] - 3098:15
**scholar** [1] - 3062:10
**Scholtz** [1] - 3043:15
**School** [1] - 3118:25
**Schultz** [4] - 3095:13, 3097:23, 3097:24
**scope** [5] - 3047:16, 3049:18, 3085:7, 3093:2, 3123:7
**screen** [2] - 3063:9, 3071:4
**se** [1] - 3108:10
**search** [1] - 3086:23
**searching** [2] - 3064:23, 3065:1
**seat** [1] - 3044:4
**seated** [3] - 3033:17, 3043:22, 3100:2
**Second** [5] - 3110:11, 3115:8, 3117:2, 3117:4, 3117:17
**second** [18] - 3040:9, 3041:17,

3041:18, 3042:10, 3063:14, 3066:11, 3066:18, 3067:4, 3087:15, 3096:16, 3108:13, 3113:3, 3114:19, 3118:19, 3121:25, 3124:23

**secondarily** [1] - 3120:9
**secondary** [2] - 3120:8, 3120:16
**seconds** [1] - 3097:6
**secret** [3] - 3064:9, 3092:12, 3092:15
**Secretary** [1] - 3051:14
**Section** [1] - 3102:18
**section** [3] - 3060:4, 3104:7, 3113:2
**sector** [2] - 3053:1, 3085:20
**security** [2] - 3092:24, 3093:13
**see** [51] - 3034:17, 3043:8, 3049:13, 3051:12, 3053:8, 3070:3, 3070:4, 3070:8, 3071:13, 3076:10, 3077:21, 3078:19, 3083:2, 3083:7, 3083:11, 3083:13, 3083:15, 3083:16, 3083:21, 3084:3, 3084:6, 3084:7, 3086:6, 3086:12, 3086:16, 3087:3, 3092:4, 3094:20, 3099:3, 3099:16, 3101:3, 3107:11, 3107:14, 3109:16, 3110:4, 3111:12, 3112:21, 3113:12, 3113:16, 3114:1, 3115:24, 3117:12, 3117:25, 3119:1, 3122:24, 3128:16, 3128:23
**seeing** [5] - 3034:18, 3039:6, 3040:7, 3065:2, 3106:24
**seem** [4] - 3065:6, 3107:22, 3110:25, 3128:20
**selective** [1] - 3065:5
**send** [1] - 3121:19
**sending** [2] - 3061:8, 3121:13
**senior** [6] - 3041:4, 3051:12, 3051:21, 3053:2, 3053:5, 3055:21
**sense** [4] - 3052:9, 3100:23, 3106:9, 3115:22
**sent** [3] - 3077:20, 3078:12, 3121:8
**sentence** [8] - 3042:9, 3042:10, 3042:17, 3106:21, 3111:16, 3112:24, 3113:3, 3123:2
**separate** [2] - 3055:24, 3126:25
**separately** [1] - 3123:17
**September** [1] - 3032:11
**sequence** [1] - 3116:23
**serially** [1] - 3038:5
**serve** [1] - 3089:24
**service** [5] - 3051:21, 3055:25, 3075:20, 3090:4, 3110:24
**services** [5] - 3055:23, 3089:25, 3090:8, 3110:11, 3110:17
**set** [2] - 3097:19, 3100:8
**Seven** [2] - 3070:23, 3070:24
**seven** [2] - 3036:19, 3101:16
**seventeen** [1] - 3111:8
**several** [1] - 3087:19
**shadows** [4] - 3074:19, 3075:7, 3075:12, 3076:2
**SHAND** [1] - 3033:2
**share** [1] - 3044:19
**shareholders** [1] - 3085:25

**sheet** [1] - 3123:25
**Sheik** [1] - 3124:25
**Sheikh** [2] - 3092:9, 3095:17
**shocked** [1] - 3126:4
**short** [1] - 3076:6
**shorter** [1] - 3127:3
**show** [12] - 3034:19, 3040:2, 3041:25, 3049:25, 3064:2, 3065:24, 3095:1, 3095:14, 3095:17, 3097:8, 3104:16, 3115:20
**showed** [1] - 3037:4
**showing** [4] - 3039:1, 3039:10, 3063:9, 3082:5
**shows** [2] - 3039:3, 3086:24
**side** [6] - 3045:7, 3056:8, 3094:15, 3096:17, 3127:3, 3127:21
**Side** [7] - 3046:1, 3094:16, 3094:19, 3095:25, 3096:19, 3096:22, 3097:12
**side-bar** [2] - 3094:15, 3096:17
**Side-bar** [6] - 3094:16, 3094:19, 3095:25, 3096:19, 3096:22, 3097:12
**sidebar** [3] - 3057:1, 3067:4, 3068:24, 3071:22
**Sidebar** [2] - 3068:25, 3071:25
**sides** [3] - 3098:15, 3098:20, 3110:22
**signatory** [2] - 3060:1, 3061:3
**signatures** [1] - 3051:18
**signed** [1] - 3078:5
**significance** [1] - 3056:5
**significant** [5] - 3061:4, 3066:3, 3075:10, 3112:10, 3126:1
**signs** [1] - 3077:23
**simply** [3] - 3091:5, 3094:24, 3107:12
**singing** [1] - 3082:6
**sister** [1] - 3088:6
**sit** [2] - 3046:12, 3091:13
**Six** [1] - 3070:21
**six** [2] - 3036:19, 3101:15
**sixteen** [1] - 3111:7
**skew** [1] - 3127:20
**skipping** [1] - 3069:11
**slide** [4] - 3040:9, 3077:21, 3078:19, 3086:2
**slides** [6] - 3039:9, 3039:10, 3039:14, 3039:21, 3039:23, 3040:6
**slight** [1] - 3112:21
**slightly** [1] - 3113:19
**small** [1] - 3082:17
**smart** [1] - 3092:18
**social** [1] - 3090:4
**societies** [1] - 3089:5
**society** [1] - 3064:19
**Society** [5] - 3037:7, 3060:18, 3070:15, 3070:22, 3086:20
**sole** [1] - 3102:20
**solely** [1] - 3041:5
**solve** [2] - 3042:11, 3042:12
**someone** [9] - 3057:22, 3064:19, 3065:13, 3075:10, 3078:1, 3080:5,

3121:1, 3121:13, 3124:17
**sometime** [2] - 3064:20, 3064:21
**sometimes** [2] - 3088:4, 3090:1
**somewhere** [1] - 3066:13
**son** [1] - 3091:15
**songs** [1] - 3082:6
**soon** [3] - 3063:1, 3091:13, 3098:17
**sorry** [15] - 3035:24, 3081:24, 3090:19, 3092:13, 3093:7, 3096:17, 3097:19, 3101:1, 3101:22, 3105:9, 3106:10, 3106:15, 3114:11, 3121:25, 3124:13
**sort** [2] - 3114:17, 3121:5
**sounds** [1] - 3094:14
**sources** [4] - 3065:6, 3075:20, 3081:3, 3082:4
**sourcing** [1] - 3065:5
**Southern** [1] - 3104:3
**speaking** [2] - 3091:4, 3126:7
**special** [2] - 3074:22, 3085:16
**specific** [11] - 3053:20, 3056:2, 3068:8, 3068:17, 3068:19, 3103:20, 3104:24, 3115:3, 3115:10, 3123:9, 3123:13
**specifically** [4] - 3046:23, 3047:15, 3059:3, 3118:7
**spent** [1] - 3122:21
**spoken** [1] - 3104:13
**spot** [1] - 3065:11
**spring** [1] - 3048:7
**springing** [1] - 3048:12
**squib** [1] - 3041:16
**squibs** [1] - 3039:21
**staff** [1] - 3063:13
**stage** [1] - 3099:14
**stand** [1] - 3096:11
**standard** [1] - 3116:1
**standards** [7] - 3052:19, 3053:12, 3054:5, 3054:6, 3057:13, 3085:22, 3124:9
**standpoint** [1] - 3114:12
**stands** [1] - 3109:12
**Star** [1] - 3109:7
**start** [2] - 3043:5, 3111:17
**started** [2] - 3049:21, 3076:16
**starting** [1] - 3100:25
**starts** [2] - 3050:5, 3106:19
**State** [6] - 3077:13, 3079:6, 3088:5, 3088:6, 3089:9, 3089:13
**state** [1] - 3058:12
**statement** [5] - 3075:6, 3110:10, 3114:10, 3117:8, 3124:8
**statements** [2] - 3068:8, 3075:1
**states** [1] - 3119:17
**STATES** [2] - 3032:1, 3032:15
**States** [10] - 3032:9, 3046:7, 3046:14, 3062:21, 3066:8, 3076:21, 3079:1, 3079:2, 3079:13, 3089:2
**stating** [1] - 3086:23
**statute** [23] - 3034:23, 3055:5,

3104:14, 3104:22, 3104:24, 3104:25, 3108:9, 3113:7, 3113:10, 3116:3, 3118:3, 3118:4, 3118:8, 3118:14, 3120:7, 3120:8, 3120:14, 3120:15, 3120:24, 3120:25, 3121:9, 3121:10, 3122:14

**statutory** [1] - 3034:23
**stay** [3] - 3097:5, 3099:6, 3107:19
**stenography** [1] - 3033:8
**step** [1] - 3093:22
**Stephens** [5] - 3037:13, 3039:7, 3046:16, 3057:2, 3127:9
**STEPHENS** [49] - 3033:2, 3035:3, 3035:6, 3035:17, 3035:21, 3036:1, 3036:9, 3036:16, 3036:22, 3037:17, 3038:6, 3038:16, 3038:21, 3045:6, 3046:2, 3046:19, 3047:6, 3050:11, 3053:16, 3054:2, 3054:7, 3055:2, 3055:19, 3056:7, 3057:9, 3057:24, 3059:22, 3061:14, 3062:18, 3064:12, 3065:15, 3067:3, 3067:7, 3068:10, 3068:23, 3069:7, 3069:14, 3071:18, 3071:23, 3072:1, 3073:22, 3075:8, 3075:13, 3076:5, 3076:8, 3083:4, 3093:5, 3093:18, 3129:7
**stick** [2] - 3102:18, 3116:2
**still** [7] - 3044:3, 3092:24, 3093:12, 3101:6, 3116:17, 3118:13, 3128:3
**stip** [1] - 3094:20
**stipulate** [1] - 3097:22
**stipulated** [1] - 3094:6
**stipulation** [12] - 3043:15, 3094:3, 3094:8, 3094:10, 3094:12, 3095:1, 3095:11, 3095:12, 3096:9, 3096:11, 3098:10
**STONE** [1] - 3032:22
**stop** [3] - 3034:3, 3055:7, 3073:16
**stories** [1] - 3081:18
**Strauss** [1] - 3109:6
**strictly** [1] - 3085:21
**strike** [2] - 3073:1, 3093:19
**strikes** [1] - 3049:22
**string** [2] - 3098:5, 3098:8
**Strip** [1] - 3074:23
**strongly** [1] - 3058:8
**struck** [2] - 3048:15, 3048:25
**sub** [1] - 3079:18
**subject** [5] - 3046:5, 3064:24, 3064:25, 3067:22, 3089:17
**submission** [2] - 3110:1, 3127:24
**submissions** [1] - 3126:1
**substance** [1] - 3102:17
**substantial** [5] - 3114:6, 3114:20, 3116:7, 3116:23, 3123:8
**substantive** [4] - 3034:12, 3034:19, 3035:13, 3038:4
**subsumed** [1] - 3108:19
**success** [1] - 3090:14
**successful** [1] - 3090:25
**successor** [1] - 3092:9

**sufficient** [4] - 3046:18, 3123:3, 3123:7, 3123:11
**sufficiently** [1] - 3106:6, 3115:9
**suggest** [4] - 3103:20, 3116:12, 3116:16, 3116:18
**suggested** [2] - 3078:15, 3104:19
**suggesting** [3] - 3060:9, 3078:15, 3079:17
**suggests** [2] - 3086:23, 3124:5
**suicide** [1] - 3075:25
**summarizes** [2] - 3042:25, 3043:9
**summary** [4] - 3068:14, 3069:12, 3115:1, 3116:15
**superseding** [3] - 3067:12, 3068:4
**Supp** [3] - 3109:5, 3109:9, 3109:24
**support** [15] - 3038:14, 3052:8, 3055:13, 3063:17, 3065:6, 3073:14, 3074:15, 3091:1, 3092:2, 3092:3, 3120:7, 3120:12, 3120:14, 3121:1, 3123:6
**supporting** [1] - 3075:17
**Supreme** [4] - 3117:20, 3118:5, 3118:7, 3126:16
**surprised** [1] - 3119:10
**surveillance** [1] - 3043:6
**sustained** [7] - 3054:9, 3055:8, 3061:15, 3065:16, 3068:11, 3075:9, 3075:14
**sustaining** [2] - 3049:17, 3049:20
**swallow** [1] - 3110:2
**swallowing** [1] - 3110:4
**SWIFT** [7] - 3083:8, 3086:12, 3094:5, 3094:25, 3095:21, 3095:22, 3098:4
**sworn** [1] - 3044:6
**sympathetic** [1] - 3065:7
**sync** [1] - 3091:17
**system** [1] - 3059:25

## T

**tack** [1] - 3112:24
**Taliban** [1] - 3055:1
**talks** [1] - 3066:18
**tandem** [1] - 3093:15
**target** [1] - 3092:19
**targets** [1] - 3052:15
**Tarik** [1] - 3095:8
**Task** [1] - 3085:15
**technically** [1] - 3120:15
**Ted** [2] - 3097:23, 3097:24
**ten** [11] - 3035:25, 3036:14, 3037:16, 3037:20, 3069:4, 3069:11, 3071:2, 3071:14, 3097:2, 3097:6, 3101:19
**Ten** [2] - 3070:8, 3071:1
**ten-minute** [2] - 3097:2, 3097:6
**tend** [1] - 3089:24
**term** [2] - 3073:5, 3104:21
**terms** [8] - 3052:20, 3052:25, 3054:6, 3073:15, 3089:12, 3113:6, 3113:9,

3127:7
**terror** [2] - 3085:11, 3085:17
**terrorism** [7] - 3061:4, 3108:6, 3108:7, 3108:11, 3108:23, 3109:3, 3109:13
**terrorist** [8] - 3045:2, 3074:15, 3079:3, 3089:14, 3111:24, 3112:1, 3115:15, 3122:21
**terrorists** [5] - 3077:8, 3079:15, 3080:8, 3089:5, 3122:13
**test** [2] - 3114:6, 3118:3
**testified** [9] - 3044:7, 3044:16, 3049:4, 3049:10, 3054:19, 3061:20, 3067:9, 3067:10, 3113:8
**testify** [3] - 3046:12, 3049:21, 3096:9, 3097:23
**testimony** [14] - 3033:19, 3039:11, 3039:16, 3042:4, 3046:4, 3048:1, 3049:13, 3075:16, 3076:12, 3083:24, 3087:12, 3088:1, 3090:17, 3090:19
**Texas** [1] - 3073:4
**THE** [193] - 3032:14, 3033:16, 3034:3, 3035:5, 3035:12, 3035:20, 3035:23, 3036:8, 3036:13, 3036:21, 3036:25, 3037:10, 3037:21, 3038:12, 3038:18, 3039:1, 3039:17, 3040:6, 3040:10, 3040:14, 3040:17, 3041:2, 3041:9, 3041:19, 3041:24, 3042:3, 3042:13, 3042:16, 3042:19, 3043:5, 3043:13, 3043:16, 3043:20, 3043:22, 3044:3, 3044:5, 3044:8, 3045:8, 3046:16, 3046:20, 3047:19, 3048:9, 3048:18, 3049:12, 3049:16, 3050:9, 3051:2, 3053:17, 3054:9, 3055:3, 3055:5, 3055:7, 3055:20, 3056:8, 3057:2, 3057:11, 3058:3, 3059:23, 3061:15, 3062:19, 3064:13, 3065:16, 3067:5, 3067:8, 3067:24, 3068:3, 3068:11, 3068:24, 3069:1, 3069:4, 3069:6, 3069:9, 3070:1, 3071:5, 3071:20, 3071:22, 3071:24, 3072:4, 3073:1, 3073:16, 3073:23, 3075:9, 3075:14, 3076:4, 3076:6, 3083:6, 3084:22, 3085:8, 3093:3, 3093:6, 3093:7, 3093:20, 3093:22, 3093:25, 3094:7, 3094:14, 3094:20, 3094:23, 3095:3, 3095:12, 3095:21, 3095:24, 3096:3, 3096:18, 3096:23, 3097:1, 3097:5, 3097:10, 3097:16, 3097:20, 3098:11, 3098:14, 3099:21, 3100:2, 3101:5, 3101:10, 3102:3, 3102:6, 3102:11, 3102:14, 3102:24, 3103:11, 3103:14, 3103:22, 3104:9, 3104:12, 3104:23, 3105:11, 3105:13, 3105:17, 3105:22, 3106:10, 3106:13, 3106:24, 3107:11, 3107:14, 3107:20, 3108:13, 3108:20, 3109:2, 3109:11, 3109:16, 3109:22, 3110:4, 3110:7, 3110:13, 3111:2, 3111:12, 3111:16, 3111:23, 3112:7, 3112:12, 3113:12, 3113:16, 3114:1, 3114:9, 3114:19, 3115:24, 3116:16,

3117:6, 3117:22, 3118:2, 3118:10, 3118:12, 3119:3, 3119:9, 3119:20, 3119:23, 3120:13, 3120:23, 3121:7, 3121:17, 3122:6, 3122:24, 3123:14, 3124:2, 3124:10, 3124:15, 3124:19, 3125:5, 3125:12, 3125:16, 3125:23, 3126:2, 3126:8, 3126:11, 3126:19, 3126:23, 3127:23, 3127:25, 3128:3, 3128:8, 3128:12

**theme** [1] - 3046:24
**themselves** [3] - 3062:10, 3085:23, 3093:16
**theories** [2] - 3100:5, 3100:8
**theory** [4] - 3115:6, 3116:18, 3116:20, 3122:12
**thereafter** [1] - 3038:5
**therefore** [5] - 3034:15, 3061:10, 3082:10, 3114:21, 3120:17
**thinking** [1] - 3053:7
**thinks** [1] - 3079:17
**third** [4] - 3043:4, 3102:25, 3103:2, 3108:16
**thirteen** [1] - 3102:8
**three** [11] - 3036:18, 3046:2, 3063:11, 3091:18, 3100:25, 3101:10, 3108:12, 3111:22, 3113:17, 3127:2
**Three** [3] - 3037:14, 3070:6, 3070:14
**thresholds** [1] - 3085:19
**throughout** [2] - 3046:25, 3127:14
**tied** [2] - 3055:1, 3064:3
**today** [2] - 3067:10, 3100:10
**Today** [1] - 3081:14
**together** [1] - 3052:7
**Toklarem** [1] - 3078:22
**Tolkarem** [3] - 3083:17, 3083:24, 3084:14
**tomorrow** [8] - 3098:19, 3098:21, 3099:3, 3099:17, 3122:4, 3127:2, 3127:16, 3128:23
**ton** [1] - 3074:24
**tons** [1] - 3074:25
**took** [3] - 3049:4, 3076:19, 3122:17
**tool** [3] - 3059:14, 3060:13, 3085:10
**tools** [3] - 3089:8, 3089:10, 3089:15
**top** [7] - 3062:23, 3065:25, 3083:13, 3084:3, 3085:20, 3085:21, 3087:3
**topics** [1] - 3048:23
**tort** [6] - 3116:1, 3118:24, 3119:6, 3119:7, 3119:16, 3120:5
**torts** [1] - 3119:16
**total** [4] - 3076:11, 3076:14, 3076:17, 3076:18
**totality** [1] - 3074:11
**towards** [1] - 3065:5
**trace** [2] - 3116:13, 3122:12
**tracing** [1] - 3123:18
**track** [3] - 3107:13, 3111:21, 3113:11
**tracked** [1] - 3041:3
**training** [1] - 3051:23
**transaction** [3] - 3038:24, 3084:15,

3084:16
**transactions** [2] - 3038:4, 3038:23
**transcript** [2] - 3033:8, 3040:21
**TRANSCRIPT** [1] - 3032:14
**Transcript** [1] - 3082:19
**transfer** [5] - 3037:24, 3084:9, 3087:6, 3095:8, 3096:24, 3098:4, 3115:23
**transferred** [1] - 3115:17
**transfers** [2] - 3037:19, 3038:19
**transgressions** [1] - 3127:7
**Treasury** [29] - 3047:2, 3047:11, 3051:15, 3051:25, 3053:5, 3053:6, 3055:22, 3059:3, 3060:10, 3060:13, 3061:2, 3061:4, 3061:11, 3061:12, 3063:16, 3074:9, 3075:21, 3077:11, 3077:20, 3078:12, 3079:1, 3079:5, 3079:13, 3080:5, 3080:7, 3089:3, 3089:9, 3089:13
**treat** [1] - 3125:18
**tremendous** [1] - 3075:23
**TRIAL** [1] - 3032:14
**trial** [7] - 3061:23, 3066:23, 3074:5, 3097:7, 3099:13, 3127:12, 3127:14
**trials** [2] - 3123:24, 3128:18
**tried** [4] - 3046:5, 3048:6, 3118:18, 3120:4
**trouble** [1] - 3121:4
**true** [2] - 3077:16, 3096:7
**truth** [2] - 3040:18, 3041:1
**try** [2] - 3092:15, 3100:22
**trying** [8] - 3036:2, 3046:8, 3088:13, 3094:7, 3103:17, 3106:25, 3116:2
**Tulkarem** [1] - 3037:6
**turn** [3] - 3059:15, 3070:2, 3114:18
**turned** [3] - 3081:16, 3082:11, 3082:18
**TURNER** [11] - 3032:19, 3032:19, 3043:14, 3043:19, 3094:21, 3094:24, 3095:4, 3095:17, 3097:3, 3097:21, 3098:13
**turns** [2] - 3081:18, 3081:23
**twelve** [2] - 3060:21, 3102:7
**twice** [3] - 3067:10, 3084:11, 3118:11
**two** [32] - 3034:12, 3034:14, 3035:11, 3035:13, 3035:15, 3035:23, 3035:24, 3036:14, 3036:18, 3037:15, 3046:2, 3046:6, 3047:1, 3051:18, 3064:14, 3066:6, 3066:8, 3077:24, 3087:9, 3091:18, 3092:16, 3095:5, 3095:6, 3106:3, 3106:16, 3107:8, 3111:22, 3113:6, 3114:8, 3114:12, 3114:17, 3127:6
**Two** [7] - 3037:13, 3037:23, 3037:25, 3038:1, 3070:3, 3070:5, 3070:19
**type** [3] - 3082:3, 3082:10, 3092:15
**types** [3] - 3091:2, 3091:24, 3091:25
**typically** [1] - 3125:10

# U

**U.K** [6] - 3057:4, 3057:7, 3057:19, 3057:25, 3059:4, 3059:7
**U.S** [15] - 3057:25, 3061:23, 3063:21, 3088:3, 3088:6, 3088:7, 3088:15, 3088:20, 3088:21, 3088:23, 3089:7, 3089:8, 3115:5, 3115:17, 3126:16
**UBS** [7] - 3109:5, 3115:2, 3115:3, 3115:4, 3115:14, 3115:16, 3115:17
**ugly** [1] - 3122:15
**UK** [5] - 3050:6, 3054:14, 3055:12, 3055:23, 3056:6
**ultimate** [1] - 3098:6
**ultimately** [2] - 3057:14, 3073:11
**UN** [8] - 3054:14, 3054:19, 3054:21, 3054:23, 3054:24, 3055:10, 3057:25
**unbiased** [1] - 3075:6
**unclassified** [1] - 3040:3
**uncle** [1] - 3128:13
**under** [15] - 3034:15, 3034:24, 3044:3, 3051:18, 3061:3, 3063:15, 3078:1, 3085:9, 3092:22, 3093:10, 3103:25, 3108:7, 3115:6, 3121:15, 3127:24
**undergraduate** [1] - 3081:10
**underneath** [1] - 3090:13
**underscore** [1] - 3064:2
**understood** [2] - 3053:5, 3117:1
**undertake** [1] - 3104:25
**undue** [1] - 3035:2
**unfortunately** [1] - 3082:11
**ungussy** [1] - 3042:3
**UNITED** [2] - 3032:1, 3032:15
**United** [17] - 3032:9, 3045:4, 3046:7, 3046:14, 3054:24, 3053:9, 3055:12, 3055:14, 3055:16, 3059:3, 3062:21, 3066:8, 3076:21, 3079:1, 3079:2, 3079:12, 3089:2
**unlawful** [1] - 3116:6
**unless** [3] - 3049:23, 3075:2, 3100:13
**unnamed** [2] - 3046:9, 3046:13
**unnecessarily** [1] - 3112:8
**unnecessary** [1] - 3112:9
**unquote** [1] - 3049:4
**unravel** [1] - 3121:3
**untrue** [1] - 3047:6
**up** [20] - 3038:3, 3042:2, 3047:21, 3051:5, 3052:12, 3055:16, 3065:2, 3066:10, 3068:17, 3071:7, 3077:25, 3081:18, 3085:15, 3087:24, 3091:6, 3091:14, 3094:25, 3097:3, 3097:16, 3097:21, 3113:17, 3123:20, 3128:19
**upheld** [2] - 3074:10, 3077:17
**US** [12] - 3033:2, 3037:2, 3044:24, 3045:3, 3049:21, 3051:10, 3051:14, 3051:24, 3053:6, 3054:14, 3055:21, 3055:25
**USA** [1] - 3081:14
**USAID** [6] - 3087:25, 3088:2, 3088:3,

3088:9, 3088:12, 3090:2
**USAID's** [1] - 3088:16
**uses** [1] - 3123:4

**V**

**value** [1] - 3081:5
**variety** [1] - 3052:10
**various** [1] - 3125:9
**verdict** [11] - 3037:12, 3067:13, 3067:21, 3068:5, 3068:19, 3071:14, 3123:25, 3126:5, 3126:7, 3126:9, 3126:10
**version** [7] - 3063:12, 3102:12, 3103:10, 3105:11, 3105:12, 3105:21, 3106:7
**versus** [1] - 3062:6
**vetting** [1] - 3059:25
**via** [1] - 3067:1
**vice** [1] - 3098:2
**view** [4] - 3044:19, 3090:7, 3100:7, 3118:2
**views** [1] - 3125:25
**violate** [1] - 3104:24
**violating** [1] - 3121:9
**violation** [6] - 3104:25, 3108:5, 3108:9, 3120:21, 3120:22, 3120:23
**violations** [1] - 3034:12
**virtue** [2] - 3064:3, 3064:22
**visited** [1] - 3089:18
**visiting** [1] - 3082:6
**Vitale** [1] - 3084:24
**voluntarily** [1] - 3104:20
**voluntary** [1] - 3103:18
**vs** [1] - 3115:2

**W**

**WAFA** [1] - 3086:20
**wait** [4] - 3036:8, 3067:6, 3084:22, 3097:10
**waiving** [1] - 3100:21
**wake** [1] - 3128:19
**wants** [1] - 3092:2
**watershed** [2] - 3062:12, 3064:8
**Watson** [39] - 3033:22, 3039:20, 3040:4, 3040:24, 3041:5, 3041:8, 3041:11, 3041:13, 3042:14, 3042:18, 3042:25, 3043:9, 3052:14, 3059:15, 3059:21, 3059:24, 3061:21, 3062:8, 3062:13, 3062:16, 3063:22, 3065:18, 3066:5, 3066:16, 3075:11, 3076:20, 3077:19, 3077:20, 3077:24, 3078:5, 3078:11, 3080:24, 3081:1, 3081:13, 3081:20, 3083:25, 3086:3, 3086:8, 3089:4
**week's** [2] - 3063:17, 3063:23
**weeks** [2] - 3067:11, 3092:14

**weigh** [1] - 3079:9
**weight** [3] - 3057:17, 3058:1, 3065:7
**Weinstein** [1] - 3121:2
**Weiss** [2] - 3032:8, 3109:8
**WERBNER** [31] - 3032:20, 3032:21, 3033:25, 3039:13, 3039:25, 3043:12, 3044:1, 3044:10, 3046:21, 3047:8, 3047:18, 3048:12, 3050:8, 3051:4, 3059:1, 3067:20, 3069:3, 3069:5, 3069:17, 3071:3, 3071:6, 3072:5, 3076:3, 3084:21, 3085:7, 3093:1, 3093:21, 3094:2, 3094:11, 3122:2, 3128:5
**Werbner** [1] - 3047:19
**West** [3] - 3074:23, 3092:23, 3093:11
**Westlaw** [1] - 3109:7
**whatsoever** [1] - 3073:10
**white** [1] - 3049:11, 3053:22, 3053:24
**whole** [6] - 3052:16, 3058:3, 3081:18, 3081:21, 3092:5, 3096:12
**widely** [1] - 3065:21
**willful** [5] - 3105:9, 3105:20, 3106:7, 3107:23
**willfully** [1] - 3107:6
**wire** [2] - 3098:4, 3115:23
**wish** [1] - 3101:4
**witness** [12] - 3040:2, 3043:25, 3048:24, 3049:25, 3057:20, 3058:9, 3068:2, 3085:5, 3096:9, 3096:10, 3096:13, 3096:14
**Witness** [1] - 3093:24
**WITNESS** [3] - 3044:5, 3055:5, 3093:7
**witnesses** [3] - 3047:17, 3048:23, 3113:7
**Wolfsberg** [2] - 3085:6, 3085:9
**wondered** [1] - 3128:5
**Woods** [1] - 3104:3
**Word** [1] - 3101:25
**word** [2] - 3103:1, 3103:2
**words** [7] - 3042:22, 3059:10, 3060:14, 3066:20, 3102:17, 3113:15, 3116:6
**works** [2] - 3077:3, 3125:3
**world** [3] - 3053:3, 3054:6, 3060:8
**worth** [1] - 3066:6
**write** [3] - 3053:19, 3078:5, 3092:8
**writer** [1] - 3063:13
**writes** [1] - 3063:13
**writing** [2] - 3063:20, 3082:5
**written** [1] - 3081:22
**wrote** [11] - 3061:2, 3077:20, 3077:24, 3078:1, 3078:8, 3078:11, 3078:16, 3080:5, 3080:23, 3081:16, 3086:8
**Wultz** [1] - 3109:23

**Y**

**Yassin** [3] - 3092:9, 3095:8, 3095:21
**Yassin's** [2] - 3095:18, 3124:25

**year** [1] - 3056:1
**years** [7] - 3035:7, 3038:20, 3041:3, 3076:17, 3087:15, 3097:25, 3119:7
**yellow** [1] - 3095:18
**yesterday** [3] - 3084:20, 3095:7, 3100:4
**YORK** [1] - 3032:1
**York** [10] - 3032:10, 3033:6, 3040:10, 3040:12, 3043:1, 3065:20, 3065:21, 3066:4, 3066:15, 3097:24

**Z**

**Zakat** [39] - 3036:4, 3036:5, 3037:5, 3037:7, 3037:8, 3037:25, 3049:5, 3060:17, 3061:9, 3068:6, 3070:12, 3070:18, 3070:20, 3070:24, 3070:25, 3071:2, 3072:2, 3073:20, 3074:2, 3074:3, 3078:21, 3078:22, 3078:23, 3079:25, 3080:6, 3082:6, 3083:17, 3083:24, 3084:14, 3088:22, 3089:18, 3089:21, 3093:17
**Zakats** [25] - 3034:13, 3036:19, 3037:15, 3044:16, 3054:13, 3054:16, 3055:13, 3056:5, 3060:25, 3064:5, 3065:11, 3067:17, 3068:7, 3068:9, 3068:14, 3068:16, 3068:21, 3071:17, 3073:3, 3073:19, 3074:6, 3074:16, 3086:4, 3087:20, 3088:10